## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **JOHN M. KLUGE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:19-cv-2462 |
| ) | |
| **BROWNSBURG COMMUNITY** ) | |
| **SCHOOL CORPORATION**, ) | |
| **DR. JAMES SNAPP**, Superintendent ) | |
| of Brownsburg Community School ) | |
| Corporation, in his official capacity; ) | |
| **PHIL UTTERBACK**, President of the ) | |
| Brownsburg Community School ) | |
| Corporation School Board, in his ) | |
| official capacity; **JODI GORDON**, ) | |
| Human Resources Director of ) | |
| Brownsburg Community School ) | |
| Corporation, in her official capacity; ) | |
| and **DR. BRET DAGHE**, Principal of ) | |
| Brownsburg Community School ) | |
| Corporation High School, in his ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Nature Of The Case

1.  Plaintiff, John M. Kluge ("Kluge"), brings this action to remedy

discrimination, harassment, and retaliation by Defendant, Brownsburg

Community School Corporation ("BCSC"), on the basis of religion in the terms,

conditions, and privileges of employment, in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2.   Kluge also brings this action against the BCSC Superintendent, Dr. James Snapp, the BCSC School Board President, Phil Utterback, the BCSC Human Resources Director, Jodi Gordon, and the Brownsburg Community High School Principal, Dr. Bret Daghe, for violating his First Amendment rights to free speech and free exercise of religion, violating the unconstitutional conditions doctrine, depriving him of due process and equal protection of law, for retaliating against him for exercising his First Amendment rights, and for denying him his right to exercise his religion under the Indiana Constitution. Thus, this action concerns the denial of Kluge's fundamental and clearly established rights under the Free Speech and Free Exercise Clauses of the First Amendment, the unconstitutional conditions doctrine, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and Article 1, §§ 2 and 3, of the Indiana Constitution.

### Jurisdiction And Venue

3.   This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

4.   Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. §§ 2000e-(5) and 2000e-(16).

5.   This Court has authority to award the requested damages under 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–

2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R.

Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

6.   Venue is proper in this district and division under 28 U.S.C. § 1391(b)

and § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because Defendants reside

in this district and division and/or all of the acts described in this Complaint

occurred in this district and division.

### Exhaustion

7.   Kluge filed a charge of discrimination against BCSC with the Equal

Employment Opportunity Commission ("EEOC") on June 26, 2018, and an

amended charge on June 29, 2018, complaining of the acts of religious

discrimination, harassment, and retaliation alleged herein.

8.   On March 13, 2019, more than 180 days after the filing of his charge, the

Department of Justice Civil Rights Division issued Kluge, via Certified Mail No.

7003 0500 0002 5072 1954, a Notice of Right to Sue Within 90 Days,

authorizing Kluge to file suit against defendant BCSC under Title VII.

9.   The DOJ's Notice of Right To Sue was received and signed for by Kluge's

counsel on March 25, 2019.

10.   This complaint has been filed within 90 days of receipt of the DOJ's

Notice of Right to Sue Within 90 Days.

11.   Kluge has complied fully with all prerequisites to jurisdiction in this

Court under Title VII, and jurisdiction is proper under § 706(f)(3) of Title VII, 42

U.S.C. § 2000e-5(f)(3).

12.     Kluge's constitutional claims have been brought within the applicable statutes of limitation under Indiana law.

## Parties

13.     Plaintiff Kluge is a citizen and resident of the United States and the County of Hendricks, State of Indiana.

14.     Defendant BCSC is an Indiana community school corporation doing business in the Southern District of Indiana and is subject to the jurisdiction of this Court.

15.     Defendant BCSC is an independent corporate body able to sue and be sued and enter into contracts. As such, BCSC is a "person" under 42 U.S.C. § 1983 and subject to suit.

16.     At all times relevant, BCSC was and is an employer within the meaning of 42 U.S.C. § 2000e-(b).

17.     Dr. James Snapp was at all times relevant the Superintendent of the BCSC; Phil Utterback was at all times relevant the President of the BCSC School Board, Jodi Gordon was at all times relevant the Human Resources Director of the BCSC; and Dr. Bret Daghe was at all times relevant the Principal of Brownsburg Community High School.

18.     Snapp, Utterback, Gordon, and Daghe, acting in their official capacities, are "persons" under 42 U.S.C. § 1983 and subject to suit.

## Allegations Common To All Causes Of Action

19.     Kluge became employed by BCSC in August of 2014 as a Music and Orchestra Teacher.

20.    Kluge is a Christian and has been since before BCSC employed him.

21.    Kluge's sincerely-held religious beliefs include a belief that it is sinful to promote transgender behavior.

22.    Kluge's performance while employed at BCSC met BCSC's legitimate expectations at all times.

23.    Kluge was terminated on May 25, 2018, because of a conflict between Kluge's sincerely-held religious beliefs and BCSC's transgender policy.

24.    At the time of Kluge's termination, he was earning a base salary of $46,250, a music director stipend of $5,200, and fringe benefits.

25.    In early 2017, BCSC began encouraging teachers to engage with students in transgenderism.

26.    In May of 2017, Kluge communicated to BCSC a conflict between his sincerely-held religious beliefs and transgenderism.

27.    During the summer of 2017, BCSC began to allow transgender students to use the bathroom of their choice and to change their legal birth names on the BCSC database (known as "Power School") to a new, transgender name, which was not the students' legal names.

28.    BCSC employees, including Kluge, were instructed to use the transgender students' preferred names.

29.    After Kluge communicated to BCSC Superintendent, Dr. James Snapp, that the requirement conflicted with Kluge's religious beliefs, on July 27, 2017, Snapp told Kluge he could use the transgender names, say he was forced to resign from BCSC, or be terminated without pay.

30.     Kluge was then accused of misconduct in a Board Executive Session and a suspension was noted in his official record as a disciplinary measure.

31.     Thereafter, Kluge requested an accommodation for his religious beliefs that consisted of addressing all students by their last names only–similar to a sports coach.

32.     BCSC Superintendent, Dr. James Snapp, and Kluge agreed to that accommodation in writing on July 31, 2017. Dr. Snapp included handwritten notes in the accommodation and signed it on behalf of BCSC.

33.     At all relevant times during Kluge's employment at BCSC, he received positive written evaluations.

34.     Although Kluge's accommodation created no undue hardship for BCSC and no defendant has identified in writing any claimed undue hardship, Principal Bret Daghe met with Kluge on December 13, 2017, told him the accommodation created "tension," and that Kluge should resign by year-end.

35.     Daghe met with Kluge again on January 17, 2018, and reiterated his request that Kluge resign by the end of the school year.

36.     On February 6, 2018, Director of Human Resources, Jodi Gordon, told Kluge his religious accommodation was being withdrawn, since students were offended at the use of last names, although Kluge never told his students why he was referring to them by their last names.

37.     Kluge told Gordon in that February 6th meeting that she was discontinuing a reasonable accommodation for his sincerely-held religious beliefs.

38.     He explained again that he believes encouraging students to present themselves as the opposite sex by calling them an opposite-sex first name is sinful.

39.     Kluge told Gordon that the BCSC was acting illegally in discontinuing his reasonable accommodation in violation of Title VII of the Civil Rights Act.

40.     BCSC did not identify—through Gordon or anyone else acting on BCSC's behalf—any undue hardship associated with the accommodation.

41.     Instead, BCSC simply desired to promote and accommodate transgender beliefs over sincerely-held religious beliefs.

42.     Gordon, on behalf of BCSC, advised Kluge that he could either resign by May 1, 2018, and be paid over the summer, or be fired, without pay, and Gordon agreed that he could submit a conditional resignation.

43.     BCSC's HR Director Gordon accepted a conditional resignation from Kluge on April 30, 2018, and agreed that his resignation would not be processed or shown to anyone, including any administrator, until May 29, 2018.

44.     Thereafter, on May 25, 2018, Kluge delivered to HR Director Gordon's office a time-stamped letter of rescission of his resignation.

45.     But in spite of receiving the rescission of his resignation, Gordon processed Kluge's resignation within two hours after he rescinded it.

46.     Subsequently, Superintendent Snapp and the BCSC School Board accepted Kluge's resignation as if it was submitted unconditionally.

47.    On the night of May 25, 2018, BCSC locked Kluge out of the BCSC buildings and internet, and posted his job as vacant.

48.    Defendants' application of the BCSC transgender policies provides few objective guidelines, standards, or criteria for school employees, including faculty members like Kluge, to use when deciding what constitutes gender identity or gender identity discrimination, thereby granting those community school officials broad discretion to restrict expression. For example, BCSC distributed an 11-page transgender "Question and Answer" document instructing faculty to use student names and information in the BCSC database known as "PowerSchool," after a doctor signs-off on it and the parents agree.

49.    Defendants, by policy and practice, apply their transgender policies to regulate the expression of individual faculty members, like Kluge.

50.    Defendants, by policy and practice, apply their transgender policies to regulate all interactions faculty members have with students in the classroom or within the school.

51.    Kluge is a professing evangelical Christian who strives to live by his faith on a daily basis.

52.    Kluge's Christian faith governs the way he thinks about human nature, marriage, gender, sexuality, morality, politics, and social issues, and it causes him to hold sincerely-held religious beliefs in these areas.

53.    Kluge's sincerely-held religious beliefs are drawn from the Bible.

54.    Kluge believes that God created mankind as either male or female, that this gender is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual's feelings or desires.

55.    Kluge also believes he cannot affirm as true ideas and concepts that he deems untrue and sinful, as this would violate Biblical injunctions against dishonesty, lying, and effeminacy.

56.    Kluge also believes that he is required to treat each person with dignity, love, and respect, as each individual is created in God's image.

57.    Kluge's sincerely held religious beliefs cause him to object to communicating a community school corporation-mandated ideological message regarding gender identity that he does not believe, that he does not wish to communicate, and that contradicts—and would force him to violate—his sincerely-held religious beliefs.

58.    The BCSC's directive to Kluge that he either communicate its ideological message regarding gender identity, resign, or be fired, left Kluge with an untenable choice of maintaining his employment while violating his sincerely-held religious beliefs on an almost daily basis, or losing his employment—the chief financial means of support for his family.

59.    The accommodation that Kluge recommended and the Defendants initially agreed to, treated all students exactly the same, by referring to their last names only.

60.    The Defendants' removal of the successful "last-names only" accommodation based on the complaints of students—who suspected he was

using last names to avoid transgender names, and wanted Kluge to capitulate—does not amount to undue hardship, but is an impermissible "heckler's veto."

61.    Kluge has suffered mentally and emotionally as a result of the Defendants' intentional actions.

## Statements Of Law

62.    At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to Defendants who acted under color of a statute, regulation, or custom of the State of Indiana (i.e., under color of state law and authority).

63.    Defendants knew or should have known that they were violating Kluge's constitutional, statutory, and contractual rights by their actions, as described herein.

64.    Kluge is suffering irreparable harm from Defendants' transgender policies and practices and the way those policies and practices have been enforced.

65.    Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

66.    Defendants' transgender policies and related practices are not narrowly tailored as applied to Kluge because Kluge's expression does not implicate any of the legitimate interests Defendants might have.

67.    Kluge has no adequate or speedy remedy at law to correct the

deprivation of his rights by Defendants.

68.     Unless the policies and conduct of Defendants are enjoined, Kluge will continue to suffer irreparable injury.

69.     Under 42 U.S.C. §§ 1983, 1988, and 2000e, Kluge is entitled to appropriate remedies for Defendants' challenged policies, practices, and related conduct.

### First Cause Of Action

### Title VII of the Civil Rights Act

### Failure to Accommodate

70.     Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this complaint.

71.     Defendant BCSC discriminated against Kluge in the terms and conditions of his employment on the basis of Kluge's sincerely-held religious beliefs, by refusing to discuss an accommodation for Kluge's beliefs, then agreeing in writing to a "last names only" accommodation that did not result in any undue hardship, then removing that accommodation without identifying any undue hardship resulting from the accommodation, and finally demanding Kluge's resignation under threat of termination.

72.     BCSC's actions were intentional or reckless, and violated Title VII.

### Second Cause Of Action

### Title VII of the Civil Rights Act

### Retaliation

73.     Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this complaint.

74.     Defendant, BCSC, retaliated against Kluge for engaging in protected conduct, when it agreed in writing to the accommodation Kluge requested for his religious beliefs, then removed that accommodation—without any showing of undue hardship—and told Kluge he could use transgender names, resign, or be terminated.

75.     BCSC's actions were reckless or intentional, and violated Title VII.

**Third Cause Of Action**

**Title VII of the Civil Rights Act**

**Hostile Environment**

76.     Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this complaint.

77.     Defendant, BCSC, created a hostile work environment—based on Kluge's sincerely-held religious beliefs—by demanding that Kluge address transgender students by their preferred names, resign, or be terminated.

78.     BCSC effectively gave Kluge the Hobson's Choice of violating his conscience so he could provide for his family and pursue his passion, or honoring his conscience while losing his employment and passion for music students.

79.     That hostile environment was severe and pervasive and adversely altered Kluge's working conditions.

80.     BCSC's acted recklessly or intentionally and violated Title VII.

## Fourth Cause Of Action

## Violation of Plaintiff's First Amendment Right to Freedom of Speech

## Retaliation

## (42 U.S.C. § 1983)

81.   Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

82.   By punishing and threatening to punish Kluge for expressing his views regarding gender identity, Defendants have retaliated and are retaliating against Kluge for exercising his First Amendment rights.

83.   When Kluge communicated his views regarding transgenderism through his choice of titles in his interactions with students and in his classroom, he was speaking on a matter of public concern, engaging in speech related to teaching and scholarship, and engaging in expression the First Amendment protects.

84.   Kluge's interest, as a teacher at a public high school, in discussing matters of public concern in the context of teaching and scholarship outweighs Defendants' interest in the efficient provision of services.

85.   Kluge's speech on matters of public concern in the context of teaching and scholarship never prevented Defendants from efficiently providing services to the public (or even threatened to do so).

86.   Defendants' transgender policies and practices, their enforcement of those policies and practices, and their threatened future enforcement of those

policies and practices would deter a person of ordinary firmness from exercising his right to free speech in the future.

87.    Defendants have enforced their transgender policies against Kluge because of the views he has expressed on matters of public concern in the context of teaching and scholarship, expression that the First Amendment protects.

88.    Defendants' transgender policies and their enforcement of those policies violate Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

**Fifth Cause Of Action**

**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**Content & Viewpoint Discrimination**

**(42 U.S.C. § 1983)**

89.    Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

90.    Defendants subjected Kluge to discipline due to the content and viewpoint of Kluge's speech.

91.    By punishing and threatening to punish Kluge for expressing his views regarding gender identity, Defendants have engaged in content and/or viewpoint discrimination in violation of the First Amendment.

92.    Defendants' transgender policies and practices require officials to evaluate the content and viewpoint of faculty expression to determine whether

it constitutes discrimination or harassment and whether it creates a hostile environment.

93.    Defendants considered the content and viewpoint of Kluge's expression when they decided to enforce their transgender policies and practices against him.

94.    Defendants' transgender policies and practices confer unbridled discretion upon BCSC officials to discriminate based on content or viewpoint.

95.    Defendants exercised this unbridled discretion when they punished Kluge for expressing his views regarding gender identity.

96.    Defendants' transgender policies and practices and their enforcement of those policies and practices are unconstitutionally overbroad because they restrict a significant amount of constitutionally protected speech.

97.    The overbreadth of Defendants' transgender policies and practices chilled Kluge's speech, when he sought to engage in protected expression in his interactions with students at school and in the classroom.

98.    Kluge's expression regarding gender identity is protected by the First Amendment.

99.    By placing a written warning in his personnel file for allegedly violating their transgender policies and practices, and terminating Kluge because he refused to use transgender names, Defendants have punished Kluge for engaging in expression the First Amendment protects.

100.    Defendants' transgender policies and practices and their enforcement of those policies violated Kluge's right to free speech as guaranteed by the First

Amendment to the United States Constitution.

## Sixth Cause Of Action

## Violation of Plaintiff's First Amendment Right to Freedom of Speech

## Compelled Speech

## (42 U.S.C. § 1983)

101.   Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

102.   By punishing and threatening to punish Kluge for refusing to communicate a school corporation-mandated ideological message regarding gender identity, Defendants have attempted to compel Kluge's speech, in violation of his rights under the First Amendment.

103.   Defendants' transgender policies and practices and their enforcement of those policies compelled Kluge to communicate messages about gender identity that would have violated his religious beliefs.

104.   Defendants' transgender policies and practices and their enforcement of those policies and practices violated Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## Seventh Cause Of Action

## Violation of Plaintiff's First Amendment Right to Free Exercise of Religion

## (42 U.S.C. § 1983)

105.   Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

106.   By punishing and threatening to punish Kluge for exercising his sincerely-held religious beliefs in the way he discusses issues regarding gender identity, Defendants have violated and are violating his right to free exercise of religion under the First Amendment.

107.   Kluge's views and expression related to gender identity are motivated by his sincerely-held religious beliefs, are avenues through which he exercises his religious faith, and constitute a central component of his sincerely-held religious beliefs.

108.   Expressing the school corporation's mandated message regarding gender identity would require Kluge to violate his sincerely-held religious beliefs.

109.   Defendants' transgender policies and related practices are neither neutral nor generally applicable but allow Defendants to target religious expression and activities specifically and to express hostility to such expression.

110.   Defendants' transgender policies and related practices are neither neutral nor generally applicable because they represent a system of individualized assessments.

111.   Defendants' transgender policies and related practices are under-inclusive, prohibiting some expression while allowing other expression equally harmful to the school corporation's asserted interests.

112.   Defendants' transgender policies and related practices burden several of Kluge's constitutional rights, including his rights under the First

Amendment (e.g., freedom of speech, freedom from retaliation, free exercise of religion), the unconstitutional conditions doctrine, and the Fourteenth Amendment (e.g., due process and equal protection).

113.   Defendants violated Kluge's right to free exercise of religion when they applied their transgender policies and practices to discipline Kluge for communicating his views on issues related to gender identity and to compel him to communicate views on those same subjects that violate his religious beliefs.

114.   Defendants' transgender policies and their enforcement of those policies violated Kluge's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

**Eighth Cause Of Action**

**Violation of Plaintiffs' Right to be Free from Unconstitutional Conditions**

**(42 U.S.C. § 1983)**

115.   Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

116.   By conditioning Kluge's employment at BCSC on his willingness to surrender various constitutional rights, Defendants have imposed and are imposing an unconstitutional condition on him in violation of his First Amendment rights.

117.   Defendants' transgender policies and practices and their enforcement of those policies and practices impose an unconstitutional condition upon faculty members' right to free speech and their receipt of state benefits (e.g.,

avoiding disciplinary actions up to and including termination, and remaining a teacher at a public high school).

118.   Defendants' transgender policies and practices and their enforcement of those policies and practices violated Kluge's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

119.   Defendants' transgender policies and practices and their enforcement of those policies and practices require faculty members to surrender their constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection to avoid disciplinary actions up to and including termination.

120.   Defendants enforced their transgender policies and practices against Kluge up to and including termination, making it clear that he could only avoid disciplinary action if he surrendered his constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection.

121.   Defendants' transgender policies and practices and their enforcement of those policies and practices violated Kluge's right to be free from unconstitutional conditions.

**Ninth Cause Of Action**

**Violation of Plaintiff's Fourteenth Amendment Right to**

**Due Process of Law**

**(42 U.S.C. § 1983)**

122.   Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

123.   By threatening to punish and punishing Kluge under vague and over-broad policies and practices, Defendants have violated and are violating Kluge's right to due process of law under the Fourteenth Amendment.

124.   Defendants' transgender policies and practices and their enforcement of those policies and practices are over-broad because they encompass a substantial amount of constitutionally protected speech.

125.   Kluge's expression regarding gender identity is protected by the First Amendment.

126.   By terminating Kluge based on his objections to Defendants' transgender policies and practices Defendants have punished Kluge for engaging in expression the First Amendment protects.

127.   Defendants terminated Kluge because of his religious-based objections to Defendants' transgender policies and practices, and in so doing, punished him for engaging in a wide variety of constitutionally protected expression in violation of Kluge's right to due process of law under the Fourteenth Amendment.

128.   Defendants' transgender policies and related practices are unconstitutionally vague because they grant BCSC officials unbridled discretion in deciding what constitutes "gender identity" and "gender identity discrimination," because they utilize terms that are inherently subjective and elude any precise or objective definition that would be consistent from one official, teacher, or student to another, and because they are incapable of providing meaningful guidance to Defendants.

129.   The lack of objective criteria, factors, or standards in Defendants'
transgender policies and practices renders these policies and practices
unconstitutionally vague and in violation of Kluge's right to due process of law
under the Fourteenth Amendment.

**Tenth Cause Of Action**

**Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection
of the Law**

**(42 U.S.C. § 1983)**

130.   Plaintiff repeats and realleges each of the allegations contained in the
preceding paragraphs of this Complaint.

131.   By punishing and threatening to punish Kluge for expressing his
views regarding gender identity when they do not punish teachers who express
opposite views on those same subjects, Defendants have violated and are
violating Kluge's right to equal protection of the law under the Fourteenth
Amendment.

132.   Kluge was similarly situated to other teachers at the school
corporation.

133.   Defendants take no disciplinary action against teachers who support
and endorse the concepts of gender identity, but they take disciplinary action
against teachers, like Kluge, who refuse to endorse those concepts.

134.   Defendants' transgender policies and practices have also been applied
to discriminate intentionally against Kluge's rights to freedom of speech, right
to be free from compelled speech, free exercise of religion, right to be free from

unconstitutional conditions, and right to due process of law. Thus, discriminatory intent is presumed.

135. Defendants' transgender policies and related practices burden Kluge's fundamental rights, target a suspect class (i.e., religion), and have no rational basis.

136. Defendants' transgender policies and related practices are under-inclusive, prohibiting some expression while allowing other expression equally harmful to the school corporation's asserted interests.

137. Defendants applied their transgender policies and related practices to Kluge in a discriminatory and unequal manner, granting other teachers the right to express their views on issues related to gender identity while denying that right to Kluge, in violation of Kluge's right to equal protection of the law under the Fourteenth Amendment.

## Eleventh Cause Of Action

## Violation of Plaintiff's Rights of Conscience and Free Exercise of Religion

### (Indiana Const. Art. 1, §§ 2 and 3)

138. Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint.

139. By punishing and threatening to punish Kluge for exercising his sincerely held religious beliefs according to the dictates of his own conscience in the way he discusses issues regarding gender identity, Defendants have violated and are violating his right to free exercise of religion under Article 1, §§ 2 and 3, of the Indiana Constitution.

140.   The religious convictions Kluge expressed and which he sought to live by are sincerely held religious beliefs.

141.   Defendants have infringed on Kluge's right to engage freely in his religious practices by enforcing their transgender policies and practices to force him to express views on gender identity that conflict with his religious beliefs and that force him to violate his conscience and religious convictions by expressing their preferred views on gender identity.

142.   Defendants' transgender policies and related practices do not serve any government interests of sufficient magnitude to override Kluge's right to live according to the dictates of his faith and according to his own conscience.

143.   Defendants' transgender policies and their enforcement of those policies violate Kluge's right to free exercise of religion as guaranteed by Article 1, §§ 2 and 3, of the Indiana Constitution.

## Prayer For Relief

144.   Kluge respectfully prays this Court advance this case on the docket, order a hearing at the earliest practicable date, cause this case to be expedited and upon such hearing to enter judgment as follows:

a.   Enter a declaratory judgment that the Defendants' policies and practices are in violation of Title VII, the United States Constitution, and the Indiana Constitution;

b.   Enter preliminary and permanent injunctions prohibiting Defendants and their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' policies

and practices that violate employees' sincerely-held religious beliefs, that prohibit employees from expressing their views regarding gender identity, or punish employees for expressing those views, including addressing and referring to students based on their biological sex;

c.  Order Defendant BCSC to take such affirmative action as is necessary to purge Kluge's personnel file of any reference to the punishment they imposed on him, and to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect employment opportunities with Defendants;

d.  Award Kluge full back-pay and the value of benefits, and compensatory, and punitive damages for Defendants' constitutional and statutory violations, all in an amount to be determined at trial;

e.  Award Kluge prejudgment interest, costs, and reasonable attorney's fees as provided by 42 U.S.C. §§ 2000e-5(k) and 1988; and

f.  Grant such other and further relief as is just and proper.

### Demand For Trial By Jury

145.  Pursuant to Fed.R.Civ.P. 38(b), Kluge demands a trial by jury.

Respectfully submitted,

_s/_ **Michael J. Cork**
Michael J. Cork, Esq.
5754 N. Delaware Street
Indianapolis, Indiana 46220-2528
317-517-4217
email: cork0@icloud.com
Attorney for Plaintiff, John M. Kluge

_s/_ **_Roscoe Stovall, Jr._**
Roscoe Stovall, Jr.
456 N. Meridian Street
Suite 507
Indianapolis, IN 46204
317-831-3999
rstovall@roscoelaw.com
Attorney for Plaintiff, John M. Kluge

_s/_ **_Kevin E. Green_**
Kevin E. Green
456 N. Meridian Street
Suite 1517
Indianapolis, IN 46204
317-437-5002
keglegal@aol.com
Attorney for Plaintiff, John M. Kluge