**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **JOHN M. KLUGE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:19-cv-2462 |
| | ) | |
| **BROWNSBURG COMMUNITY** | ) | |
| **SCHOOL CORPORATION**, | ) | |
| **DR. JAMES SNAPP**, Superintendent | ) | |
| of Brownsburg Community School | ) | |
| Corporation, in his official capacity; | ) | |
| **PHIL UTTERBACK**, President of the | ) | |
| Brownsburg Community School | ) | |
| Corporation School Board, in his | ) | |
| official capacity; **JODI GORDON**, | ) | |
| Human Resources Director of | ) | |
| Brownsburg Community School | ) | |
| Corporation, in her official capacity; | ) | |
| and **DR. BRET DAGHE**, Principal of | ) | |
| Brownsburg Community School | ) | |
| Corporation High School, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Nature Of The Case**

1.  Plaintiff, John M. Kluge, files his first amended complaint as a matter of

course under FRCP 15(a)(1)(A), within 21 days of serving his original complaint

on June 24, 2019. Mr. Kluge brings this action to remedy discrimination,

harassment, and retaliation by Defendants on the basis of religion in the

terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2.  Mr. Kluge also brings this action against Defendants for violating his First Amendment rights to free speech and free exercise of religion, violating the unconstitutional conditions doctrine, depriving him of due process and equal protection of law, for retaliating against him for exercising his First Amendment rights, and for denying him his right to exercise his religion under the Indiana Constitution. Thus, this action concerns the denial of Mr. Kluge's fundamental and clearly established rights under the Free Speech and Free Exercise Clauses of the First Amendment, the unconstitutional conditions doctrine, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and Article 1, §§ 2 and 3, of the Indiana Constitution.

3.  Mr. Kluge also brings claims against Defendants for intentional infliction of emotional distress and fraud, in violation of the common law of the State of Indiana.

### Jurisdiction And Venue

4.  This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

5.  Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. §§ 2000e-(5) and 2000e-(16).

6.  This Court has authority to award the requested damages under 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

7.  This Court has supplemental jurisdiction over the state law claim(s) made herein under 28 U.S.C. § 1367.

8.  Venue is proper in this district and division under 28 U.S.C. § 1391(b) and § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because Defendants reside in this district and division and/or all of the acts described in this Complaint occurred in this district and division.

## Exhaustion

9.  Mr. Kluge filed a charge of discrimination against BCSC with the Equal Employment Opportunity Commission ("EEOC") on June 26, 2018, and an amended charge on June 29, 2018, complaining of the acts of religious discrimination, harassment, and retaliation alleged herein.

10.  On March 13, 2019, more than 180 days after the filing of his charge, the Department of Justice Civil Rights Division issued Mr. Kluge, via Certified Mail No. 7003 0500 0002 5072 1954, a Notice of Right to Sue Within 90 Days, authorizing Mr. Kluge to file suit against defendant BCSC under Title VII.

11.  The DOJ's Notice of Right To Sue was received and signed for by Mr. Kluge's counsel on March 25, 2019.

12.  The original complaint was filed within 90 days of receipt of the DOJ's Notice of Right to Sue Within 90 Days.

13.     Mr. Kluge has complied fully with all prerequisites to jurisdiction in this Court under Title VII, and jurisdiction is proper under § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

14.     Mr. Kluge also filed a tort claims notice under I.C. 34-13-3-8 *et seq.*, and a notice under I.C. 34-13-3.5-4, advising BCSC and the appropriate state agency of one or more claim(s) by Mr. Kluge against BCSC, an Indiana public school corporation, under the laws of the United States and/or the laws of the State of Indiana. A copy of the referenced notices was hand-delivered by Mr. Kluge's counsel to the BCSC Board of Trustees and BCSC Superintendent, Dr. James Snapp, at a public board meeting on July 9, 2018. Mr. Kluge's counsel then mailed a copy of the tort claims notice and notice of claim(s) against an Indiana public school corporation, under I.C. 34-13-3-8 et seq., and I.C. 34-13-3.5-4, respectively, on July 11, 2018, to the Indiana Political Subdivision Risk Management Commission, 311 W. Washington St., Suite 103, Indianapolis, IN 46204, via certified mail, tracking number 70083230000221194572. USPS Tracking shows that the notice was delivered to the Commission on July 13, 2018.

## Parties

15.     Plaintiff Kluge is a citizen and resident of the United States and the County of Hendricks, State of Indiana.

16.     Defendant BCSC is an Indiana community school corporation doing business in the Southern District of Indiana and is subject to the jurisdiction of this Court.

17.    Defendant BCSC is an independent corporate body able to sue and be sued and enter into contracts. As such, BCSC is a "person" under 42 U.S.C. § 1983 and subject to suit.

18.    At all times relevant, BCSC was and is an employer within the meaning of 42 U.S.C. § 2000e-(b).

19.    Dr. James Snapp was at all times relevant the Superintendent of the BCSC; Phil Utterback was at all times relevant the President of the BCSC School Board, Jodi Gordon was at all times relevant the Human Resources Director of the BCSC; and Dr. Bret Daghe was at all times relevant the Principal of Brownsburg High School.

20.    Defendants Snapp, Utterback, Gordon, and Daghe, acting in their official capacities, are "persons" under 42 U.S.C. § 1983 and subject to suit.

## Allegations Common To All Causes Of Action

21.    Mr. Kluge became employed by Defendant BCSC in August of 2014 as a Music and Orchestra Teacher.

22.    Mr. Kluge is a Christian and has been since before BCSC employed him.

23.    Mr. Kluge's sincerely-held religious beliefs include a belief that it is sinful to promote gender dysphoria.

24.    Mr. Kluge's performance while employed at Defendant BCSC met and exceeded BCSC's legitimate expectations at all times, and his written performance evaluations were positive.

25.     During Mr. Kluge's employment, his music students received multiple awards for their performances.

26.     Mr. Kluge was terminated on May 25, 2018, because of a conflict between his sincerely-held religious beliefs and Defendant BCSC's gender dysphoria speech code.

27.     At the time of Mr. Kluge's termination, he was earning a base salary of $46,250, a music director stipend of $5,200, and fringe benefits.

28.     In early 2017, Defendant BCSC began encouraging teachers to affirm childhood gender dysphoria.

29.     While no formal policy was introduced, Defendants encouraged its faculty to affirm students who were experiencing gender dysphoria.

30.     In May of 2017, Mr. Kluge communicated to Defendants a conflict between his sincerely-held religious beliefs and affirming gender dysphoria.

31.     Mr. Kluge is a professing evangelical Christian who strives to live by his faith on a daily basis.

32.     Mr. Kluge's Christian faith governs the way he thinks about human nature, marriage, gender, sexuality, morality, politics, and social issues, and it causes him to hold sincerely-held religious beliefs in these areas.

33.     Mr. Kluge's sincerely-held religious beliefs are drawn from the Bible.

34.     Mr. Kluge believes that God created mankind as either male or female, that this gender is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual's feelings or desires.

35.     Mr. Kluge also believes he cannot affirm as true ideas and concepts that he deems untrue and sinful, as this would violate Biblical injunctions against dishonesty, lying, and effeminacy.

36.     Mr. Kluge also believes that he is required to treat each person with dignity, love, and respect, as each individual is created in God's image; this regularly manifested itself in kindness and helpfulness toward students, including students with gender dysphoria.

37.     Mr. Kluge's sincerely held religious beliefs cause him to object to communicating a community school corporation-mandated ideological message regarding gender dysphoria that he does not believe, that he does not wish to communicate, that he believes promotes a destructive lifestyle, and that contradicts—and would force him to violate—his sincerely-held religious beliefs.

38.     During the summer of 2017, Defendant BCSC began to allow students experiencing gender dysphoria to use the bathroom of their choice and to change their legal birth names on the BCSC database (known as "Power School") to a new, transgender name, which was not the students' legal names.

39.     BCSC employees, including Mr. Kluge, were instructed to use the transgender students' preferred names—names based upon the students' gender dysphoria.

40.     After Mr. Kluge communicated to BCSC Superintendent, Defendant Snapp, that the requirement conflicted with Mr. Kluge's religious beliefs, on

July 27, 2017, Defendant Snapp told Mr. Kluge he could use the transgender names, say he was forced to resign from BCSC, or be terminated without pay.

41. Because Mr. Kluge refused to affirm gender dysphoria, Defendant Snapp, initiated an administrative leave of absence for Mr. Kluge, pending termination.

42. Defendant Daghe issued Mr. Kluge an ultimatum on Friday, July 28, 2017, mandating use of transgender preferred names, and giving Mr. Kluge until noon on Monday, July 31st to decide if he would comply.

43. On July 31st, Mr. Kluge met with Superintendent, Defendant Snapp, and Human Resources Director, Defendant Gordon, to discuss Defendants' ultimatum. Mr. Kluge requested an accommodation for his religious beliefs, and he proposed a reasonable accommodation that consisted of addressing all students by their last names only, similar to a sports coach.

44. Defendants Snapp and Gordon, on behalf of Defendant BCSC, agreed to Mr. Kluge's accommodation; inserted handwritten language in the July 28th communication from Defendant Daghe approving the last names only accommodation and also indicating that Mr. Kluge would not be required to distribute student uniforms; and Defendant Gordon initialed the accommodation, while Mr. Kluge signed and dated that document. An accurate copy of the approved accommodation is attached as Exhibit A.

45. Despite the written accommodation, on August 7, 2017, Defendants' School Board administered a suspension to Mr. Kluge for July 27 and 28, 2017, in response to Defendant Snapp's previous action.

46.     Although Kluge's accommodation created no undue hardship for Defendants and no defendant has identified in writing any claimed undue hardship, Defendant Daghe met with Mr. Kluge on December 13, 2017, and told him the accommodation created "tension," and that Mr. Kluge should resign by year-end.

47.     Nothing dramatic occurred between July 31, 2017, and December 31, 2017; there were no student protests, there were no written complaints about Mr. Kluge's use of last names for all students, there were no classroom disturbances, and there were no cancelled classes; instead, the accommodation worked as intended and Mr. Kluge's students excelled. For example: Mr. Kluge's extra curricular chamber ensemble and jazz program had record numbers of participation in the 2017-2018 school year; Mr. Kluge had many students advance to the state level at their solo and ensemble competition in the spring semester of 2018; and Mr. Kluge's three curricular orchestras and extra-curricular jazz orchestra all received gold ratings at their ISSMA competitions in the spring of 2018, and the Symphony Orchestra even received a "Gold with Distinction" rating, its best ever in the history of the program.

48.     Defendants simply decided not to accommodate or tolerate Mr. Kluge's sincerely-held religious beliefs any longer.

49.     Defendant Daghe met with Mr. Kluge again on January 17, 2018, and reiterated his request that Mr. Kluge resign by the end of the school year.

50.     On February 6, 2018, Director of Human Resources, Defendant Gordon, told Mr. Kluge his religious accommodation was being withdrawn,

since students were offended at the use of last names, although Mr. Kluge never told his students why he was referring to them by their last names.

51.   Although Defendant Gordon told Mr. Kluge that students were offended by his use of last names, she provided no evidence supporting her assertion.

52.   Mr. Kluge told Defendant Gordon in that February 6th meeting that she was discontinuing a reasonable accommodation for his sincerely-held religious beliefs.

53.   Mr. Kluge explained again that he believes encouraging students to present themselves as the opposite sex by calling them an opposite-sex first name is sinful and potentially harmful to the students.

54.   Defendants never identified, either verbally or in writing, any undue hardship associated with Mr. Kluge's last names only accommodation.

55.   And Defendants never identified any legitimate—let alone compelling—government interest in forcing Mr. Kluge to use transgender terminology.

56.   Instead, Defendants simply desired to promote and accommodate gender dysphoria over sincerely-held religious beliefs.

57.   Defendant Gordon, on behalf of Defendant BCSC, advised Mr. Kluge that he could either resign by May 1, 2018, and be paid over the summer, or be fired, without pay, and Defendant Gordon agreed that he could submit a conditional resignation.

58.     Defendant Gordon accepted a conditional resignation from Mr. Kluge on April 30, 2018, after she agreed that one condition was that his resignation would not be processed or shown to anyone, including any administrator, until May 29, 2018; and after she further agreed that another condition was that he could withdraw his resignation prior to that time. An accurate copy of Mr. Kluge's conditional resignation is attached as Exhibit B.

59.     Thereafter, on May 25, 2018, Mr. Kluge delivered to Defendant Gordon's office a time-stamped letter of rescission of his resignation. The time-stamp shows it was received at 2:33 p.m. An accurate copy of Mr. Kluge's rescission is attached as Exhibit C.

60.     But in spite of receiving Mr. Kluge's rescission of his resignation, and in spite of agreeing not to process the resignation or share it with any administrator until May 29, 2018, Defendant Gordon processed Mr. Kluge's resignation on May 25th, within two hours after he rescinded it; thereby violating all of the conditions Defendants agreed to before Mr. Kluge submitted the resignation.

61.     When Defendants told Mr. Kluge he could submit a conditional resignation and then accepted Mr. Kluge's conditional resignation, they had no intention of honoring the conditions he attached to his resignation, but instead planned on treating Mr. Kluge's resignation as unconditional upon receipt and claiming that he voluntarily resigned his position.

62.     Subsequently, Defendants and the BCSC School Board accepted Mr. Kluge's resignation as if it was submitted unconditionally.

63.     On the night of May 25, 2018, Defendants locked Mr. Kluge out of the BCSC buildings and internet, and posted his job as vacant.

64.     Defendants' application of the BCSC gender dysphoria policies provides few objective guidelines, standards, or criteria for school employees, including faculty members like Mr. Kluge, to use when deciding what constitutes gender dysphoria or gender discrimination, thereby granting Defendants overbroad discretion to restrict expression.

65.     The majority of Defendants' gender dysphoria policies and practices were informal and unwritten.

66.     But at a faculty meeting in early 2018, Defendant BCSC distributed an 11-page document entitled, "Transgender Questions" which identifies Defendant BCSC's policies regarding childhood gender dysphoria and provides answers to faculty questions regarding transgender students. An accurate copy of Defendants' "Transgender Questions" policy is attached as Exhibit D.

67.     Defendant BCSC's "Transgender Questions" policy indicates it was revised in January of 2018, but no earlier written policy by that title was provided to Defendant BCSC's staff members, including Mr. Kluge.

68.     Defendant BCSC's "Transgender Questions" policy is vague and over-broad in many respects; for example, in response to use of dressing rooms by transgender students, the policy states that "fully transitioned" students may use the dressing room of their chosen gender, while students who are not "fully transitioned" will be provided alternate dressing locations.

69.    Defendant BCSC's "Transgender Questions" policy is vague in that it does not define "fully transitioned," it does not provide faculty with any idea of how to determine whether a student is fully transitioned, and it does not indicate what "alternate dressing locations" are available for students who are not "fully transitioned."

70.    Moreover, the policy does not state whether a faculty member is to require some proof from student who claims to be "fully transitioned" or simply take the student's word for his/her gender identity.

71.    Defendant BCSC's "Transgender Questions" policy instructs faculty to use the new names transgender students choose as part of their gender dysphoria.

72.    Notably the "Transgender Questions" policy states, in question and answer format:

"Are we allowed to use the student's last name only?

We have agreed to this for the 2017-2018 school year, but moving forward it is our expectation the student will be called by the first name listed in PowerSchool[;]"

"Can teachers refuse to call the student by his/her preferred name? Staff members need to call students by name in PowerSchool[;]" and

"How do teachers break from their personal biases and beliefs so that we can best serve our students? We know this is a difficult topic for some staff members, however, when you work in a public school, you sign up to follow

the law and the policies/practices of that organization and that might mean following practices that are different than your beliefs."

73.     Without mentioning Mr. Kluge's "last names only" religious accommodation, the "Transgender Questions" policy coincides with the challenge to Mr. Kluge's accommodation by Defendant Daghe in December of 2017, and the removal of his accommodation by Defendant Gordon in February of 2018; and the policy supports Defendants' request that Mr. Kluge resign.

74.     The "Transgender Questions" policy establishes that Defendant BCSC's formal policy was not to allow Kluge's last-name only accommodation—not because it created any undue hardship, but because it violated the policy.

75.     Defendant Daghe's statement to Kluge on December 13, 2017, that his accommodation created "tension" and he should resign, and Defendant Gordon's statement to Kluge on February 6, 2018, that students were offended by use of last names, were not based on fact, but were simply pretexts for religious discrimination, per Defendant BCSC's new policy in direct opposition to Mr. Kluge's accommodation.

76.     Defendants' "Transgender Questions" policy states: "… when you work in a public school, you sign up to follow the law and the policies/practices of that organization and that might mean following practices that are different than your beliefs …", thus suggesting that following school policies and practices is the same as following the law, and communicating to faculty—incorrectly—that a public school teacher's religious beliefs or rights of

conscience, have no legal standing and must take a "back seat" to school policies and practices.

77.    Defendants' formal and informal policies and practices, including their "Transgender Questions" policy, attempt to regulate and compel the expression of individual faculty members, like Mr. Kluge, beyond any quantifiable need in educating students.

78.    Defendants, by policy and practice, apply their speech code policies to regulate all interactions faculty members have with students in the classroom or within the school.

79.    Defendants' directive to Mr. Kluge that he either communicate its ideological message regarding gender dysphoria, resign, or be fired, left Mr. Kluge with an untenable choice of maintaining his employment while violating his sincerely-held religious beliefs on an almost daily basis, or losing his employment—the chief financial means of support for his family.

80.    The accommodation that Mr. Kluge recommended and that Defendants agreed to, treated all students exactly the same, by referring to their last names only.

81.    The Defendants' removal of the successful "last-names only" accommodation based on the alleged complaints of students—who only speculated he was using last names to avoid transgender names and pronouns, and wanted Kluge to capitulate—does not amount to undue hardship, but is an impermissible "heckler's veto."

82.    Mr. Kluge has suffered mental, emotional, financial, and reputational harm as a result of the Defendants' intentional actions.

### Statements Of Law

83.    At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to Defendants who acted under color of a statute, regulation, or custom of the State of Indiana (i.e., under color of state law and authority).

84.    Defendants knew or should have known that they were violating Mr. Kluge's constitutional, statutory, and contractual rights by their actions, as described herein.

85.    Mr. Kluge is suffering irreparable harm from Defendants' speech code policy and the way that policy has been enforced.

86.    Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

87.    Defendants' transgender policies and related practices are not narrowly tailored as applied to Mr. Kluge because his expression does not implicate any of the legitimate interests Defendants might have.

88.    Mr. Kluge has no adequate or speedy remedy at law to correct the deprivation of his rights by Defendants.

89.    Unless the policies and conduct of Defendants are enjoined, Mr. Kluge will continue to suffer irreparable injury, including, but not limited to, damage to reputation and damage to professional growth.

90.     Under 42 U.S.C. §§ 1983, 1988, and 2000e, Mr. Kluge is entitled to appropriate remedies for Defendants' challenged policies, practices, and related conduct.

### First Cause Of Action

### Title VII of the Civil Rights Act

### Religious Discrimination - Failure to Accommodate

91.     Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

92.     Defendants discriminated against Mr. Kluge in the terms and conditions of his employment on the basis of Mr. Kluge's sincerely-held religious beliefs, by refusing to discuss an accommodation for Mr. Kluge's beliefs, then agreeing in writing to a "last names-only" accommodation that did not result in any undue hardship, then removing that accommodation without identifying any undue hardship resulting from the accommodation, and finally coercing Mr. Kluge's conditional resignation under threat of termination.

93.     Defendants' actions were intentional or reckless, and violated Title VII.

### Second Cause Of Action

### Title VII of the Civil Rights Act

### Retaliation

94.     Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

95.     Defendants retaliated against Mr. Kluge for engaging in protected conduct, when it agreed in writing to the accommodation Mr. Kluge requested

for his religious beliefs, then removed that accommodation—without any showing of undue hardship—and told Mr. Kluge he could use transgender names and pronouns, resign, or be terminated.

96.   Defendants' actions were reckless or intentional, and violated Title VII.

**Third Cause Of Action**

**Title VII of the Civil Rights Act**

**Hostile Environment Based on Religion**

97.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

98.   Defendants created a hostile work environment—based on Kluge's sincerely-held religious beliefs—by demanding that Kluge address students with gender dysphoria by their preferred names, resign, or be terminated.

99.   Defendants gave Mr. Kluge the untenable choice of violating his conscience and sincere beliefs so he could provide for his family and pursue his passion, or honoring his conscience and beliefs while losing his employment and passion for music students.

100.   Defendants effectively told Mr. Kluge to leave his religion outside of the classroom or get out.

101.   That hostile environment was severe and pervasive and adversely altered Mr. Kluge's working conditions.

102.   Defendants acted recklessly or intentionally and violated Title VII.

**Fourth Cause Of Action**

**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**Retaliation**

**(42 U.S.C. § 1983)**

103.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

104.   By punishing and threatening to punish Mr. Kluge for expressing his views regarding gender dysphoria, Defendants have retaliated and are retaliating against Mr. Kluge for exercising his First Amendment rights.

105.   When Mr. Kluge communicated his views regarding gender dysphoria through his choice of names and pronouns in his prospective interactions with students and in his classroom, he was speaking on a matter of public concern, engaging in speech related to teaching and scholarship, and engaging in expression the First Amendment protects.

106.   Mr. Kluge's interest, as a teacher at a public high school, in discussing matters of public concern in the context of teaching, scholarship, and concern with students' wellbeing outweighs Defendants' interest in the efficient provision of services.

107.   Mr. Kluge's speech on matters of public concern in the context of teaching and scholarship never prevented Defendants from efficiently providing services to the public (or even threatened to do so).

108.   Defendants' transgender policies and practices, their enforcement of those policies and practices, and their threatened future enforcement of those

policies and practices would deter a person of ordinary firmness from exercising his rights of conscience and to free speech in the future.

109.   Defendants have enforced their transgender policies against Mr. Kluge because of the views he has expressed on matters of public concern in the context of teaching and scholarship, expression that the First Amendment protects.

110.   Defendants' transgender policies and their enforcement of those policies violate Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## Fifth Cause of Action

## Violation of Plaintiff's First Amendment Right to Freedom of Speech

## Content and Viewpoint Discrimination

## (42 U.S.C. § 1983)

111.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

112.   Defendants subjected Mr. Kluge to discipline due to the content and viewpoint of Mr. Kluge's speech.

113.   By punishing and threatening to punish Mr. Kluge for expressing his views regarding gender dysphoria, Defendants have engaged in content and/or viewpoint discrimination in violation of the First Amendment.

114.   Defendants' transgender policies and practices require officials to evaluate the content and viewpoint of faculty expression to determine whether

it constitutes discrimination or harassment and whether it creates a hostile environment.

115.   Defendants considered the content and viewpoint of Mr. Kluge's expression when they decided to enforce their transgender policies and practices against him.

116.   Defendants' transgender policies and practices confer unbridled discretion upon BCSC officials to discriminate based on content or viewpoint.

117.   Defendants exercised this unbridled discretion when they punished Mr. Kluge for expressing his views regarding gender identity.

118.   Defendants' transgender policies and practices and their enforcement of those policies and practices are unconstitutionally over-broad because they restrict a significant amount of constitutionally protected speech.

119.   The over-breadth of Defendants' transgender policies and practices chilled Mr. Kluge's speech, when he sought to engage in protected expression in his interactions with students at school and in the classroom.

120.   Mr. Kluge's expression regarding gender dysphoria is protected by the First Amendment.

121.   By disciplining Mr. Kluge for allegedly violating their transgender policies and practices, and terminating Kluge because he refused to use transgender names and pronouns, Defendants have punished Mr. Kluge for engaging in expression the First Amendment protects.

122.   Defendants' transgender policies and practices and their enforcement of those policies violated Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## Sixth Cause Of Action

## Violation of Plaintiff's First Amendment Right to Freedom of Speech

## Compelled Speech

## (42 U.S.C. § 1983)

123.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

124.   By punishing and threatening to punish Mr. Kluge for refusing to communicate a school corporation-mandated ideological message regarding gender dysphoria, Defendants have attempted to compel Mr. Kluge's speech, in violation of his rights under the First Amendment.

125.   Defendants' transgender policies and practices and their enforcement of those policies compelled Mr. Kluge to communicate messages about gender dysphoria that would have violated his religious beliefs.

126.   Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

## Seventh Cause Of Action

## Violation of Plaintiff's First Amendment Right to Free Exercise of Religion

## (42 U.S.C. § 1983)

127.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

128.   By punishing and threatening to punish Mr. Kluge for exercising his sincerely-held religious beliefs in the way he discusses issues regarding gender dysphoria, Defendants have violated and are violating his right to free exercise of religion under the First Amendment.

129.   Mr. Kluge's views and expression related to gender dysphoria are motivated by his sincerely-held religious beliefs, are avenues through which he exercises his religious faith, and constitute a central component of his sincerely-held religious beliefs.

130.   Expressing Defendants' mandated message regarding gender dysphoria would require Mr. Kluge to violate his sincerely-held religious beliefs.

131.   Defendants' transgender policies and related practices are neither neutral nor generally applicable but allow Defendants to target religious expression and activities specifically and to express hostility to such expression.

132.   Defendants' transgender policies and related practices are neither neutral nor generally applicable because they represent a system of individualized assessments.

133.   Defendants' transgender policies and related practices are under-inclusive, prohibiting some expression while allowing other expression equally harmful to the Defendants' asserted interests.

134. Defendants' transgender policies and related practices burden several of Mr. Kluge's constitutional rights, including his rights under the First Amendment (e.g., freedom of speech, freedom from retaliation, free exercise of religion), the unconstitutional conditions doctrine, and the Fourteenth Amendment (e.g., due process and equal protection).

135. Defendants violated Mr. Kluge's right to free exercise of religion when they applied their transgender policies and practices to discipline Mr. Kluge for communicating his views on issues related to gender dysphoria and to compel him to communicate views on those same subjects that violate his religious beliefs.

136. Defendants' transgender policies and their enforcement of those policies violated Mr. Kluge's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

## Eighth Cause Of Action

## Violation of Plaintiffs' Right to be Free from Unconstitutional Conditions

## (42 U.S.C. § 1983)

137. Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

138. By conditioning Mr. Kluge's employment at BCSC on his willingness to surrender various constitutional rights, Defendants have imposed and are imposing an unconstitutional condition on him in violation of his First Amendment rights.

139.   Defendants' transgender policies and practices and their enforcement of those policies and practices impose an unconstitutional condition upon faculty members' right to free speech and their receipt of state benefits (e.g., avoiding disciplinary actions up to and including termination, and remaining a teacher at a public high school).

140.   Defendants' transgender policies and practices and their enforcement of those policies and practices impose an unconstitutional condition upon faculty members' right to free speech which is similar to requiring organized prayer or requiring the pledge of allegiance in public schools.

141.   Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

142.   Defendants' transgender policies and practices and their enforcement of those policies and practices require faculty members to surrender their constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection to avoid disciplinary actions up to and including termination.

143.   Defendants enforced their transgender policies and practices against Mr. Kluge up to and including termination, making it clear that he could only avoid disciplinary action if he surrendered his constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection.

144.   Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to be free from unconstitutional conditions.

### Ninth Cause Of Action

### Violation of Plaintiff's Fourteenth Amendment

### Right to Due Process of Law

### (42 U.S.C. § 1983)

145.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

146.   By threatening to punish and punishing Kluge under vague and over-broad policies and practices, Defendants have violated and are violating Kluge's right to due process of law under the Fourteenth Amendment.

147.   Defendants' transgender policies and practices and their enforcement of those policies and practices are over-broad because they encompass a substantial amount of constitutionally protected speech.

148.   Mr. Kluge's expression regarding gender dysphoria is protected by the First Amendment.

149.   By terminating Mr. Kluge based on his objections to Defendants' transgender policies and practices Defendants have punished Mr. Kluge for engaging in expression the First Amendment protects.

150.   Defendants terminated Mr. Kluge because of his religious-based objections to Defendants' transgender policies and practices, and in so doing, punished him for engaging in a wide variety of constitutionally protected

expression in violation of Mr. Kluge's right to due process of law under the Fourteenth Amendment.

151.   Defendants' transgender policies and related practices are unconstitutionally vague because they grant BCSC officials unbridled discretion in deciding what constitutes "gender dysphoria" and "gender dysphoria discrimination," because they utilize terms that are inherently subjective and elude any precise or objective definition that would be consistent from one official, teacher, or student to another, and because they are incapable of providing meaningful guidance to Defendants.

152.   The lack of objective criteria, factors, or standards in Defendants' transgender policies and practices renders these policies and practices unconstitutionally vague and in violation of Mr. Kluge's right to due process of law under the Fourteenth Amendment.

## Tenth Cause Of Action

## Violation of Plaintiff's Fourteenth Amendment

## Right to Equal Protection of the Law

## (42 U.S.C. § 1983)

153.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

154.   By punishing and threatening to punish Mr. Kluge for expressing his views regarding gender dysphoria when they do not punish teachers who express opposite views on the same subject, Defendants have violated and are

violating Mr. Kluge's right to equal protection of the law under the Fourteenth Amendment.

155.   Mr. Kluge was similarly situated to other employees at the school corporation.

156.   Defendants take no disciplinary action against employees who support and endorse the concepts of gender dysphoria, but they take disciplinary action against teachers, like Mr. Kluge, who refuse to endorse those concepts.

157.   Defendants' transgender policies and practices have also been applied to discriminate intentionally against Mr. Kluge's rights to freedom of speech, right to be free from compelled speech, free exercise of religion, right to be free from unconstitutional conditions, and right to due process of law. Thus, discriminatory intent is presumed.

158.   Defendants' transgender policies and related practices burden Mr. Kluge's fundamental rights, target a suspect class (i.e., religion), and have no rational basis.

159.   Defendants' transgender policies and related practices are under-inclusive, prohibiting some expression while allowing other expression equally harmful to the school corporation's asserted interests.

160.   Defendants applied their transgender policies and related practices to Mr. Kluge in a discriminatory and unequal manner, granting other teachers the right to express their views on issues related to gender dysphoria, while

denying that right to Mr. Kluge, in violation of his right to equal protection of the law under the Fourteenth Amendment.

### Eleventh Cause Of Action

### Violation of Plaintiff's Rights of Conscience and

### Free Exercise of Religion

### (Indiana Const. Art. 1, §§ 2 and 3)

161. Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

162. By punishing and threatening to punish Mr. Kluge for exercising his sincerely held religious beliefs according to the dictates of his own conscience in the way he addresses issues regarding gender dysphoria, Defendants have violated and are violating his right to free exercise of religion under Article 1, §§ 2 and 3, of the Indiana Constitution.

163. The religious convictions Kluge expressed and which he sought to live by are sincerely held religious beliefs.

164. Defendants have infringed on Kluge's right to engage freely in his religious convictions and practices by enforcing their transgender policies and practices to force him to express views on gender dysphoria that conflict with his religious beliefs and that force him to violate his conscience and religious convictions by expressing their preferred views on gender dysphoria.

165. Defendants' transgender policies and related practices do not serve any government interests of sufficient magnitude to override Mr. Kluge's right

to live according to the dictates of his faith and according to his own conscience.

166.  Defendants' transgender policies and their enforcement of those policies violate Mr. Kluge's right to free exercise of religion as guaranteed by Article 1, §§ 2 and 3, of the Indiana Constitution.

## Twelfth Cause Of Action

## Violation of Indiana Common Law

## Intentional Infliction of Emotional Distress

167.  Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

168.  By removing Mr. Kluge's previous accommodation for his sincerely held religious beliefs, threatening Mr. Kluge with termination if he did not use transgender preferred names and pronouns or resign, and refusing to accommodate his sincerely held religious beliefs against using transgender names and pronouns, and by violating Mr. Kluge's rights under Title VII, and the United States and the Indiana Constitutions, and Defendants have intentionally caused Mr. Kluge to suffer severe emotional distress.

## Thirteenth Cause Of Action

## Violation of Indiana Common Law

## Fraud

169.  Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

170.   Defendants intentionally and knowingly falsely misrepresented to Mr. Kluge material facts, i.e., that he could submit a conditional resignation with the intent that Mr. Kluge rely upon those misrepresentations to his detriment.

171.   Defendants made a material misrepresentation of existing fact—that Mr. Kluge could submit a conditional resignation—with the intention that Mr. Kluge would rely upon its misrepresentations; and Defendants acted with malice, oppression, and fraud.

172.   Mr. Kluge reasonably relied upon Defendants' knowing, affirmative, and active false representations.

173.   As a direct and proximate result of the Defendants' false representations, Mr. Kluge has suffered actual damages.

**Prayer For Relief**

174.   Mr. Kluge respectfully prays this Court advance this case on the docket, order a hearing at the earliest practicable date, cause this case to be expedited and upon such hearing to enter judgment as follows:

a.   Enter a declaratory judgment that the Defendants' policies and practices are in violation of Title VII, the United States Constitution, the Indiana Constitution, and the common law of the State of Indiana;

b.   Enter preliminary and permanent injunctions ordering Defendants to reinstate Mr. Kluge with full back-pay and benefits, and prohibiting Defendants and their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' policies and practices to prohibit Mr. Kluge from expressing his views regarding

gender dysphoria or to punish him for expressing those views, including addressing and referring to students based on their biological sex; and ordering Defendants to take such affirmative action as is necessary to purge Mr. Kluge's personnel file of any reference to the punishment they imposed on him, and to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Mr. Kluge's employment opportunities with Defendants;

    c.  Order Defendants to take such affirmative action as is necessary to purge Mr. Kluge's personnel file of any reference to the punishment they imposed on him, and to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect employment opportunities with Defendants or other potential employers;

    d.  Award Mr. Kluge nominal, compensatory, and punitive damages for Defendants' constitutional, statutory, and common-law violations, all in an amount to be determined at trial;

    e.  Award Mr. Kluge prejudgment interest, costs, and reasonable attorney's fees as provided by 42 U.S.C. §§ 2000e-5(k) and 1988; and

    f.  Grant such other and further relief as is just and proper.

### Demand For Trial By Jury

175.  Pursuant to Fed.R.Civ.P. 38(b), Mr. Kluge demands a trial by jury on all claims so triable.

Respectfully submitted,

_s/_ **_Michael J. Cork_**
Michael J. Cork, Esq.
5754 N. Delaware Street
Indianapolis, Indiana 46220-2528
317-517-4217
email: cork0@icloud.com
Attorney for Plaintiff, John M. Kluge

_s/_ **_Roscoe Stovall, Jr._**
Roscoe Stovall, Jr.
456 N. Meridian Street
Suite 507
Indianapolis, IN 46204
317-831-3999
rstovall@roscoelaw.com
Attorney for Plaintiff, John M. Kluge

_s/_ **_Kevin E. Green_**
Kevin E. Green
456 N. Meridian Street
Suite 1517
Indianapolis, IN 46204
317-437-5002
keglegal@aol.com
Attorney for Plaintiff, John M. Kluge

## CERTIFICATE OF SERVICE

I certify that on this 15th day of July, 2019, an accurate copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following persons by operation of the Court's Electronic filing system:

Andrew P. Pinegar
Church Church Hittle + Antrim
Two North Ninth Street
Noblesville, IN 46060
Apinegar@cchalaw.com

Brent R. Borg
Church Church Hittle + Antrim
Two North Ninth Street
Noblesville, IN 46060
bborg@cchalaw.com

_s/_ **_Michael J. Cork_**
Michael J. Cork