UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN M. KLUGE,<br><br>   Plaintiff,<br><br>   v.<br>1:19-cv-2462-JMS-DLP<br><br>BROWNSBURG COMMUNITY SCHOOL CORPORATION, DR. JAMES SNAPP, Superintendent of Brownsburg Community School Corporation, in his official capacity; PHIL UTTERBACK, President of the Brownsburg Community School Corporation School Board, in his official capacity; JODI GORDON, Human Resources Director of Brownsburg Community School Corporation, in her official capacity; and DR. BRET DAGHE, Principal of Brownsburg Community School Corporation High School, in his official capacity,<br><br>   Defendants. | CASE NO. |

**Natalie Gain Declaration in Support of John Kluge's Objection to Indiana Youth Group, Inc.'s Proposed Intervention**

I, Natalie Gain declare as follows:

1. I am a 26 year old Indiana resident. I make this declaration based on my own personal knowledge. If called as a witness I could and would testify competently to the matters set forth herein.

2. I make this declaration voluntarily.

3. In July of 2015 I inquired with Mr. Kluge about working with my private students in the classrooms during the day. In August that same year Mr. Kluge emailed me to offer me a position as a violin sectionals contract teacher. In that position, I became acquainted and worked with Mr. Kluge the orchestra teacher.

4. When I arrived to work the beginning of the 2017 school year, Mr. Kluge was noticeably absent. Other staff members were shuffled around to accommodate his absence, and I do not believe that he had much if any input into the way his class was run at that time.

5. Later that week I ran into Mr. Kluge and asked him how he was doing. He was very tight lipped and simply stated that he'd been in a lot of meetings, and that it was a stressful time. He never offered more information as to the cause of the stress, or the reasoning for the meetings.

6. After Mr. Kluge and the Brownsburg Community School Corporation came to an agreement on a reasonable accommodation for him, I was made aware of the situation privately by Mr. Kluge. I thought the accommodation was a reasonable and fair solution for everyone affected. I was happy that they were able to come up with what seem to be sound and logical. The student's last names were part of their legal name so I saw no reason as to why there would be issues surrounding Mr. Kluge's compromise. He had mostly used last names only the previous school year anyway, with "Mr./Ms." for students to encourage a respectful teaching environment, like college classes.

7. In the new 2017-18 school year after the accommodation, I was interested in how he would handle things. I only heard him use last names with the students. I never heard him use gendered language in the classroom. In my interactions with the students, I was often privy to some of the rumors that circulated. I never heard any of the students discussing the Mr. Kluge's use of last names, or any references to his agreement with the administration.

8. I find it troubling that as far as I could tell, Mr. Kluge's accommodation was not common knowledge, and looking at the situation with my awareness of his accommodation, he never deviated from it. It makes no sense to me that there is not one specific complaint about Mr. Kluge (even by the student claiming harm) that Mr. Kluge was violating the agreement, yet almost a full school year after it was made, Mr. Kluge's arrangement was just deemed unacceptable.

9. Also, having reviewed Laura Susec's Declaration, I don't see how she could even mention Aidyn's extracurricular activities with Mr. Kluge, because during that academic year, freshmen like Aidyn were not eligible to participate, or were student-led with little to no teacher involvement.

10. I cannot reconcile how this teacher was reported as a problem without a shred of any fact-based evidence or reasoning. In my perspective, I find it much more plausible that Mr. Kluge's reason for the accommodation placed a target squarely on his back. His error was being Christian, and according to many supporting the Sucecs, there is no room all for Christianity or people of faith in the public school system.

11. Mr. Kluge's biggest error was in trusting the school's administration and believing the administration would honor their end of the deal.

I declare, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge and belief.

Date: 9/19/19

_____
Natalie Gain