IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN M. KLUGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:19-cv-02462-JMS-DLP |
| | ) | |
| BROWNSBURG COMMUNITY SCHOOL CORPORATION, DR. JAMES SNAPP, Superintendent of Brownsburg Community School Corporation, in his official capacity; PHIL UTTERBACK, President of the Brownsburg Community School Corporation School Board, in his official capacity; JODI GORDON, Human Resources Director of Brownsburg Community School Corporation, in her official capacity; and DR. BRET DAGHE, Principal of Brownsburg Community School Corporation High School, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

### Introduction

Defendants' Motion seeks dismissal on the entirety of Kluge's Amended Complaint, which consists of thirteen counts. (Dkt. 15, ¶¶91-173.) In his response, Kluge concedes that dismissal is appropriate for the individual defendants on the constitutional claims and that dismissal without prejudice is appropriate for the individual defendants on the state law tort

1

claims.[1] (Dkt. 56, at 10-11.) Kluge also concedes that dismissal is appropriate for his equal protection claim. (*Id.* at 31.)

The following, along with Defendants' initial brief, demonstrates that Kluge's arguments in opposition to the Motion are without merit. Accordingly, the Court should dismiss the Amended Complaint.

## Argument

I. *Kluge's Title VII claims should be dismissed.*

Kluge's Title VII claims fail for the overarching reason that there is no objective conflict between his teaching duties and his sincerely-held religious beliefs. The lack of objective conflict is discussed in more detail below in the context of Kluge's failure-to-accommodate claim. The following also provides further independent reasons why dismissal of Kluge's retaliation and hostile work environment claims is warranted.

A. *Failure to accommodate.*

Defendants argued in their initial brief that dismissal of Kluge's failure-to-accommodate claim was appropriate because there was no objective conflict between his teaching duties and his sincerely-held religious beliefs. (Dkt. 45, at 7-10.) Defendants noted that, consistent with *Summers v. Whitis*, 2016 WL 7242483 (S.D. Ind. Dec. 15, 2016), requiring Kluge to call students by the names listed in PowerSchool was an administrative function and therefore outside the purview of Brownsburg's obligation to provide a reasonable accommodation. (Dkt. 45, at 8-10.) Defendants also noted that Brownsburg was not requiring Kluge to congratulate transgender

---

[1] Defendants also argued that dismissal was appropriate for the individual defendants on Kluge's Title VII claims because none of the individual defendants was Kluge's employer. (Dkt 45, at 6.) Kluge does not address this argument in his response brief. Accordingly, the Court should conclude that dismissal is appropriate. *Cf. Pugh v. City of Attica*, 259 F.3d 619, 624 n.3 (7th Cir. 2001) ("[Plaintiff] abandoned [his] . . . claims by failing to address them in his response brief to the [defendant's] motion for summary judgment.").

students on their transition or express support for their decision. (*Id.* at 10.) Judge Young noted in *Summers* that the lack of these types of endorsements further supported a conclusion of no objective conflict. 2016 WL 7242483, at *5. Kluge advances three arguments in response to the foregoing (dkt. 56, at 13-15), but none has merit.

First, Kluge argues that because Brownsburg agreed to a last-name-only accommodation that it later withdrew, Brownsburg is somehow estopped from arguing there is no objective conflict. (Dkt 45, at 12-13.) Kluge cites no authority to support this argument and for that reason alone the Court should disregard it. *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") Lack of authority aside, Kluge does not allege that in agreeing to a last-name-only accommodation, Brownsburg took the added step of agreeing that an objective conflict existed. The document reflecting Brownsburg's agreement to the accommodation represents a practical compromise designed to get Kluge back into the classroom at the start of the school year. (*See* Dkt. 15-1.) It does not indicate that Brownsburg agreed that a conflict existed. (*See id.*)

Second, Kluge attempts to distinguish *Summers* on two grounds, first by claiming in conclusory fashion that "[r]equiring a teacher to use a transgender name cannot, by any stretch of the imagination, be considered an administrative function similar to issuing a marriage license," (dkt. 56, at 13), and second by asserting that he acted *consistent with* the PowerSchool requirement because he was using last names as stated in the database.[2] Neither attempt has merit.

---

[2] Kluge also makes passing reference to the fact that he "is not a civil servant issuing licenses," but rather worked as a high school orchestra teacher. (Dkt. 56, at 13.) That is true as it

3

Regarding the former claim—and putting to the side that Brownsburg was not requiring Kluge to use a "transgender name," but rather merely requiring all faculty to use student names listed in PowerSchool—it is hard to see how this requirement was anything but an administrative function. When calling on a student or answering a student's question, all Kluge had to do was consult PowerSchool and use the listed name. That is less than required of the clerk in *Summers*, who had to determine whether the information on the form was correct. Regarding the latter claim, Kluge asserts that "the last-names accommodation satisfied all involved" (dkt. 56, at 13), but his own allegations contradict that assertion, including his acknowledgment that that the last-name accommodation was withdrawn in part based on student complaints. (*See, e.g.*, dkt. 15-3, at 4.) In short, Kluge's attempts to distinguish *Summers* are mere distinctions that lack legal significance.

Kluge's third and final argument is nothing more than a sleight of hand in that it succumbs to a subjective standard: "It is also grossly incorrect to suggest that requiring teachers to use a new name selected by an adolescent suffering from gender dysphoria is not an expression of approval, acceptance, and even celebration." (Dkt. 56, at 15.) Of course Kluge may subjectively think that addressing students a particular way conflicts with his religious beliefs. And of course transgender issues are a divisive topic over which people of good faith can disagree. But determining whether a conflict exists does not turn on one person's say so. Instead, the Court must undertake a gatekeeping function and determine, from an objective perspective, whether there is a conflict between Kluge's sincerely-held religious beliefs and the simple requirement that he, like all high school faculty, address students by the names listed in

---

goes, but there is no indication from *Summers* or elsewhere that the objective conflict analysis is limited to one particular segment of the public-employee population.

PowerSchool. Defendants submit that resolution of that issue should result in dismissal of Kluge's failure-to-accommodate claim.

The Court should dismiss Kluge's Title VII failure-to-accommodate claim.

B.     *Retaliation.*

Defendants argued in their initial brief that Kluge's retaliation claim should be dismissed for the same reason as his failure-to-accommodate claim, as well as because there was no causal connection between his request for an accommodation and his resignation. (Dkt. 45, at 10-11.) Kluge does not address the first argument and claims the second lacks merit because at this point in the litigation the Court must accept his allegations of pretext as true, specifically that Brownsburg made up student complaints as justification for withdrawing the last-name-only accommodation. (Dkt. 56, at 16-17.)

Kluge's failure to address the first argument forecloses his claim. If the Court concludes there is no objective conflict, it necessarily follows that there cannot be retaliation based on an accommodation that Brownsburg was not obligated to provide in the first place. Regarding Kluge's pretext claim, it is apparent from his attempt to rescind his resignation that he was aware of the reasons Brownsburg decided to withdraw the last-name-only accommodation, specifically that students had complained and that colleagues were distancing themselves from him. (Dkt. 15-3, at 4-5.) Kluge's response is that Brownsburg made them up, but it defies logic that Brownsburg would accommodate Kluge for months and later concoct reasons for withdrawing the accommodation. The Court need not accept Kluge's pretext argument because at best it establishes the "sheer possibility" for relief, which falls short of the standard of review. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court should dismiss Kluge's Title VII failure-to-accommodate claim.

5

  C. *Hostile work environment.*

Defendants noted in their initial brief that Kluge's hostile work environment is based solely on the requirement that he address students by the names listed in PowerSchool. (Dkt. 45, at 12.) Defendants argued that requiring Kluge to follow a practice that applied to all high school faculty cannot constitute a hostile work environment. (*Id.* at 12-13.) In response, Kluge asserts that his claim based on more than Brownsburg's requirement that he address students by the names listed in PowerSchool, including his allegations that "he was suspended for his initial refusal to use transgender names" and that he "was fraudulently induced into submitting a conditional resignation." (Dkt. 56, 18-19.) Kluge asserts that these actions "are effectively the same thing" as telling Kluge "to get his 'f—king Christian ass' out of the school building . . . ." (*Id.* at 19.) They are nothing of the sort.

Kluge's allegations establish that Brownsburg accommodated him for months and withdrew the accommodation when it became apparent that students were complaining and that colleagues were distancing themselves from Kluge. Moreover, Kluge has not cited any case that indicates Brownsburg's requirement that he address students by the names listed in PowerSchool, which is a requirement for all high school faculty, can support a hostile work environment. In short, Kluge cannot establish that Brownsburg's conduct was objectively offensive or that it was severe or pervasive.

The Court should dismiss Kluge's Title VII hostile work environment claim.

II. *Kluge's Section 1983 claims based on speech fail.*

Defendants argued in their initial brief that Kluge's overlapping Section 1983 claims based on speech should be dismissed based on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), specifically that Kluge's allegations do not establish that he was speaking as a citizen on a matter

of public concern. (Dkt. 45, at 13-17.) To support this argument, Defendants recited several Seventh Circuit cases applying *Garcetti* to teachers' interactions with students, noting that those cases not only establish "that a teacher's classroom instruction and other workday interactions with students does not involve speech as a citizen," but also that "a public school [] has a substantial interest in controlling how teachers interact with students, particularly where the nature of a teacher's interaction threatens the learning environment." (*Id.* at 14, 16.) In addition, Defendants relied on other Seventh Circuit cases establishing that the manner in which teachers interact with students in the classroom does not constitute speech on a matter of public concern. (*Id.* at 16.)

Kluge's response to this argument is to attempt to recast Brownsburg's requirement that high school faculty address students by the name listed in PowerSchool into something that it is not. Consider the following assertions:

- "In speaking and refusing to speak on the mental disorder known as gender dysphoria, Kluge spoke as a citizen on a matter of public concern." (Dkt. 56, at 21.) Brownsburg was not requiring Kluge "to speak on a mental disorder known as gender dysphoria" as if it was mandating that he give a classroom lecture endorsing transgenderism or that he provide a brown-bag presentation to colleagues. Rather, Brownsburg merely required that Kluge, like all high school faculty, address students by the names listed in PowerSchool.

- "Transgender names were not part of Kluge's official duties in the sense that they were part of his work product that BCSC 'commissioned or created.'" (*Id.* at 22 (quoting *Garcetti*, 547 U.S. at 422).) Brownsburg was not requiring Kluge to use "transgender names." Brownsburg was providing faculty with a commonsense, easy-to-apply rule when addressing students—use the name listed in PowerSchool. Certainly it was within the scope of Kluge's official duties for Brownsburg to prescribe how he addressed students in the classroom and during the workday.

- "[S]tudent names were not part of the curriculum Kluge taught." (*Id.* at 22.) Fair enough, Kluge did not teach "student names." He taught orchestra. But the point is that at least as far as the Seventh Circuit is concerned, a school has an "interest in ensuring that its instructors *stay on message* . . . while in the

7

classroom." *Pigee v. Carl Sandburg College*, 464 F.3d 667, 672 (7th Cir. 2006) (emphasis added).

Kluge's attempts to show that he was speaking as a citizen on a matter of public concern strip the alleged speech of its context. Brownsburg's requirement that Kluge address students by the name listed in PowerSchool concerned his interactions with students in a classroom setting and during the workday more generally. Seventh Circuit cases applying *Garcetti* in this context have consistently ruled that such "speech" is not protected by the First Amendment and, tellingly, Kluge has not cited a single case upholding a teacher's free speech rights in the context of classroom instruction or the workday more generally. For this reason alone, the Court should dismiss all of Kluge's Section 1983 speech-based claims.

The following addresses other deficiencies with Kluge's Section 1983 speech-based claims that are particular to each claim.

    A.    *Retaliation.*

Kluge attempts to distinguish the three cases Defendants relied on to support their argument that a teacher's classroom instruction and other workday interactions with students does not involve speech as a citizen. None has merit:

- Kluge asserts that *Webster v. New Lenox School District No. 122*, 917 F.2d 1004 (7th Cir. 1990), should be disregarded because it concerned a school's interest in prescribing curriculum, and how Kluge addressed students is not part of the curriculum. (Dkt. 56, at 24.) *Webster* should not be read so narrowly, as the panel's observations include that public schools "do not offend the First Amendment . . . so long as their actions are reasonably related to legitimate pedagogical concerns." 917 F.2d at 1008 (citation omitted). Requiring high school faculty to address students in a consistent manner is plainly related to Brownsburg's pedagogical interest in having classroom instruction proceed efficiently.

- Kluge invites the Court to disregard *Piggee v. Carl Sandburg College*, 464 F.3d 667 (7th Cir. 2006), because he did not attempt to evangelize or counsel students. (Dkt. 56, at 25.) That factual distinction does not diminish *Piggee*'s relevance to this case. The panel recognized a school's interest in requiring

      faculty to stay on message while in the classroom, not to mention taking reasonable measures to avoid classroom interruptions and other impediments to the educational mission. *Piggee*, 464 F.3d at 672.

- Kluge claims that *Wozniak v. Adesida*, 932 F.3d 1008 (7th Cir. 2019), is distinguishable because that case involved a professor's "demeaning public statements" about his students and Kluge did no such thing. (Dkt. 56, at 25.) The panel stated, "Yet how faculty members relate to students *is* part of their jobs, which makes *Ceballos* applicable." *Wozniak*, 932 F.3d at 1010 (emphasis in original). This statement alone establishes that *Wozniak*'s reasoning is not limited to an instructor's demeaning statements about students, but rather extends to how they relate with students more generally.

The Court should dismiss Kluge's Section 1983 retaliation claim.

    B.      *Content and viewpoint discrimination.*

Kluge's only argument supporting his content and viewpoint discrimination claim is that the Court must accept the allegations in the Amended Complaint as true. (Dkt. 56, at 26.) But many of those allegations are legal conclusions. (*See, e.g.*, dkt. 15, ¶¶114-119.) The Court need not accept them as true. *See Iqbal*, 556 U.S. at 678.

The Court should dismiss Kluge's Section 1983 content and viewpoint discrimination claim.

    C.      *Compelled speech.*

Kluge's only argument to support his compelled speech claim is that the Court must accept paragraphs 124 to 126 as true at this stage in the litigation. (Dkt. 56, at 26-27.) Those paragraphs, however, are laden with legal conclusions, including that "Defendants have attempted to compel Mr. Kluge's speech, in violation of his rights under the First Amendment" and that that "Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution." (*Id.*) The Court need not accept them as true. *See Iqbal*, 556 U.S. at 678.

9

Moreover, Kluge offers no response to Defendants' argument that the Seventh Circuit's observations in *Mayer* demonstrate the absence of compelled speech, particularly that a "school system does not 'regulate' teachers' speech as much as it hires that speech," which in turn takes classrooms instruction outside the First Amendment's purview. *Mayer v. Monroe County Comm. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir. 2007).

The Court should dismiss Kluge's Section 1983 compelled speech claim.

### III. *Kluge's Section 1983 free exercise of religion claim should be dismissed.*

Defendants argued in their initial brief that Kluge's Section 1983 free exercise of religion claim warranted dismissal because Brownsburg's so-called "transgender policies" were neutral in that they applied to all high school faculty and, neutrality aside, Kluge had not alleged any intent to discriminate or the policies' lack of legitimate purpose. (Dkt. 45, at 20-21.) Regarding the policies' purpose, Defendants noted, "It should not be alarming or suspicious that a public school would want to create a uniform system for teachers to address students, as such a system helps the learning environment by promoting certainty and avoiding confusion." (Dkt. 45, at 21.)

Kluge's sole response to this argument is to copy paragraphs 129 to 132 of the Amended Complaint and state that the Court must accept them as true. (Dkt. 56, at 28.) But those paragraphs contain legal conclusions, including "Defendants' transgender policies and related practices are neither neutral nor generally applicable . . . ." (*Id.*) The Court need not accept allegations such as this as true. *See Iqbal*, 556 U.S. at 678.

The Court should dismiss Kluge's Section 1983 free exercise of religion claim.

### IV. *Kluge's Section 1983 unconstitutional condition claim should be dismissed.*

The Court should dismiss Kluge's unconstitutional condition claim for the same reasons that dismissal is warranted on his Section 1983 speech-based claims and his Section 1983 free

exercise of religion claim, namely, Kluge was not speaking as a citizen on a matter of public concern, and Brownsburg's so-called "transgender policies" were neutral. Moreover, there is no indication that the unconstitutional condition doctrine has been applied outside the context of political patronage cases. The Court should decline to extend it in this case.

The Court should dismiss Kluge's Section 1983 unconstitutional condition claim.

V.    *Kluge's Section 1983 due process claim should be dismissed.*

Defendants argued in their initial brief that Kluge's Section 1983 due process claim is foreclosed for the same reason as his viewpoint discrimination claim, as well as for the simple reason that Kluge admitted he was well aware of the consequences of continuing to use the last-name accommodation. (Dkt. 45, at 21-22.) For that reason, Kluge could not establish that the so-called "transgender policies" fail to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." (*Id.* at 21 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).)

In response, Kluge ignores that his awareness of the consequences has legal effect and instead indulges in a hypothetical: "What if a student wants to be referred to as 'they' and 'them'?" (Dkt. 56, at 30.) Ironically, Brownsburg's so-called "transgender policies" answers this question: "The name in PowerSchool should be used." (Dkt. 15-4, at 6.)

The Court should dismiss Kluge's Section 1983 due process claim.

VI.   *Kluge has failed to state a claim for relief under the Indiana Constitution, and there is no legitimate reason to certify the question to the Indiana Supreme Court.*

Defendants argued that dismissal was appropriate for Kluge's Indiana Constitutional claim because no court had extended the constitutional provisions at issue to public employment. (Dkt. 45, at 24.) The Indiana Supreme Court's decision in *City Chapel Evangelical Free Inc. v. City of South Bend*, 744 N.E.2d 443, 450 (Ind. 2001), interpreted the provisions at issue as

11

"advanc[ing] core values that restrain government interference with the practice of religious worship, both in private and in community with other persons," but the alleged constitutional deprivation in that case was an eminent domain proceeding by a municipality to condemn a church for economic redevelopment. That is quite removed from a public school's interest in controlling how its teachers interact with students. Moreover, Kluge is simply wrong when he asserts, "It seems logical the protection [under Article I, Section 3] should apply to public employment." (Dkt. 56, at 32.) Section 3's prohibition applies to laws ("No law shall . . . ."), not a public school's internal personnel matters. At any rate, the absence of controlling precedent warrants dismissal.

Nor is certification to the Indiana Supreme Court appropriate. Although the Seventh Circuit has prescribed a multi-factor analysis for courts to apply when determining the propriety of certification, *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 416-17 (7th Cir. 2004), Kluge has not addressed any of those factors. The Court should decline to do so here and again conclude that dismissal is warranted.

The Court should dismiss Kluge's Indiana constitutional claim.

VII.   *Kluge has not stated a claim for intentional infliction of emotional distress ("IIED").*

Defendants argued in their initial brief that Kluge had failed to sustain an IIED claim, which requires proof that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Dkt. 45, at 25 (quoting *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999)).) Kluge's sole response is a conclusory statement that all ninety of the factual allegations of his Amended Complaint support a claim for IIED. (Dkt. 56, at 33.) Those factual allegations include Kluge's acknowledgement that Brownsburg

y

accommodated him for months and withdrew the accommodation when faced with student complaints. (Dkt. 15, ¶46; dkt. 15-3, at 4.) In addition, Kluge acknowledged that in response to alleged "persecution and unfair treatment" he "was encouraged." (Dkt. 15-3, at 5.) An IIED claim requires nearly the opposite, namely, that the plaintiff experience severe emotional distress. In short, Kluge's factual allegations fail to meet the high bar required to sustain an IIED claim.

The Court should dismiss Kluge's IIED claim.

VIII. *Kluge's fraud claim fails.*

Defendants argued in their initial brief that to the extent Kluge's fraud claim is based on his allegation that he could submit a conditional resignation (*i.e.,* that he could withdraw it at a later date), it fails for two independent reasons, namely, that his written resignation does not include any such condition and, even if it did, any such statement by Brownsburg would have been a mere representation regarding future conduct and therefore not an actionable fraud claim. (Dkt. 45, at 25-26.)

In response, Kluge does not dispute that his written resignation lacks any mention of a conditional resignation. For that reason alone the Court should conclude that Kluge did not attempt to impose any such condition. *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls."). Moreover, even granting for the sake of argument that Brownsburg agreed with Kluge the he could withdraw his resignation at a later date, such a statement that is not actionable as fraud: "actual fraud may not be based on representations regarding future conduct . . . ." *Comfax v. North American Van Lines*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992).

The Court should dismiss Kluge's fraud claim.

**Conclusion**

For reasons stated, Defendants respectfully request that the Court dismiss Kluge's Amended Complaint in its entirety.

                                                Respectfully submitted,

                                                <u>/s/ Brent R. Borg</u>
                                                Brent R. Borg, Attorney No. 27415-29
                                                Alexander P. Pinegar, Attorney No. 26543-49
                                                Church Church Hittle + Antrim
                                                10765 Lantern Road, Suite 201
                                                Fishers, IN 46038
                                                317-773-2190

                                                Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October 2019, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following persons by operation of the Court's Electronic filing system:

Kevin E. Green
Kevin Green Associates
456 N. Meridian Street, #1517
Indianapolis, IN  46204
keglegal@aol.com

Roscoe Stovall, Jr.
Roscoe Stovall, Jr. & Associates
2 West Main Street
Mooresville, IN 46158
rstovall@roscoelaw.com

Isaac C. Belfar
William Isasi
Henry Liu
D. Jean Veta
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
ibelfer@cov.com
wisasi@cov.com
hliu@cov.com
jveta@cov.com

Camilla B. Taylor
Lambda Legal Defense and Education Fund, Inc.
10 W Adams, Suite 2600
Chicago, IL  60603
ctaylor@lambdalegal.org

Michael J. Cork
Michael J. Cork, Esq.
5754 N. Delaware St.
Indianapolis, IN  46220-2528
cork0@icloud.com

Barbara J. Baird
Law Office of Barbara J. Baird
445 Northwest Pennsylvania Street, Suite 401
Indianapolis, IN  46204
bjbaird@bjbairdlaw.com

Paul D. Castillo
Lambda Legal Defense and Education Fund, Inc.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX  75219
pcastillo@lambdalegal.org

                                                    /s/ *Brent R. Borg*
                                                    Brent R. Borg, Atty No: 27415-29