IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN M. KLUGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:19-cv-02462-JMS-DLP |
| | ) | |
| BROWNSBURG COMMUNITY | ) | |
| SCHOOL CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S**
**FIRST AMENDED COMPLAINTAND DEMAND FOR JURY TRIAL**

Comes now Defendant Brownsburg Community School Corporation (the "School"), by counsel, and, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), submits the following Answer to Plaintiff's First Amended Complaint and Demand for Jury Trial.

**Nature Of The Case**

1.      Plaintiff, John M. Kluge, files his first amended complaint as a matter of course under FRCP 15(a)(1)(A), within 21 days of serving his original complaint on June 24, 2019. Mr. Kluge brings this action to remedy discrimination, harassment, and retaliation by Defendants on the basis of religion in the terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

**Answer:**      The School admits that Plaintiff's Amended Complaint purported to bring certain claims against the School and other defendants and that all of those claims have been dismissed with prejudice, except Plaintiff's claims against the School for alleged failure to accommodate under Title VII (Count 1) and alleged retaliation under Title VII (Count 2). The

1

School denies that Plaintiff is entitled to relief on these remaining claims. The School denies any remaining allegation in Paragraph 1 of the Amended Complaint.

2.      Mr. Kluge also brings this action against Defendants for violating his First Amendment rights to free speech and free exercise of religion, violating the unconstitutional conditions doctrine, depriving him of due process and equal protection of law, for retaliating against him for exercising his First Amendment rights, and for denying him his right to exercise his religion under the Indiana Constitution. Thus, this action concerns the denial of Mr. Kluge's fundamental and clearly established rights under the Free Speech and Free Exercise Clauses of the First Amendment, the unconstitutional conditions doctrine, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and Article 1, §§ 2 and 3, of the Indiana Constitution.

**<u>Answer:</u>**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School admits that the allegations in Paragraph 2 purported to give rise to certain claims against the School, but those claims have now been dismissed with prejudice. The School denies any remaining allegation in Paragraph 2 of the Amended Complaint.

3.      Mr. Kluge also brings claims against Defendants for intentional infliction of emotional distress and fraud, in violation of the common law of the State of Indiana.

**<u>Answer:</u>**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School admits that the allegations in Paragraph 3 purported to give rise to claims against the School, but those claims have now been dismissed with prejudice. The School denies any remaining allegation in Paragraph 3 of the Amended Complaint.

**Jurisdiction And Venue**

4.      This civil rights action raises federal questions under the United States

Constitution, particularly the First and Fourteenth Amendments, the Civil Rights Act of 1871, 42

U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et*

*seq.*

**Answer:**      The School admits that jurisdiction is proper under 28 U.S.C. § 1331 for

Plaintiff's remaining claims. The School denies any remaining allegation in Paragraph 4 of the

Amended Complaint.

5.      Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343(a)(4), and

42 U.S.C. §§ 2000e-(5) and 2000e-(16).

**Answer:**      The School admits that jurisdiction is proper under 28 U.S.C. § 1331 for

Plaintiff's remaining claims. The School denies any remaining allegation in Paragraph 5 of the

Amended Complaint.

6.      This Court has authority to award the requested damages under 28 U.S.C. § 1343;

the requested declaratory relief pursuant to 28 U.S.C. §§ 22012202; the requested injunctive

relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42

U.S.C. § 1988.

**Answer:**      The School admits that the Court has authority to award relief under 28

U.S.C. §§ 2201 and 2202, but denies that Plaintiff is entitled to any relief. The School denies any

remaining allegation in Paragraph 6 of the Amended Complaint.

7.      This Court has supplemental jurisdiction over the state law claim(s) made herein

under 28 U.S.C. § 1367.

**Answer:**       The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School admits that the Court could have exercised supplemental jurisdiction over the state-law claims asserted in the Amended Complaint, but those claims have now been dismissed with prejudice. The School denies any remaining allegation in Paragraph 7 of the Amended Complaint.

8.       Venue is proper in this district and division under 28 U.S.C. § 1391(b) and § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because Defendants reside in this district and division and/or all of the acts described in this Complaint occurred in this district and division.

**Answer:**       Admitted.

**Exhaustion**

9.       Mr. Kluge filed a charge of discrimination against BCSC with the Equal Employment Opportunity Commission ("EEOC") on June 26, 2018, and an amended charge on June 29, 2018, complaining of the acts of religious discrimination, harassment, and retaliation alleged herein.

**Answer:**       The charge and amended charge that Plaintiff claims he filed speak for themselves. The School denies any remaining allegation in Paragraph 9 of the Amended Complaint.

10.       On March 13, 2019, more than 180 days after the filing of his charge, the Department of Justice Civil Rights Division issued Mr. Kluge, via Certified Mail No. 7003 0500 0002 5072 1954, a Notice of Right to Sue Within 90 Days, authorizing Mr. Kluge to file suit against defendant BCSC under Title VII.

**Answer:**       The right-to-sue notice that Plaintiff claims he received speaks for itself. The School denies any remaining allegation in Paragraph 10 of the Amended Complaint.

11.     The DOJ's Notice of Right To Sue was received and signed for by Mr. Kluge's counsel on March 25, 2019.

**Answer:**     The right-to-sue notice that Plaintiff claims he signed for speaks for itself. The School denies any remaining allegation in Paragraph 11 of the Amended Complaint.

12.     The original complaint was filed within 90 days of receipt of the DOJ's Notice of Right to Sue Within 90 Days.

**Answer:**     The School is without information to admit or deny the allegations in Paragraph 12 of the Amended Complaint and therefore denies the same.

13.     Mr. Kluge has complied fully with all prerequisites to jurisdiction in this Court under Title VII, and jurisdiction is proper under § 706(0(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

**Answer:**     The School admits that jurisdiction is proper under 28 U.S.C. § 1331 for Plaintiff's remaining claims. The School is without information to admit or deny whether Plaintiff has satisfied all prerequisites for exhaustion of administrative remedies under Title VII and therefore denies the same. The School denies any remaining allegation in Paragraph 13 of the Amended Complaint.

14.     Mr. Kluge also filed a tort claims notice under I.C. 34-13-3-8 *et seq.,* and a notice under I.C. 34-13-3.5-4, advising BCSC and the appropriate state agency of one or more claim(s) by Mr. Kluge against BCSC, an Indiana public school corporation, under the laws of the United States and/or the laws of the State of Indiana. A copy of the referenced notices was hand-delivered by Mr. Kluge's counsel to the BCSC Board of Trustees and BCSC Superintendent, Dr. James Snapp, at a public board meeting on July 9, 2018. Mr. Kluge's counsel then mailed a copy of the tort claims notice and notice of claim(s) against an Indiana public school corporation,

under I.C. 34-13-3-8 et seq., and I.C. 34-133.5-4, respectively, on July 11, 2018, to the Indiana

Political Subdivision Risk Management Commission, 311 W. Washington St., Suite 103,

Indianapolis, IN 46204, via certified mail, tracking number 70083230000221194572. USPS

Tracking shows that the notice was delivered to the Commission on July 13, 2018.

      **Answer:**      The allegations in this paragraph are wholly concerned with claims that

the Court has dismissed with prejudice. To the extent a response is required, the School admits

that it received the notice that Plaintiff references, but that such notice relates to state-law claims

that have now been dismissed with prejudice. The School denies any remaining allegation in

Paragraph 14 of the Amended Complaint.

### Parties

      15.      Plaintiff Kluge is a citizen and resident of the United States and the County of

Hendricks, State of Indiana.

      **Answer:**      The School admits that Plaintiff is a United States citizen. The School is

without information to admit or deny whether Plaintiff is a resident of Hendricks County

currently, and therefore denies the same. The School denies any remaining allegation in

Paragraph 15 of the Amended Complaint.

      16.      Defendant BCSC is an Indiana community school corporation doing business in

the Southern District of Indiana and is subject to the jurisdiction of this Court.

      **Answer:**      The School admits that it is a school corporation as defined by Ind. Code §

20-18-2-16 and that the Court has personal jurisdiction over it. The School denies any remaining

allegation in Paragraph 16 of the Amended Complaint.

      17.      Defendant BCSC is an independent corporate body able to sue and be sued and

enter into contracts. As such, BCSC is a "person" under 42 U.S.C. § 1983 and subject to suit.

**Answer:**       The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School admits that it is a person as defined by 42 U.S.C. § 1983, but that statute relates to claims that have now been dismissed with prejudice. The School denies any remaining allegation in Paragraph 17 of the Amended Complaint.

18.       At all times relevant, BCSC was and is an employer within the meaning of 42 U.S.C. § 2000e-(b).

**Answer:**       The School admits that it was an employer as defined by 42 U.S.C. § 2000e-(b) at all times during Plaintiff's employment. The School denies any remaining allegation in Paragraph 18 of the Amended Complaint.

19.       Dr. James Snapp was at all times relevant the Superintendent of the BCSC; Phil Utterback was at all times relevant the President of the BCSC School Board, Jodi Gordon was at all times relevant the Human Resources Director of the BCSC; and Dr. Bret Daghe was at all times relevant the Principal of Brownsburg High School.

**Answer:**       The School admits that these individuals held the titles Plaintiff attributes to them at all times during Plaintiff's employment, except that Phil Utterback served as the School's board president from January 2018 to December 2019. The School denies any remaining allegation in Paragraph 19 of the Amended Complaint.

20.       Defendants Snapp, Utterback, Gordon, and Daghe, acting in their official capacities, are "persons" under 42 U.S.C. § 1983 and subject to suit.

**Answer:**       The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Allegations Common To All Causes Of Action**

21.    Mr. Kluge became employed by Defendant BCSC in August of 2014 as a Music and Orchestra Teacher.

**Answer**:    Admitted.

22.    Mr. Kluge is a Christian and has been since before BCSC employed him.

**Answer**:    The School is without information to admit or deny the allegations in Paragraph 22 of the Amended Complaint and therefore denies the same.

23.    Mr. Kluge's sincerely-held religious beliefs include a belief that it is sinful to promote gender dysphoria.

**Answer**:    The School is without information to admit or deny the allegations in Paragraph 23 of the Amended Complaint and therefore denies the same.

24.    Mr. Kluge's performance while employed at Defendant BCSC met and exceeded BCSC's legitimate expectations at all times, and his written performance evaluations were positive.

**Answer**:    Denied.

25.    During Mr. Kluge's employment, his music students received multiple awards for their performances.

**Answer**:    The School admits that some students of Plaintiff received awards for their performances. The School denies any remaining allegation in Paragraph 25 of the Amended Complaint.

26.    Mr. Kluge was terminated on May 25, 2018, because of a conflict between his sincerely-held religious beliefs and Defendant BCSC's gender dysphoria speech code.

**Answer**:    Denied.

27.     At the time of Mr. Kluge's termination, he was earning a base salary of $46,250, a music director stipend of $5,200, and fringe benefits.

**Answer:**     The terms of Plaintiff's employment with the School are outlined in his regular teacher's contract, which speaks for itself. The School denies any remaining allegation in Paragraph 27 of the Amended Complaint.

28.     In early 2017, Defendant BCSC began encouraging teachers to affirm childhood gender dysphoria.

**Answer:**     Denied.

29.     While no formal policy was introduced, Defendants encouraged its faculty to affirm students who were experiencing gender dysphoria.

**Answer:**     The phrase "encouraged its faculty to affirm students who were experiencing gender dysphoria" is vague and the School therefore denies the same. The School denies any remaining allegation in Paragraph 29 of the Amended Complaint.

30.     In May of 2017, Mr. Kluge communicated to Defendants a conflict between his sincerely-held religious beliefs and affirming gender dysphoria.

**Answer:**     Denied.

31.     Mr. Kluge is a professing evangelical Christian who strives to live by his faith on a daily basis.

**Answer:**     The School is without information to admit or deny the allegations in Paragraph 31 of the Amended Complaint and therefore denies the same.

32.     Mr. Kluge's Christian faith governs the way he thinks about human nature, marriage, gender, sexuality, morality, politics, and social issues, and it causes him to hold sincerely-held religious beliefs in these areas.

**Answer:**      The School is without information to admit or deny the allegations in Paragraph 32 of the Amended Complaint and therefore denies the same.

33.      Mr. Kluge's sincerely-held religious beliefs are drawn from the Bible.

**Answer:**      The School is without information to admit or deny the allegations in Paragraph 33 of the Amended Complaint and therefore denies the same.

34.      Mr. Kluge believes that God created mankind as either male or female, that this gender is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual's feelings or desires.

**Answer:**      The School is without information to admit or deny the allegations in Paragraph 34 of the Amended Complaint and therefore denies the same.

35.      Mr. Kluge also believes he cannot affirm as true ideas and concepts that he deems untrue and sinful, as this would violate Biblical injunctions against dishonesty, lying, and effeminacy.

**Answer:**      The School is without information to admit or deny the allegations in Paragraph 35 of the Amended Complaint and therefore denies the same.

36.      Mr. Kluge also believes that he is required to treat each person with dignity, love, and respect, as each individual is created in God's image; this regularly manifested itself in kindness and helpfulness toward students, including students with gender dysphoria.

**Answer:**      The School is without information to admit or deny the allegations in Paragraph 36 of the Amended Complaint and therefore denies the same.

37.      Mr. Kluge's sincerely held religious beliefs cause him to object to communicating a community school corporation-mandated ideological message regarding gender dysphoria that he does not believe, that he does not wish to communicate, that he believes promotes a

destructive lifestyle, and that contradicts—and would force him to violate—his sincerely-held religious beliefs.

**Answer:**      The School denies the implication that it required Plaintiff to communicate "a community school corporation-mandated ideological message regarding gender dysphoria." The School is without information to admit or deny the remaining allegations in Paragraph 37 of the Amended Complaint and therefore denies the same.

38.      During the summer of 2017, Defendant BCSC began to allow students experiencing gender dysphoria to use the bathroom of their choice and to change their legal birth names on the BCSC database (known as "Power School") to a new, transgender name, which was not the students' legal names.

**Answer:**      The School admits that around the start of the 2017-2018 school year, it began to allow any high school student to change the student's name listed in the high school's database (known as "PowerSchool"), if the student provided letters from a parent and a health care professional. The School denies any remaining allegation in Paragraph 38 of the Amended Complaint.

39.      BCSC employees, including Mr. Kluge, were instructed to use the transgender students' preferred names—names based upon the students' gender dysphoria.

**Answer:**      The School admits that around the start of the 2017-2018 school year, Brownsburg began instructing its high school faculty to address students by the name listed in PowerSchool. The School denies any remaining allegation in Paragraph 39 of the Amended Complaint.

40.      After Mr. Kluge communicated to BCSC Superintendent, Defendant Snapp, that the requirement conflicted with Mr. Kluge's religious beliefs, on July 27, 2017, Defendant Snapp

told Mr. Kluge he could use the transgender names, say he was forced to resign from BCSC, or be terminated without pay.

**Answer:**        The School admits that on or around the first day of classes for the 2017-2018 school year, Kluge announced that he would not address students by the name listed in PowerSchool. The School further admits that Dr. Snapp and Dr. Daghe met with Kluge to better understand his concerns and arrive at an accommodation. The School denies any remaining allegation in Paragraph 40 of the Amended Complaint.

41.        Because Mr. Kluge refused to affirm gender dysphoria, Defendant Snapp, initiated an administrative leave of absence for Mr. Kluge, pending termination.

**Answer:**        Denied.

42.        Defendant Daghe issued Mr. Kluge an ultimatum on Friday, July 28, 2017, mandating use of transgender preferred names, and giving Mr. Kluge until noon on Monday, July 31st to decide if he would comply.

**Answer:**        Denied.

43.        On July 31st, Mr. Kluge met with Superintendent, Defendant Snapp, and Human Resources Director, Defendant Gordon, to discuss Defendants' ultimatum. Mr. Kluge requested an accommodation for his religious beliefs, and he proposed a reasonable accommodation that consisted of addressing all students by their last names only, similar to a sports coach.

**Answer:**        The School admits that it allowed Plaintiff to address all students by their last names only (*e.g.*, Plaintiff would call Tom Smith "Smith" or Sally Jones "Jones"), that it relieved Plaintiff of the obligation of passing out orchestra uniforms in response to Plaintiff's concerns about doing so for transgender students, and that these accommodations were

documented in a memorandum dated July 28, 2017, which Plaintiff signed on July 31, 2017. The

School denies any remaining allegation in paragraph 43 of the Amended Complaint.

44.     Defendants Snapp and Gordon, on behalf of Defendant BCSC, agreed to Mr.

Kluge's accommodation; inserted handwritten language in the July 28th communication from

Defendant Daghe approving the last names only accommodation and also indicating that Mr.

Kluge would not be required to distribute student uniforms; and Defendant Gordon initialed the

accommodation, while Mr. Kluge signed and dated that document. An accurate copy of the

approved accommodation is attached as Exhibit A.

**Answer:**      Exhibit A speaks for itself. The School denies any remaining allegation in

Paragraph 44 of the Amended Complaint.

45.     Despite the written accommodation, on August 7, 2017, Defendants' School

Board administered a suspension to Mr. Kluge for July 27 and 28, 2017, in response to

Defendant Snapp's previous action.

**Answer:**      Denied.

46.     Although Kluge's accommodation created no undue hardship for Defendants and

no defendant has identified in writing any claimed undue hardship, Defendant Daghe met with

Mr. Kluge on December 13, 2017, and told him the accommodation created "tension," and that

Mr. Kluge should resign by year-end.

**Answer:**      The School admits that Dr. Daghe met with Plaintiff on or around

December 13, 2017, and that during the meeting, Dr. Daghe mentioned that some members of

the high school community had expressed concerns with Plaintiff addressing students by last

name only. The School denies any remaining allegation in Paragraph 46 of the Amended

Complaint.

47.     Nothing dramatic occurred between July 31, 2017, and December 31, 2017; there were no student protests, there were no written complaints about Mr. Kluge's use of last names for all students, there were no classroom disturbances, and there were no cancelled classes; instead, the accommodation worked as intended and Mr. Kluge's students excelled. For example: Mr. Kluge's extra curricular chamber ensemble and jazz program had record numbers of participation in the 2017-2018 school year; Mr. Kluge had many students advance to the state level at their solo and ensemble competition in the spring semester of 2018; and Mr. Kluge's three curricular orchestras and extra-curricular jazz orchestra all received gold ratings at their ISSMA competitions in the spring of 2018, and the Symphony Orchestra even received a "Gold with Distinction" rating, its best ever in the history of the program.

**Answer**:     The School admits that some students of Plaintiff received awards for their performances during the 2017-2018 school year. The School denies any remaining allegation in Paragraph 47 of the Amended Complaint.

48.     Defendants simply decided not to accommodate or tolerate Mr. Kluge's sincerely-held religious beliefs any longer.

**Answer**:     Denied.

49.     Defendant Daghe met with Mr. Kluge again on January 17, 2018, and reiterated his request that Mr. Kluge resign by the end of the school year.

**Answer**:     The School admits that in light of the concerns expressed by some members of the high school community, Dr. Daghe met with Plaintiff twice in January 2018 to attempt to find an alternative to the last-name-only accommodation. The School denies any remaining allegation in Paragraph 49 of the Amended Complaint.

50.     On February 6, 2018, Director of Human Resources, Defendant Gordon, told Mr. Kluge his religious accommodation was being withdrawn, since students were offended at the use of last names, although Mr. Kluge never told his students why he was referring to them by their last names.

**Answer:**     The School admits that in light of the concerns expressed by some members of the high school community, Dr. Daghe and Gordon met with Plaintiff in February 2018 to attempt to find an alternative to the last-name-only accommodation. The School denies any remaining allegation in Paragraph 50 of the Amended Complaint.

51.     Although Defendant Gordon told Mr. Kluge that students were offended by his use of last names, she provided no evidence supporting her assertion.

**Answer:**     Denied.

52.     Mr. Kluge told Defendant Gordon in that February 6th meeting that she was discontinuing a reasonable accommodation for his sincerely-held religious beliefs.

**Answer:**     Denied.

53.     Mr. Kluge explained again that he believes encouraging students to present themselves as the opposite sex by calling them an opposite-sex first name is sinful and potentially harmful to the students.

**Answer:**     Denied.

54.     Defendants never identified, either verbally or in writing, any undue hardship associated with Mr. Kluge's last names only accommodation.

**Answer:**     Denied.

55.     And Defendants never identified any legitimate—let alone compelling— government interest in forcing Mr. Kluge to use transgender terminology.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

56.      Instead, Defendants simply desired to promote and accommodate gender dysphoria over sincerely-held religious beliefs.

**Answer:**        Denied.

57.      Defendant Gordon, on behalf of Defendant BCSC, advised Mr. Kluge that he could either resign by May 1, 2018, and be paid over the summer, or be fired, without pay, and Defendant Gordon agreed that he could submit a conditional resignation.

**Answer:**        Denied.

58.      Defendant Gordon accepted a conditional resignation from Mr. Kluge on April 30, 2018, after she agreed that one condition was that his resignation would not be processed or shown to anyone, including any administrator, until May 29, 2018; and after she further agreed that another condition was that he could withdraw his resignation prior to that time. An accurate copy of Mr. Kluge's conditional resignation is attached as Exhibit B.

**Answer:**        The School admits that Gordon accepted Plaintiff's resignation effective at the end of the 2017-2018 school year and that its board approved Gordon's acceptance at its regular monthly meeting on June 11, 2018. The School further admits that Exhibit B speaks for itself. The School denies any remaining allegation in Paragraph 58 of the Amended Complaint.

59.      Thereafter, on May 25, 2018, Mr. Kluge delivered to Defendant Gordon's office a time-stamped letter of rescission of his resignation. The time-stamp shows it was received at 2:33 p.m. An accurate copy of Mr. Kluge's rescission is attached as Exhibit C.

**Answer:**      The School admits that Plaintiff attempted to rescind his resignation and that such attempt was legally invalid. The School further admits that Exhibit C speaks for itself. The School denies any remaining allegation in Paragraph 59 of the Amended Complaint.

60.      But in spite of receiving Mr. Kluge's rescission of his resignation, and in spite of agreeing not to process the resignation or share it with any administrator until May 29, 2018, Defendant Gordon processed Mr. Kluge's resignation on May 25th, within two hours after he rescinded it; thereby violating all of the conditions Defendants agreed to before Mr. Kluge submitted the resignation.

**Answer:**      Denied.

61.      When Defendants told Mr. Kluge he could submit a conditional resignation and then accepted Mr. Kluge's conditional resignation, they had no intention of honoring the conditions he attached to his resignation, but instead planned on treating Mr. Kluge's resignation as unconditional upon receipt and claiming that he voluntarily resigned his position.

**Answer:**      Denied.

62.      Subsequently, Defendants and the BCSC School Board accepted Mr. Kluge's resignation as if it was submitted unconditionally.

**Answer:**      Denied.

63.      On the night of May 25, 2018, Defendants locked Mr. Kluge out of the BCSC buildings and internet, and posted his job as vacant.

**Answer:**      The School admits that it restricted Plaintiff's access to the School's property after the last day of classes and also posted his job as vacant. The School denies any remaining allegation in Paragraph 63 of the Amended Complaint.

64.     Defendants' application of the BCSC gender dysphoria policies provides few objective guidelines, standards, or criteria for school employees, including faculty members like Mr. Kluge, to use when deciding what constitutes gender dysphoria or gender discrimination, thereby granting Defendants overbroad discretion to restrict expression.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

65.     The majority of Defendants' gender dysphoria policies and practices were informal and unwritten.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

66.     But at a faculty meeting in early 2018, Defendant BCSC distributed an 11-page document entitled, "Transgender Questions" which identifies Defendant BCSC's policies regarding childhood gender dysphoria and provides answers to faculty questions regarding transgender students. An accurate copy of Defendants' "Transgender Questions" policy is attached as Exhibit D.

**Answer:**     Exhibit D speaks for itself. The School denies any remaining allegation in Paragraph 66 of the Amended Complaint.

67.     Defendant BCSC's "Transgender Questions" policy indicates it was revised in January of 2018, but no earlier written policy by that title was provided to Defendant BCSC's staff members, including Mr. Kluge.

**Answer:**     Denied.

68.     Defendant BCSC's "Transgender Questions" policy is vague and overbroad in many respects; for example, in response to use of dressing rooms by transgender students, the policy states that "fully transitioned" students may use the dressing room of their chosen gender, while students who are not "fully transitioned" will be provided alternate dressing locations.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

69.     Defendant BCSC's "Transgender Questions" policy is vague in that it does not define "fully transitioned," it does not provide faculty with any idea of how to determine whether a student is fully transitioned, and it does not indicate what "alternate dressing locations" are available for students who are not "fully transitioned."

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

70.     Moreover, the policy does not state whether a faculty member is to require some proof from student who claims to be "fully transitioned" or simply take the student's word for his/her gender identity.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

71.     Defendant BCSC's "Transgender Questions" policy instructs faculty to use the new names transgender students choose as part of their gender dysphoria.

**Answer:**      Denied.

72.     Notably the "Transgender Questions" policy states, in question and answer format:

"Are we allowed to use the student's last name only?

We have agreed to this for the 2017-2018 school year, but moving forward it is our expectation the student will be called by the first name listed in PowerSchoo[;]"

"Can teachers refuse to call the student by his/her preferred name? Staff members need to call students by name in PowerSchool[;]" and

"How do teachers break from their personal biases and beliefs so that we can best serve our students? We know this is a difficult topic for some staff members, however, when you work in a public school, you sign up to follow the law and the policies/practices of that organization and that might mean following practices that are different than your beliefs."

**Answer:**       Exhibit D speaks for itself. The School denies any remaining allegation in Paragraph 72 of the Amended Complaint.

73.     Without mentioning Mr. Kluge's "last names only" religious accommodation, the "Transgender Questions" policy coincides with the challenge to Mr. Kluge's accommodation by Defendant Daghe in December of 2017, and the removal of his accommodation by Defendant Gordon in February of 2018; and the policy supports Defendants' request that Mr. Kluge resign.

**Answer:**       Denied.

74.     The "Transgender Questions" policy establishes that Defendant BCSC's formal policy was not to allow Kluge's last-name only accommodation—not because it created any undue hardship, but because it violated the policy.

**Answer:**       Denied.

75.     Defendant Daghe's statement to Kluge on December 13, 2017, that his accommodation created "tension" and he should resign, and Defendant Gordon's statement to Kluge on February 6, 2018, that students were offended by use of last names, were not based on fact, but were simply pretexts for religious discrimination, per Defendant BCSC's new policy in direct opposition to Mr. Kluge's accommodation.

**Answer:**      Denied.

76.     Defendants' "Transgender Questions" policy states: "... when you work in a public school, you sign up to follow the law and the policies/practices of that organization and that might mean following practices that are different than your beliefs ...", thus suggesting that following school policies and practices is the same as following the law, and communicating to faculty—incorrectly—that a public school teacher's religious beliefs or rights of conscience, have no legal standing and must take a "back seat" to school policies and practices.

**Answer:**      Exhibit D speaks for itself. The School denies any remaining allegation in Paragraph 76 of the Amended Complaint.

77.     Defendants' formal and informal policies and practices, including their "Transgender Questions" policy, attempt to regulate and compel the expression of individual faculty members, like Mr. Kluge, beyond any quantifiable need in educating students.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

78.     Defendants, by policy and practice, apply their speech code policies to regulate all interactions faculty members have with students in the classroom or within the school.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

79.     Defendants' directive to Mr. Kluge that he either communicate its ideological message regarding gender dysphoria, resign, or be fired, left Mr. Kluge with an untenable choice of maintaining his employment while violating his sincerely-held religious beliefs on an almost daily basis, or losing his employment—the chief financial means of support for his family.

**Answer:**      The School is without knowledge or information regarding whether Plaintiff's compensation from the School was the chief financial means for Plaintiff to support his family. The School denies any remaining allegation in Paragraph 79 of the Amended Complaint.

80.     The accommodation that Mr. Kluge recommended and that Defendants agreed to, treated all students exactly the same, by referring to their last names only.

**Answer:**      Denied.

81.     The Defendants' removal of the successful "last-names only" accommodation based on the alleged complaints of students—who only speculated he was using last names to avoid transgender names and pronouns, and wanted Kluge to capitulate—does not amount to undue hardship, but is an impermissible "heckler's veto."

**Answer:**      Denied.

82.     Mr. Kluge has suffered mental, emotional, financial, and reputational harm as a result of the Defendants' intentional actions.

**Answer:**      Denied.

## Statements Of Law

83.     At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to Defendants who acted under color of a statute, regulation, or custom of the State of Indiana (i.e., under color of state law and authority).

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

84.     Defendants knew or should have known that they were violating Mr. Kluge's constitutional, statutory, and contractual rights by their actions, as described herein.

**Answer:**      Denied.

85.     Mr. Kluge is suffering irreparable harm from Defendants' speech code policy and the way that policy has been enforced.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

86.     Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

87.     Defendants' transgender policies and related practices are not narrowly tailored as applied to Mr. Kluge because his expression does not implicate any of the legitimate interests Defendants might have.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

88.    Mr. Kluge has no adequate or speedy remedy at law to correct the deprivation of his rights by Defendants.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

89.    Unless the policies and conduct of Defendants are enjoined, Mr. Kluge will continue to suffer irreparable injury, including, but not limited to, damage to reputation and damage to professional growth.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

90.    Under 42 U.S.C. §§ 1983, 1988, and 2000e, Mr. Kluge is entitled to appropriate remedies for Defendants' challenged policies, practices, and related conduct.

**Answer:**     Denied.

## First Cause Of Action

## Title VII of the Civil Rights Act

## Religious Discrimination - Failure to Accommodate

91.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**     The School incorporates its answers to Paragraphs 1 to 90 above.

92.     Defendants discriminated against Mr. Kluge in the terms and conditions of his employment on the basis of Mr. Kluge's sincerely-held religious beliefs, by refusing to discuss an accommodation for Mr. Kluge's beliefs, then agreeing in writing to a "last names-only" accommodation that did not result in any undue hardship, then removing that accommodation without identifying any undue hardship resulting from the accommodation, and finally coercing Mr. Kluge's conditional resignation under threat of termination.

**Answer:**       Denied.

93.     Defendants' actions were intentional or reckless, and violated Title VII.

**Answer:**       Denied.

## Second Cause Of Action

## Title VII of the Civil Rights Act

## Retaliation

94.     Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**       The School incorporates its answers to Paragraphs 1 to 90 above.

95.     Defendants retaliated against Mr. Kluge for engaging in protected conduct, when it agreed in writing to the accommodation Mr. Kluge requested for his religious beliefs, then removed that accommodation—without any showing of undue hardship—and told Mr. Kluge he could use transgender names and pronouns, resign, or be terminated.

**Answer:**       Denied.

96.     Defendants' actions were reckless or intentional, and violated Title VII.

**Answer:**       Denied.

### Third Cause Of Action

### Title VII of the Civil Rights Act

### Hostile Environment Based on Religion

97.     Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**      The School incorporates its answers to Paragraphs 1 to 90 above.

98.     Defendants created a hostile work environment—based on Kluge's sincerely-held religious beliefs—by demanding that Kluge address students with gender dysphoria by their preferred names, resign, or be terminated.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

99.     Defendants gave Mr. Kluge the untenable choice of violating his conscience and sincere beliefs so he could provide for his family and pursue his passion, or honoring his conscience and beliefs while losing his employment and passion for music students.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

100.    Defendants effectively told Mr. Kluge to leave his religion outside of the classroom or get out.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

101.    That hostile environment was severe and pervasive and adversely altered Mr. Kluge's working conditions.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

102.    Defendants acted recklessly or intentionally and violated Title VII.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Fourth Cause Of Action**

**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**Retaliation**

**(42 U.S.C. § 1983)**

103.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**    The School incorporates its answers to Paragraphs 1 to 90 above.

104.    By punishing and threatening to punish Mr. Kluge for expressing his views regarding gender dysphoria, Defendants have retaliated and are retaliating against Mr. Kluge for exercising his First Amendment rights.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

27

105.     When Mr. Kluge communicated his views regarding gender dysphoria through his choice of names and pronouns in his prospective interactions with students and in his classroom, he was speaking on a matter of public concern, engaging in speech related to teaching and scholarship, and engaging in expression the First Amendment protects.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

106.     Mr. Kluge's interest, as a teacher at a public high school, in discussing matters of public concern in the context of teaching, scholarship, and concern with students' wellbeing outweighs Defendants' interest in the efficient provision of services.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

107.     Mr. Kluge's speech on matters of public concern in the context of teaching and scholarship never prevented Defendants from efficiently providing services to the public (or even threatened to do so).

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

108.     Defendants' transgender policies and practices, their enforcement of those policies and practices, and their threatened future enforcement of those policies and practices would deter a person of ordinary firmness from exercising his rights of conscience and to free speech in the future.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

109.    Defendants have enforced their transgender policies against Mr. Kluge because of the views he has expressed on matters of public concern in the context of teaching and scholarship, expression that the First Amendment protects.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

110.    Defendants' transgender policies and their enforcement of those policies violate Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

## Fifth Cause of Action

## Violation of Plaintiff's First Amendment Right to Freedom of Speech

## Content and Viewpoint Discrimination

## (42 U.S.C. § 1983)

111.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**    The School incorporates its answers to Paragraphs 1 to 90 above.

112.    Defendants subjected Mr. Kluge to discipline due to the content and viewpoint of Mr. Kluge's speech.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

113.    By punishing and threatening to punish Mr. Kluge for expressing his views regarding gender dysphoria, Defendants have engaged in content and/or viewpoint discrimination in violation of the First Amendment.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

114.    Defendants' transgender policies and practices require officials to evaluate the content and viewpoint of faculty expression to determine whether it constitutes discrimination or harassment and whether it creates a hostile environment.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

115.    Defendants considered the content and viewpoint of Mr. Kluge's expression when they decided to enforce their transgender policies and practices against him.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

116.     Defendants' transgender policies and practices confer unbridled discretion upon BCSC officials to discriminate based on content or viewpoint.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

117.     Defendants exercised this unbridled discretion when they punished Mr. Kluge for expressing his views regarding gender identity.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

118.     Defendants' transgender policies and practices and their enforcement of those policies and practices are unconstitutionally over-broad because they restrict a significant amount of constitutionally protected speech.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

119.     The over-breadth of Defendants' transgender policies and practices chilled Mr. Kluge's speech, when he sought to engage in protected expression in his interactions with students at school and in the classroom.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

120.    Mr. Kluge's expression regarding gender dysphoria is protected by the First Amendment.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

121.    By disciplining Mr. Kluge for allegedly violating their transgender policies and practices, and terminating Kluge because he refused to use transgender names and pronouns, Defendants have punished Mr. Kluge for engaging in expression the First Amendment protects.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

122.    Defendants' transgender policies and practices and their enforcement of those policies violated Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Sixth Cause Of Action**

**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**Compelled Speech**

**(42 U.S.C. § 1983)**

123.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**      The School incorporates its answers to Paragraphs 1 to 90 above.

124.    By punishing and threatening to punish Mr. Kluge for refusing to communicate a school corporation-mandated ideological message regarding gender dysphoria, Defendants have attempted to compel Mr. Kluge's speech, in violation of his rights under the First Amendment.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

125.    Defendants' transgender policies and practices and their enforcement of those policies compelled Mr. Kluge to communicate messages about gender dysphoria that would have violated his religious beliefs.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

126.    Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to free speech as guaranteed by the First Amendment to the United States Constitution.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Seventh Cause Of Action**

**Violation of Plaintiff's First Amendment Right to Free Exercise of Religion**

**(42 U.S.C. § 1983)**

127.     Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**          The School incorporates its answers to Paragraphs 1 to 90 above.

128.     By punishing and threatening to punish Mr. Kluge for exercising his sincerely-held religious beliefs in the way he discusses issues regarding gender dysphoria, Defendants have violated and are violating his right to free exercise of religion under the First Amendment.

**Answer:**          The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

129.     Mr. Kluge's views and expression related to gender dysphoria are motivated by his sincerely-held religious beliefs, are avenues through which he exercises his religious faith, and constitute a central component of his sincerely-held religious beliefs.

**Answer:**          The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

130.     Expressing Defendants' mandated message regarding gender dysphoria would require Mr. Kluge to violate his sincerely-held religious beliefs.

**Answer:**          The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

131.    Defendants' transgender policies and related practices are neither neutral nor generally applicable but allow Defendants to target religious expression and activities specifically and to express hostility to such expression.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

132.    Defendants' transgender policies and related practices are neither neutral nor generally applicable because they represent a system of individualized assessments.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

133.    Defendants' transgender policies and related practices are under-inclusive, prohibiting some expression while allowing other expression equally harmful to the Defendants' asserted interests.

**Answer:**    The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

134.    Defendants' transgender policies and related practices burden several of Mr. Kluge's constitutional rights, including his rights under the First Amendment (e.g., freedom of speech, freedom from retaliation, free exercise of religion), the unconstitutional conditions doctrine, and the Fourteenth Amendment (e.g., due process and equal protection).

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

136.    Defendants violated Mr. Kluge's right to free exercise of religion when they applied their transgender policies and practices to discipline Mr. Kluge for communicating his views on issues related to gender dysphoria and to compel him to communicate views on those same subjects that violate his religious beliefs.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

136.    Defendants' transgender policies and their enforcement of those policies violated Mr. Kluge's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

## Eighth Cause Of Action

### Violation of Plaintiffs' Right to be Free from Unconstitutional Conditions

### (42 U.S.C. § 1983)

137.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**      The School incorporates its answers to Paragraphs 1 to 90 above.

138.    By conditioning Mr. Kluge's employment at BCSC on his willingness to surrender various constitutional rights, Defendants have imposed and are imposing an unconstitutional condition on him in violation of his First Amendment rights.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

139.    Defendants' transgender policies and practices and their enforcement of those policies and practices impose an unconstitutional condition upon faculty members' right to free speech and their receipt of state benefits (e.g., avoiding disciplinary actions up to and including termination, and remaining a teacher at a public high school).

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

140.    Defendants' transgender policies and practices and their enforcement of those policies and practices impose an unconstitutional condition upon faculty members' right to free speech which is similar to requiring organized prayer or requiring the pledge of allegiance in public schools.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

141.    Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

142.    Defendants' transgender policies and practices and their enforcement of those policies and practices require faculty members to surrender their constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection to avoid disciplinary actions up to and including termination.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

143.    Defendants enforced their transgender policies and practices against Mr. Kluge up to and including termination, making it clear that he could only avoid disciplinary action if he surrendered his constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

144.    Defendants' transgender policies and practices and their enforcement of those policies and practices violated Mr. Kluge's right to be free from unconstitutional conditions.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Ninth Cause Of Action**

**Violation of Plaintiff's Fourteenth Amendment**

**Right to Due Process of Law**

**(42 .S.C. § 1983)**

145.   Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**   The School incorporates its answers to Paragraphs 1 to 90 above.

146.   By threatening to punish and punishing Kluge under vague and overbroad policies and practices, Defendants have violated and are violating Kluge's right to due process of law under the Fourteenth Amendment.

**Answer:**   The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

147.   Defendants' transgender policies and practices and their enforcement of those policies and practices are over-broad because they encompass a substantial amount of constitutionally protected speech.

**Answer:**   The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

148.   Mr. Kluge's expression regarding gender dysphoria is protected by the First Amendment.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

149.    By terminating Mr. Kluge based on his objections to Defendants' transgender policies and practices Defendants have punished Mr. Kluge for engaging in expression the First Amendment protects.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

150.    Defendants terminated Mr. Kluge because of his religious-based objections to Defendants' transgender policies and practices, and in so doing, punished him for engaging in a wide variety of constitutionally protected expression in violation of Mr. Kluge's right to due process of law under the Fourteenth Amendment.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

151.    Defendants' transgender policies and related practices are unconstitutionally vague because they grant BCSC officials unbridled discretion in deciding what constitutes "gender dysphoria" and "gender dysphoria discrimination," because they utilize terms that are inherently subjective and elude any precise or objective definition that would be consistent from one official, teacher, or student to another, and because they are incapable of providing meaningful guidance to Defendants.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

152.     The lack of objective criteria, factors, or standards in Defendants' transgender policies and practices renders these policies and practices unconstitutionally vague and in violation of Mr. Kluge's right to due process of law under the Fourteenth Amendment.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Tenth Cause Of Action**

**Violation of Plaintiff's Fourteenth Amendment**

**Right to Equal Protection of the Law**

**(42 U.S.C. § 1983)**

153.     Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**      The School incorporates its answers to Paragraphs 1 to 90 above.

154.     By punishing and threatening to punish Mr. Kluge for expressing his views regarding gender dysphoria when they do not punish teachers who express opposite views on the same subject, Defendants have violated and are violating Mr. Kluge's right to equal protection of the law under the Fourteenth Amendment.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

155.    Mr. Kluge was similarly situated to other employees at the school corporation.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

156.    Defendants take no disciplinary action against employees who support and endorse the concepts of gender dysphoria, but they take disciplinary action against teachers, like Mr. Kluge, who refuse to endorse those concepts.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

157.    Defendants' transgender policies and practices have also been applied to discriminate intentionally against Mr. Kluge's rights to freedom of speech, right to be free from compelled speech, free exercise of religion, right to be free from unconstitutional conditions, and right to due process of law. Thus, discriminatory intent is presumed.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

158.    Defendants' transgender policies and related practices burden Mr. Kluge's fundamental rights, target a suspect class (i.e., religion), and have no rational basis.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

159.    Defendants' transgender policies and related practices are under-inclusive, prohibiting some expression while allowing other expression equally harmful to the school corporation's asserted interests.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

160.    Defendants applied their transgender policies and related practices to Mr. Kluge in a discriminatory and unequal manner, granting other teachers the right to express their views on issues related to gender dysphoria, while denying that right to Mr. Kluge, in violation of his right to equal protection of the law under the Fourteenth Amendment.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Eleventh Cause Of Action**

**Violation of Plaintiff's Rights of Conscience and**

**Free Exercise of Religion**

**(Indiana Const. Art. 1, §§ 2 and 3)**

161.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**      The School incorporates its answers to Paragraphs 1 to 90 above.

162.    By punishing and threatening to punish Mr. Kluge for exercising his sincerely held religious beliefs according to the dictates of his own conscience in the way he addresses

issues regarding gender dysphoria, Defendants have violated and are violating his right to free exercise of religion under Article 1, §§ 2 and 3, of the Indiana Constitution.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

163.    The religious convictions Kluge expressed and which he sought to live by are sincerely held religious beliefs.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

164.    Defendants have infringed on Kluge's right to engage freely in his religious convictions and practices by enforcing their transgender policies and practices to force him to express views on gender dysphoria that conflict with his religious beliefs and that force him to violate his conscience and religious convictions by expressing their preferred views on gender dysphoria.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

165.    Defendants' transgender policies and related practices do not serve any government interests of sufficient magnitude to override Mr. Kluge's right to live according to the dictates of his faith and according to his own conscience.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

166.    Defendants' transgender policies and their enforcement of those policies violate Mr. Kluge's right to free exercise of religion as guaranteed by Article 1, §§ 2 and 3, of the Indiana Constitution.

**Answer:**     The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

## Twelfth Cause Of Action

### Violation of Indiana Common Law

### Intentional Infliction of Emotional Distress

167.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**     The School incorporates its answers to Paragraphs 1 to 90 above.

168.    By removing Mr. Kluge's previous accommodation for his sincerely held religious beliefs, threatening Mr. Kluge with termination if he did not use transgender preferred names and pronouns or resign, and refusing to accommodate his sincerely held religious beliefs against using transgender names and pronouns, and by violating Mr. Kluge's rights under Title VII, and the United States and the Indiana Constitutions, and Defendants have intentionally caused Mr. Kluge to suffer severe emotional distress.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

### Thirteenth Cause Of Action

### Violation of Indiana Common Law

### Fraud

169.    Mr. Kluge repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

**Answer:**        The School incorporates its answers to Paragraphs 1 to 90 above.

170.    Defendants intentionally and knowingly falsely misrepresented to Mr. Kluge material facts, i.e., that he could submit a conditional resignation with the intent that Mr. Kluge rely upon those misrepresentations to his detriment.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

171.    Defendants made a material misrepresentation of existing fact—that Mr. Kluge could submit a conditional resignation—with the intention that Mr. Kluge would rely upon its misrepresentations; and Defendants acted with malice, oppression, and fraud.

**Answer:**        The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

172.    Mr. Kluge reasonably relied upon Defendants' knowing, affirmative, and active false representations.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

173.    As a direct and proximate result of the Defendants' false representations, Mr. Kluge has suffered actual damages.

**Answer:**      The allegations in this paragraph are wholly concerned with claims that the Court has dismissed with prejudice. To the extent a response is required, the School denies them.

**Prayer For Relief**

174.    Mr. Kluge respectfully prays this Court advance this case on the docket, order a hearing at the earliest practicable date, cause this case to be expedited and upon such hearing to enter judgment as follows:

a.      Enter a declaratory judgment that the Defendants' policies and practices are in violation of Title VII, the United States Constitution, the Indiana Constitution, and the common law of the State of Indiana;

b.      Enter preliminary and permanent injunctions ordering Defendants to reinstate Mr. Kluge with full back-pay and benefits, and prohibiting Defendants and their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' policies and practices to prohibit Mr. Kluge from expressing his views regarding gender dysphoria or to punish him for expressing those views, including addressing and referring to students based on their biological sex; and ordering Defendants to take such affirmative action as is necessary to purge Mr. Kluge's personnel file of any reference to the punishment they imposed on him, and to ensure that the

effects of these unlawful employment practices are eliminated and do not continue to affect Mr. Kluge's employment opportunities with Defendants;

      c.      Order Defendants to take such affirmative action as is necessary to purge Mr. Kluge's personnel file of any reference to the punishment they imposed on him, and to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect employment opportunities with Defendants or other potential employers;

      d.      Award Mr. Kluge nominal, compensatory, and punitive damages for Defendants' constitutional, statutory, and common-law violations, all in an amount to be determined at trial;

      e.      Award Mr. Kluge prejudgment interest, costs, and reasonable attorney's fees as provided by 42 U.S.C. §§ 2000e-5(k) and 1988; and

      f.      Grant such other and further relief as is just and proper.

**Answer:**      The School denies that Plaintiff is entitled to relief. The School denies any remaining allegation in Paragraph 174 of the Amended Complaint.

## Demand For Trial By Jury

175.      Pursuant to Fed.R.Civ.P. 38(b), Mr. Kluge demands a trial by jury on all claims so triable.

**Answer:**      The School does not consent to trial by jury of any issue not required to be tried by a jury, including the determination of any equitable remedy. The School denies any remaining allegation in Paragraph 175 of the Amended Complaint.

**Additional Defenses**

The School states the following additional defenses.

1.      Any action the School took regarding Plaintiff was taken in good faith and for legitimate, non-discriminatory, and non-retaliatory reasons.

2.      The Plaintiff is not entitled to attorney fees.

3.      The Plaintiff has failed to mitigate damages.

4.      Accommodations requested by Plaintiff would have caused the School undue hardship.

5.      To the extent any of Plaintiff's claims are untimely under the applicable statute of limitations, such claims are barred.

6.      To the extent Plaintiff did not properly pursue or exhaust administrative remedies, such claims are barred.

7.      To the extent Plaintiff alleges facts or claims that were not alleged in Plaintiff's EEOC charge or amended charge, such facts or claims are barred.

8.      The Plaintiff is not entitled to punitive damages.

9.      Plaintiff's damages are subject to offset based on subsequent income she received.

10.      The School does not consent to trial by jury of any issue not required to be tried by a jury, including the determination of any equitable remedy.

11.      The School reserves the right amend this Answer and to assert additional defenses that may arise in the course of investigation and discovery and further incorporates all defenses available under Fed. R. Civ. P. 8(c) as if fully set forth herein.

Respectfully submitted,

/s/ Brent R. Borg
Brent R. Borg, Attorney No. 27415-29
Alexander P. Pinegar, Attorney No. 26543-49
Church Church Hittle + Antrim
10765 Lantern Road, Suite 201
Fishers, IN  46038
317-773-2190

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of January 2020, a true and exact copy of the

foregoing was filed electronically via the Court's Electronic filing system.  Notice of this filing

was sent to the following persons by operation of the Court's Electronic filing system:

Kevin E. Green
Kevin Green Associates
456 N. Meridian Street, #1517
Indianapolis, IN  46204
keglegal@aol.com

Michael J. Cork
Michael J. Cork, Esq.
5754 N. Delaware St.
Indianapolis, IN  46220-2528
cork0@icloud.com

Roscoe Stovall, Jr.
Roscoe Stovall, Jr. & Associates
2 West Main Street
Mooresville, IN 46158
rstovall@roscoelaw.com

Barbara J. Baird
Law Office of Barbara J. Baird
445 Northwest Pennsylvania Street, Suite 401
Indianapolis, IN  46204
bjbaird@bjbairdlaw.com

Isaac C. Belfar
William Isasi
Henry Liu
D. Jean Veta
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
ibelfer@cov.com
wisasi@cov.com
hliu@cov.com
jveta@cov.com

Paul D. Castillo
Lambda Legal Defense and Education Fund, Inc.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX  75219
pcastillo@lambdalegal.org

Camilla B. Taylor
Lambda Legal Defense and Education Fund, Inc.
10 W Adams, Suite 2600
Chicago, IL  60603
ctaylor@lambdalegal.org

Meredith T. Brown
Lambda Legal Defense and Education Fund, Inc.
120 Wall St, 19th Floor
New York, NY 10005
tbrown@lambdalegal.org

/s/ *Brent R. Borg*
Brent R. Borg, Atty No: 27415-29