# EXHIBIT 1

# Affidavit of Dr. Kathryn Jessup
# dated March 10, 2021

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN M. KLUGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:19-cv-02462-JMS-DLP |
| | ) |
| BROWNSBURG COMMUNITY SCHOOL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## Affidavit of Kathryn Jessup

I, Kathryn Jessup, declare:

1. I am at least 18 years of age and I reside in Brownsburg, Indiana. I make this affidavit based on my own personal knowledge. If called as a witness I could and would testify competently to the matters stated below.

2. I am the assistant superintendent at Brownsburg Community School Corporation ("BCSC" or "school"), a public-school corporation in Brownsburg, Indiana, governed by a five-member elected board of Trustees.

3. I graduated in 1993 from Butler University with a degree in elementary education. I graduated in 2005 from Ball State University with a Master's degree in Educational Building Administration. I graduated in 2017 from Ball State University with an educational doctorate.

4. Beginning in 1994, I was employed as a teacher at BCSC. I then became, in succession, an assistant principal, principal, and assistant superintendent. I have been the assistant superintendent for eleven consecutive years.

5. As assistant superintendent, my job duties include overseeing curriculum and instruction throughout the entire school corporation. Within that scope, I oversee the corporation's data department, student data, and, generally speaking, anything that concerns with students and their learning. I assist the corporation's human recourses director (currently Jodi Gordon) with hiring staff. I regularly meet with the corporation's central office staff (the "Leadership Team" as we call it) to discuss and address issues across the school district. I interact and work with on a regular basis the principal of Brownsburg High School (currently Dr. Bret Daghe) and the school corporation's superintendent, Dr. Jim Snapp. I attend all regular, monthly board meetings of BCSC's governing body, the Board of Trustees, and often present information and make recommendations to the Board.

6. Prior to 2017-2018 school year, the high school community at BCSC began to become more and more aware of the needs of transgender students. Several discussions were held by and between school leadership at both the high school level and the corporation level about addressing these needs. These discussions included Jodi Gordon, Dr. Bret Daghe, Dr. Jim Snapp, and myself. It is my opinion that a firm consensus was reached by us as the administrative leaders of the high school and the school corporation that transgender students face significant challenges in the high school environment, including diminished self-esteem and heightened exposure to bullying. School leadership also reached the consensus that these challenges threaten transgender students' classroom experience, academic performance, and overall well-being. We had heightened attention to these issues prior to the start of the 2017-2018 school year because several transgender students were enrolled as high school freshman for that school year.

7. A very practical but critical question that arose for us to address is what names staff should use to address transgender students in class. It nearly goes without saying that a high school classroom cannot function without teachers addressing students directly. A practice that we

developed to help transgender students, teachers, and other members of the high school community was to allow a student to change the name listed in the high school's database (referred to as "PowerSchool"), but only if the student provided letters from both a parent and a healthcare professional regarding the need for a name change. Staff were then required to use the name in PowerSchool.

8. The high school and BCSC leadership thought that this practice furthered two primary goals. First, the practice provided the high school faculty a straightforward rule when addressing students; that is, faculty need and should only call students by the name listed in PowerSchool. Second, it afforded dignity and showed empathy toward transgender students who were considering or in the process of gender transition. Stated differently, the administration considered it important for transgender students to receive, like any other student, respect and affirmation of their preferred identify, provided they go through the required and reasonable channels of receiving and providing proof of parental permission and a healthcare professional's approval.

9. I attended a meeting of the Brownsburg High School Equality Alliance Club in Fall 2017. The purpose for my attending that meeting was concerns that had been shared from counselors of students feeling uncomfortable. Approximately 40 students attended this meeting. During the meeting, approximately four or five students complained specifically about a teacher using last names only to address students and, in my view, the other students in attendance appeared to agree with these complaints. While the students did not identify John Kluge by name in making these complaints, it was certainly implied that he was the teacher in question, and I had no doubt that it was him they were speaking of since he was the only teacher employed by BCSC who had been permitted the accommodation of using last names only instead of using the names stated in PowerSchool.

**I declare, under penalty of perjury, that the foregoing statements are true.**

Date: 3.10.21

_____
Kathryn Jessup