# EXHIBIT 2

# Affidavit of Dr. Bret E. Daghe
# dated March 10, 2021

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN M. KLUGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:19-cv-02462-JMS-DLP |
| | ) |
| BROWNSBURG COMMUNITY SCHOOL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

### Affidavit of Bret Daghe

I, Bret Daghe, declare:

1. I am at least 18 years of age and I reside in Speedway, Indiana. I make this affidavit based on my own personal knowledge. If called as a witness I could and would testify competently to the matters stated below.

2. I am principal at Brownsburg High School, the sole high school within the Brownsburg Community School Corporation ("BCSC" or "school"), a public-school corporation in Brownsburg, Indiana.

3. I graduated from the University of Illinois in 1990 with a Bachelor of Arts degree in Mathematics Education. I obtained an administrative license from IUPUI in 1995. I graduated from Indiana State University in 2009 with an Ed. S. degree (Educational Specialist) and from Ball State University in 2018 with an Educational Doctorate.

4. After teaching for approximately seven years in Illinois and in Indianapolis, I was assistant principal at Brownsburg High School from 1997 and 2006 and have served as principal since 2006.

5. As a high school principal, I have the ultimate responsibility to oversee staff, to take care of the students that attend the high school, and to keep parents informed of what is going on at the high school.

6. As high school principal, I was the supervisor of Plaintiff John Kluge, who was employed as a teacher at Brownsburg High School from August 2014 through the end of the 2017-2018 school year.

7. Mr. Kluge was a teacher in the high school's performance arts department. He taught orchestra, beginning music theory, and advanced placement music theory during his tenure. He was the only teacher who taught any sections of these classes.

8. Within only a day or two of school beginning for the 2017-2018 school year, Mr. Kluge informed me that he intended to use the "legal names" of all students, including students who identified as transgender students. For transgender students who had had their name changed in our school data (called PowerSchool), Mr. Kluge stated he did not intend to use the name in PowerSchool, but instead would use what he understood to be their legal or birth names.

9. Based on my (then) 27 years in education and (then) 20 years as a high school administrator, I knew from personal experience that it would have been very difficult to find and hire a teacher qualified to teach orchestra and music theory within only a few days of school starting.

10. A few days after Mr. Kluge informed me of his intentions regarding the use of names, he and BCSC agreed to two accommodations. These were memorialized in a memorandum dated July 28, 2017, issued to Mr. Kluge. The accommodations were: (1) That Mr. Kluge may use last name only to address all students; and (2) That Mr. Kluge did not have to pass out orchestra uniforms to students. Regarding the first accommodation, Mr. Kluge understood that he would address students in all classes by last name, as opposed to only those classes with a transgender

student. In addition, Mr. Kluge understood that he would not use honorifics when addressing students. As examples with hypothetical student names, Mr. Kluge would address Heather Williams as "Williams" or Lucas Jones as "Jones."

11. I first learned of concerns with Mr. Kluge and how he was addressing students in class via an email from Craig Lee (a teacher) on August 29, 2017. The email did not identify Mr. Kluge by name but upon further inquiry, I confirmed the teacher identified by Mr. Lee was Mr. Kluge. Independently, I had no doubt that it was Mr. Kluge because he was the only teacher who had been provided an accommodation regarding calling students by last names only.

12. As of the Fall 2017 semester, Mr. Lee was one of three teachers on a Faculty Advisory Committee. This committee met with me approximately twice per month to discuss faculty and student concerns they were aware of. Throughout this Committee's meetings with me during the Fall 2017 semester, Mr. Lee continued to relate to me the complaints and concerns he was hearing, primarily in Equality Alliance Club meetings, where he served as faculty advisor, about Mr. Kluge's use of last-names-only with students.

13. Also as high school principal, I meet with department heads once per month. The two department heads of the performing arts department related to me during meetings in Fall 2017 how they perceived that Kluge was making students uncomfortable by calling students by only their last names and that the tension this was causing was affecting the overall functioning of the performing arts department.

14. As I heard these concerns throughout Fall 2017, I wanted to be fair to Mr. Kluge and give the situation some time. I wanted to see if the problems and student concerns arising from his use of last-names-only resolved. However, they did not as I continued to hear the concerns described above. By December 2017, I realized I needed to address these issues directly with Mr. Kluge.

**I declare, under penalty of perjury, that the foregoing statements are true.**

Date: 3/10/21

_____
Bret L. Daghe