# EXHIBIT 19

**Plaintiff's Response to
Defendant's First Request for Production No. 6**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN M. KLUGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:19-cv-2462-JMS-DLP |
| | ) |
| BROWNSBURG COMMUNITY SCHOOL CORPORATION, *et al.,* | ) |
| | ) |
| Defendants. | ) |

# PLAINTIFF'S RESPONSE TO DEFENDANT'S
# FIRST REQUEST FOR PRODUCTION NO. 6

Michael J. Cork, Esq.
5754 North Delaware St.
Indianapolis, Indiana 46220-2528
(317) 517-4217; cork0@icloud.com

December 7, 2018

David A. Tite
EEOC Investigator
101 West Ohio Street
Suite 1900
Indianapolis, IN 46204-4203

Re: EEOC Charge No.: 470-2018-03216 (Amended)
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

Dear Mr. Tite:

Charging Party, John M. Kluge, responds to Brownsburg Community School Corporation's Position Statement as follows.

Preliminary Statement

BCSC's position is unsupported factually or legally. Once advised of Kluge's sincerely-held religious belief, BCSC was required to provide Kluge with a reasonable accommodation unless it could show that any accommodation resulted in undue hardship. Although it was not Kluge's responsibility to suggest an accommodation, he did—using last names only for all students. Kluge engaged in that practice faithfully and that accommodation did not create any undue hardship for BCSC.

BCSC's own document entitled, "Transgender Questions" and noted "Revised 1-3-18 kj," (copy included as Ex. A) shows its position statement is disingenuous. BCSC states therein that a public school teacher's beliefs are overruled by other laws and that it had no intention of allowing a last name accommodation in 2018.

Kluge did not communicate to any students—transgender or otherwise—that he was using last names as an accommodation for his religious belief against using transgender students' new names. Moreover, if transgender students complained to BCSC based

EEOC Charge No.: 470-2018-03216 (Amended)                                                    Page 1 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE -0000000296

upon speculation that Kluge was using last names for that reason, their complaints are nothing more than a "heckler's veto" and certainly do not constitute undue hardship. No evidence or even particularity as to purported student complaints has been proffered by BCSC.

The "last names only" accommodation is evidenced by a written agreement. Conversely, BCSC's claim that it was negotiating with Kluge to consider an accommodation consisting of a transfer to an elementary school is pure fabrication, unsupported by any document offering Kluge such an accommodation. And Kluge never requested termination. Instead, BCSC offered Kluge an untenable choice—refer to the transgender students by their preferred names and swallow his religious objections—or lose his job. "Resign or be terminated" as BCSC described it.

Kluge submitted a conditional resignation to Human Resources Director Jodi Gordon, not to Superintendent Snapp. And the condition was he could withdraw it anytime prior to May 29, 2018. But when Kluge attempted to do just that after confirming that his employer was likely engaged in illegal acts, Gordon processed his resignation on the same day he attempted to withdraw it and she sent his resignation to Snapp and the Board of Trustees, who processed it in order to gain an advantage.

Response to Factual Allegations

I. Accommodation

The first accommodation, as evidenced by the written agreement memorializing it, was that "We agree that John may use last name only to address students," which Kluge abided by.

The second accommodation alleged by BCSC was, "[I]n addition, Angie Boyer will be responsible for distributing uniforms to students." Kluge told Angie Boyer shortly after the accommodation agreement was made that she would be in charge of distributing uniforms and that there were parent helpers who volunteered to help with this. Kluge then told the parent volunteers that Angie Boyer was in charge of uniforms. The school never voiced any concern about Kluge's adherence to the terms of the agreement until its Position Statement.

II. Kluge Never Agreed to Use the PowerSchool Method of Determining Student Identity—It Was Exactly the Problem

EEOC Charge No.: 470-2018-03216 (Amended)                                            Page 2 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE –0000000297

On May 15, 2017, Kluge met with Brownsburg High School principal Dr. Bret Daghe to discuss the school's transgender policy. Kluge clearly outlined his religious convictions about transgenderism and pled with Daghe to not pursue the transgenderism path that was being pushed in faculty meetings. In this meeting, Daghe indicated that he had resisted changing the names in the online PowerSchool database up to this point. "PowerSchool" was the database that had previously contained all students' legal names. Daghe asked the teachers if they would use transgendered first-names if he changed students' first names in PowerSchool. The three other teachers in the meeting acquiesced to these terms, while Kluge did not. BCSC then allowed transgender students to change their names in PowerSchool—although they were not legal name changes—as long as parents and a mental health counselor supported the change.

III. BCSC Published "Transgender Questions" in January of 2018 for Its Employees. That Document Confirms that BCSC Did Not Intend to Honor Kluge's Accmmodation or Offer Alternate Accommodations.

Sex overrules religion! That message is clear from BCSC's "Transgender Questions" document published in January of 2018 and distributed at a February 2018 faculty meeting. Regardless of how BCSC attempts to spin this, it is apparent they had no intention of honoring the accommodation entered into with Kluge or to offer any alternate accommodation. The administration's claims to the contrary are simply ludicrous in light of this document.

Reproduced below is ¶ 8 from p. 10 of "Transgender Questions."

"8. How do teachers break from their personal biases and beliefs so that we can best serve our students? We know this is a difficult topic for some staff members, however, when you work in a public school, you sign up to follow the law and the policies/practices of that organization and that might mean following practices that are different than your beliefs."

This states that teachers in a public school need to "follow practices that are different than [their] beliefs." That would include religious beliefs. In other words, sex trumps religion in public schools.

Also, under ¶ 5 of "Logistics," on page 9, the policy states:

"5. Are we allowed to use the students last name only? We have agreed to this for the

EEOC Charge No.: 470-2018-03216 (Amended)     Page 3 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE -000000298

2017-2018 school year, but moving forward it is our expectation the student will be called by the first name listed in PowerSchool."

There is no mention of any "alternate" accommodation. BCSC's claim to the contrary is a sham.

IV. Superintendent Snapp Orders Kluge to Use Transgender Names, Quit, or Be Fired

On July 18, 2017, Kluge received emails from one of the high school guidance counselors about transgender students. The counselor stated that teachers should "feel free" to use transgender names, not that such use was mandatory. After receiving the email stating that transgender identity was not mandatory, Kluge continued to use legal first names. On the first day of school, July 27, 2017, when Kluge's department head, a fellow band teacher, heard his plan, he advised him to inform the building principal for his own protection against the students' parents. The principal arranged for a meeting later that day with Dr. Snapp, Principal Daghe, and Kluge. During the meeting, Dr. Snapp asked Kluge what he wanted and Kluge responded, "I want you to allow me to teach here and use students' legal names. We don't have any policies against that." Snapp responded that he would not allow that, and if Kluge would not use their transgender names in class, then he could either be fired or resign. Kluge told him that he wanted to continue teaching at Brownsburg High School, but if his only options were resign or get fired, then Snapp would have to fire him because he didn't want to quit on the students.

Because Kluge insisted in the July 27th meeting that he wanted to continue teaching at the high school and would not quit his position as a teacher, but could not in good conscience according to his Christian faith use transgender first names, Snapp and Daghe suspended him pending termination. The suspension is reflected in Board minutes.

Later that day Dr. Snapp and Kluge's pastor talked and his pastor asked if he could have a couple days to think about the decision. Dr. Snapp agreed. On Monday morning, July 31, 2017, Kluge met with Dr. Snapp as planned and asked to be given the accommodation of using last names only, like a coach, when addressing the students as well as delegating the uniform responsibility. BCSC and Kluge agreed to these terms and they both signed an agreement.

Thereafter, Kluge used the last name only accommodation in each of his classes. He never voluntarily told the students why he used last names, and he used it from the

EEOC Charge No.: 470-2018-03216 (Amended)                                                                Page 4 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE –0000000299

very first day of teaching that year. Only one student ever asked why he used last names, and Kluge described how the orchestra is a team, and using last names was like a coach addressing players on his team.

V. Kluge Used Transgender Names at the Orchestra Award Ceremony Based on Its Formal Nature

The alleged "incident" of an orchestra awards ceremony where Kluge supposedly identified students in the advanced orchestra class by first name and then used students' last names when introducing classes with transgender students is a misstatement of the facts. During classes, Kluge addressed students by last names, as a reasonable accommodation for his sincerely held Christian beliefs. But during the orchestra awards ceremony, because of its formal nature, he used the full names for students as listed in PowerSchool to address all students as they were receiving their awards—including transgender students—because he was trying to work with the school in only requesting what was reasonable. Kluge thought it unreasonable and conspicuous to address students in such an informal manner at such a formal event, as opposed to the classroom setting where teachers refer to students by last names as a normal form of address. Kluge's Christian faith required that he do no harm to his students, and this acquiescence to the administration's position was done solely out of sincerely-held beliefs, and not in agreement with the policy. Otherwise, Kluge would have created a scene that would bring into doubt his stated rationale for usage of last names only.

VI. Kluge Did Not Intentionally "Mis-Gender" His Students

Kluge made a good faith effort to address all students by last names and to never "mis-gender" students. He admits that he may have made occasional mistakes in referring to students he formerly called by their first names. But he never intentionally referred to students by a former name. If he made a mistake in accidentally saying "miss" to the student identified in BCSC's response, it would have been when the student was registered as female in PowerSchool. Kluge had only one student who transitioned mid-year from female to male and the teachers were informed that this student had transitioned via an email from the guidance counselor on September 29, 2017, informing them that the student's gender was switched to male in PowerSchool. Contrary to the school district's account, if this student's parent had complained in early September, 2017, it would have been when their child was registered as female. Even a school board member mis-gendered a student at the meeting concerning Kluge.

EEOC Charge No.: 470-2018-03216 (Amended)                                                                 Page 5 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE -0000000300

VII. No Adverse Effect on Student Learning

If, as BCSC posits, there was an adverse effect on student learning, it is reasonable to expect the adversity would manifest itself in objective measures of performance. But the last-name-only accommodation did not adversely affect students' learning. The music students in Kluge's classes performed as well or better than they had previously. No written evidence supports a contrary claim. The orchestras performed as well and/or better than they ever have in previous years, all of them earning Gold rankings at their orchestra competitions and earning "Gold With Distinction" at the qualifications.

VIII. BCSC Did Not Attempt to Work with Kluge—BCSC Told Kluge to Use First Names or Get Out—In Spite of His Accommodation

Kluge adhered to the terms of the accommodation, but was told by Principal Daghe and HR Director Gordon that he needed to start using all students' first names or he would be fired before the school year was out. Kluge did not short-circuit the process by maintaining that nothing should change, he told them he couldn't use opposite-sex transgendered first names based on his sincere religious beliefs and wanted to keep his accommodation.

Kluge had only one transgender student who decided not to continue with orchestra after the 2017–2018 school year, and he treated this student with the same kindness and care with which he treated all students. This student said in an interview that Kluge never treated the transgender students any differently than the other students.

Daghe met with Kluge in December, 2017, to tell him that some students were complaining that he was referring to all students by last names, even though he didn't tell the students why he did it. But that was the accommodation. Daghe said Kluge was being singled out for complaints from a parent about his "concert-hair-color policy" even though that policy was the same as the other performing arts department teachers' policies. Daghe told Kluge he didn't like things being tense and didn't think things were working out. That is not undue hardship. Daghe then said he thought it might be good for Kluge to resign at the end of the school year. That is not working to find an alternate accommodation.

There is simply no factual basis for BCSC to have a "good faith belief" that Kluge's accommodation was adversely affecting the learning environment.

EEOC Charge No.: 470-2018-03216 (Amended)                                    Page 6 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE –0000000301

IX. Transgender Rights Trump Religious Liberty—BCSC Administrators Continue to Meet With Kluge—Not to Find Common Ground—But to Advise Kluge to Use Transgender Names or Be Fired

Principal Daghe and HR Director Gordon continued to meet with Kluge in early 2018. There was a January 31 meeting with Daghe only, and then a February meeting with both, and the March meeting was with Gordon only. But the purpose of these meetings was not to explore alternatives, but to pressure Kluge into resigning. For example, Daghe told Kluge on January 17, 2018, that Daghe wasn't clear in the December 13, 2017 meeting, but now wanted to say it plainly that he wanted Kluge to resign at the end of the year.

BCSC actually said not that "things needed to change for next year" but that Kluge needed to start using transgender first names in the 2018-2019 school-year or he would be fired in May 2018, before the 2017-2018 school-year ended. BCSC claims that administrators were meeting to explore alternatives, though in this portion of its Position Statement it admits that they didn't offer any alternatives, only to give Kluge the ultimatum to use transgender first names or be fired before this current school year had ended and lose pay over the summer. BCSC knew Kluge was the bread-winner for his spouse and small child and that another child was coming. Further, threatening a teacher who is only required to work during the school year with loss of summer pay arguably violates BCSC's 12-monty academic pay contractual arrangement.

X. Kluge Tendered a Conditional Resignation to Which Human Resources Director Gordon Agreed, But She Then Processed it in Violation of the Condition

Daghe told Kluge he wanted him to resign at the end of the year. And Gordon told Kluge that he could either hand a conditional letter of recommendation to her by May 1, 2018, that would sit on her desk and not be processed or communicated to anyone until the date he specified, or he would at that time be fired. They also repeatedly told Kluge that he would be paid over the summer if he submitted the conditional letter of resignation.

After being threatened with termination effective May 1st, Kluge tendered—on April 30th—a conditional resignation that specified it was not to be processed or communicated to anyone, including any administration, before May 29, 2018. Based on Gordon's representations, Kluge understood he could withdraw the resignation before it was submitted to the superintendent. Kluge also wanted time to further consider the

EEOC Charge No.: 470-2018-03216 (Amended)     Page 7 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE –0000000302

option of resignation in good standing or termination. There was nothing abrupt about his termination—BCSC orchestrated it.

## Legal Analysis

I. Religious Discrimination Under Title VII.

BCSC admits that it carries the ultimate burden to accommodate Kluge. The employee is only required to make some effort to cooperate with an employer's attempt to resolve the religious conflict. *E.E.O.C. v. Bridgestone/Firestone, Inc.*, 95 F. Supp. 2d 913, 921 (C.D. Ill. 2000). But here there is no dispute that Kluge communicated his sincerely-held beliefs to BCSC and then suggested the accommodation that his employer agreed to in writing.

BCSC also admits that undue hardship requires the employer to show more than a de minimis cost to the employer's business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977). BCSC never stated in writing to Kluge that his accommodation was creating an undue hardship and it never offered in writing any alternative accommodation.

Kluge is able to establish a prima facie case of religious discrimination based on BCSC's denial of reasonable accommodation—last names only. Kluge (1) has sincerely-held religious beliefs that conflict with BCSC's requirement; (2) he brought those beliefs to BCSC's attention; and (3) Kluge's religious beliefs were the basis for an adverse employment action—BCSC told him to use transgender first names or get out and forced his resignation. *E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996); *Anderson v. U.S.F. Logistics, Inc.*, 274 F.3d 470, 475 (7th Cir. 2001).

II. Retaliation Under Title VII.

Kluge is also able to establish a claim of retaliation: (1) he engaged in statutorily protected activity by identifying a sincerely-held religious belief that conflicts with his employer's work requirement and offered an accommodation for his belief, which BCSC accepted, in writing; (2) he suffered an adverse employment action when BCSC forced him to resign; and (3) there is a causal connection between the protected activity and the adverse employment action. Kluge was forced out because he refused to use transgender first names. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001).

EEOC Charge No.: 470-2018-03216 (Amended)                                                          Page 8 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE −000000303

Contrary to BCSC's position statement, it has not articulated a legitimate, nondiscriminatory reason for its actions, since the only hardship it claims amounts to a hecklers' veto by transgender students. Moreover, Kluge can show that BCSC's claim of hardship is phony, since it is based on one student who decided to leave orchestra. BCSC's attempt to establish a legitimate, nondiscriminatory reason is a sham, designed to hide unlawful retaliation. BCSC has failed to meet its burden. *See Contreras*, 237 F.3d at 765.

III. Hostile Work Environment Under Title VII.

Kluge is also able to establish a hostile environment based upon the facts that: (1) the work environment at BCSC was subjectively and objectively offensive; (2) a protected characteristic—Kluge's sincerely-held beliefs—was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014). Superintendent Snapp, Principal Daghe, and Human Resources Director Gordon may not have overtly told Kluge to get his "f- -king Christian ass" out of the school building (language in original), but their combined statements and actions directing him to violate his sincerely-held religious beliefs or get out is effectively the same thing. And these three are not co-workers as in *Dawson v. Monaco Coach Corp.*, No. 3:02-CV-830, 2005 U.S. Dist. LEXIS 28243, at *30-33 (N.D. Ind., Nov. 9, 2005). They are the top administrators.

Conclusion

Based on the foregoing, Kluge submits that BCSC's Position Statement fails to establish legitimate, nondiscriminatory reasons for its actions and many of its stated reasons are pretextual. Accordingly, Kluge requests the Commission enter a "for cause" finding.

Sincerely,

/s/ Michael J. Cork

Michael J. Cork, Esq.
5754 N. Delaware St.
Indianapolis, IN 46220-2528
317-517-4217; cork0@icloud.com
Counsel for John M. Kluge

EEOC Charge No.: 470-2018-03216 (Amended)                                      Page 9 of 9
John M. Kluge v. Brownsburg Community School Corporation
Charging Party's Reply to Respondent's Position Statement

KLUGE  –000000304