IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN M. KLUGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:19-cv-02462-JMS-DLP |
| | ) | |
| BROWNSBURG COMMUNITY | ) | |
| SCHOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT

### Introduction

Brownsburg established in its initial brief that summary judgment was appropriate in its favor on Kluge's two remaining claims of unlawful discrimination and retaliation.

Regarding Kluge's unlawful discrimination claim, Brownsburg argued that summary judgment was appropriate because there was no objective conflict between Kluge's alleged sincerely-held religious belief and Brownsburg's requirement that Kluge, like all faculty, address students by the names listed in PowerSchool. But even assuming an objective conflict, Brownsburg established two separate grounds for undue hardship as a matter of law, namely, that continuing the last-name-only accommodation would have negatively impacted student learning and exposed Brownsburg to a significant risk of liability.

Regarding Kluge's retaliation claim, Brownsburg demonstrated that there was no causal connection between its decision to withdraw the last-name-only accommodation and Kluge's decision to resign. But even assuming there was, Brownsburg showed that Kluge could not establish pretext.

1

Finally, if the Court concluded that Kluge's unlawful discrimination claim should proceed to trial, Brownsburg established that there was an issue of fact regarding the sincerity of Kluge's religious belief because he used the last-name-only accommodation inconsistently.

Nothing in Kluge's response brief successfully rebuts the above arguments or otherwise demonstrates that the Court should deny Brownsburg summary judgment on Kluge's remaining claims. In many instances, Kluge's arguments are based on First Amendment case law that has no application to his two remaining claims, which arise under Title VII. In other instances, Kluge makes assertions that are contrary to the undisputed evidence and this Court's previous ruling, such as when he claims that he conditioned his resignation on being able to withdraw it at any time before the effective date. And Kluge has failed to address Brownsburg's lack-of-pretext argument, which forecloses his retaliation claim.

In the final analysis, the Court should conclude that Brownsburg is entitled to judgment as a matter of law on Kluge's remaining claims and therefore enter final judgment in Brownsburg's favor.

I.      *Kluge has not demonstrated an objective conflict between Brownsburg's requirement and his alleged sincerely-held religious belief, and thus his unlawful discrimination claim fails.*

In its initial brief, Brownsburg argued that summary judgment was appropriate on Kluge's unlawful discrimination claim because there was no objective conflict between addressing students by the names listed in PowerSchool and his alleged sincerely-held religious beliefs. [Filing No. 121 at 27-31.] Brownsburg cited designated evidence that the main purpose of requiring faculty to address students by the names listed in PowerSchool was to provide faculty with a straightforward, easy-to-follow rule. [Filing No. 121 at 28.] Brownsburg also cited designated evidence that it disavowed requiring faculty to show approval or support for

transgender students or transgenderism more generally, including that Kluge himself was instructed not to use a student's name change as a vehicle for positive support. [Filing No. 121 at 28-29.] Kluge, moreover, acknowledged that his attendance at faculty meetings where transgender issues were discussed did not mean that Brownsburg was requiring him to agree with what was presented. [Filing No. 121 at 29.]

With these undisputed facts, Brownsburg argued that Kluge's situation was indistinguishable from *Summers v. Whitis* in that Brownsburg was merely requiring Kluge to perform a purely administrative duty and thus there was no objective conflict. [Filing No. 121 at 29-31.] Critical to this argument was that since the Court's ruling on Brownsburg's motion to dismiss, factual development of the record established without dispute that Brownsburg never required Kluge to express a positive opinion or judgment about a student's lifestyle, leaving Kluge with nothing more than his subjective belief of a conflict and thus foreclosing his claim. [Filing No. 121 at 31-32.]

In his response brief,[1] Kluge makes several attempts to distinguish *Summers* or otherwise demonstrate an objective conflict, but none has merit. The following addresses each argument as it appears in Kluge's response brief.

Kluge poses a question from the oral argument in *Meriwhether v. Hartop*—what prevents Brownsburg from requiring a Jewish teacher to address a student as "Mein Fuhrer"? [Filing No. 149 at 10.] The short answer in Brownsburg's case is that by requiring written permission from a parent and a healthcare professional, Brownsburg avoided situations where the required manner of address amounted to nothing more than the student's say so. That was not the case in

---

[1] Kluge's response brief exceeds the page limit set forth in the Court's Practices & Procedures.

*Meriwether*; there the employer required faculty to address students by the students' preferred pronouns, and there is no indication from the panel's opinion that students needed to obtain further authorization or approval. 992 F.3d at 498-500. As such, the Court should not concern itself with an extreme hypothetical that has no applicability to this case's undisputed facts.

Kluge faults Brownsburg for allegedly ignoring "the tremendously important role that names play," and goes on to cite *amici*'s argument that affirming "transgender names" helps prevent depression, anxiety, and suicidal ideation. [Filing No. 149 at 13-14.] Kluge then claims that *amici*'s emphasis on the importance of names supports his position: "Yet Brownsburg argues that Kluge, a Christian with sincerely-held beliefs against affirming gender dysphoria, suffers no objective conflict when Brownsburg tells him he must affirm transgender students by using transgender first names—or he must resign." [Filing No. 149 at 14.] This is nothing more than a repackaged argument that Kluge subjectively believes that he is affirming a transgender student's lifestyle by using "transgender names." *Whitis*, however, makes clear that there is an objective component to this analysis, and Kluge's point here does nothing to advance that analysis. Moreover, Kluge's argument ignores the undisputed fact that at no time and in no manner did Brownsburg instruct Kluge that he had to make positive statements about transgender students' lifestyles. Rather, he merely had to take the administrative act of calling a student by the name in the school database—which could not be changed without parental consent.

Kluge argues that an objective conflict is evidenced by the fact that students complained about the last-name-only accommodation. [Filing No. 149 at 14.] It is hard to see why that point helps Kluge. Consider the situation in *Whitis* of a deputy clerk issuing or refusing a marriage license to a homosexual couple. Certainly in the former instance it is fair to say the homosexual

4

couple would be pleased, whereas in the latter they might complain. But whether or not the employer's requirement (in this case, addressing students by the names listed in PowerSchool; in *Whitis*, processing a marriage license) has a positive or negative impact on those outside the employment relationship does not demonstrate an objective conflict. Instead, the focus is on the employee's alleged sincerely-held religious belief and the ways that belief might conflict with an employer's requirement, judged from an objective standard. *Whitis*, 2016 WL 7242483 ("[T]he court must be able to conduct a limited, objective inquiry into the purported conflict."). How others outside the employment relationship might be affected by that conflict does not figure into the analysis.

Kluge attempts to distinguish *Whitis* on the ground that the deputy clerk was required to process a marriage license, whereas Kluge was required to use "affirming speech." [Filing No. 149 at 14.] Judge Young explained in *Whitis* that the deputy clerk processed a marriage license by accessing the couple's application, verifying that it was complete, and printing the license. 2016 WL 7242483, at *1. The deputy clerk would then hand the license to the couple. *Id.* at *2-3. This is no more "affirming speech" than Brownsburg requiring Kluge to address students by the names listed in PowerSchool. That one form of speech was written and the other oral is a distinction without a difference when analyzing whether there is an objective conflict. Moreover, it does not necessarily follow that Judge Young's decision is a "step too far" merely because no other court has cited it. [Filing No. 149 at 14.] Though not precedent, district court opinions can be persuasive authority, *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005), and Brownsburg has demonstrated that *Whitis*' reasoning should apply here.

Kluge states, "Brownsburg was trying to force him to approve the lifestyle of transgender students and he was forced to sit through faculty meetings which did exactly that, without being

able to voice a contrary opinion" and cites his own deposition testimony to support this assertion. [Filing No. 149 at 15.] That is inaccurate. Kluge never testified that he was prohibited from voicing a contrary opinion; rather, he stated that receiving information at faculty meetings about transgenderism "is not me giving my stamp of approval to their agenda" and that "[a]ttending a meeting that I'm required to go to is not me promoting transgenderism in the way that saying a first name transgender name is promoting transgenderism." [Filing No. 120-3 at 30-31 (Exhibit 3 – Kluge Dep. At p.118, lines 9-19)]. Far from advancing his claim of an objective conflict, Kluge's own testimony establishes the opposite.

Kluge asserts that Brownsburg's "administrative act" claim is similar to the employer's claim in *Meriwether* that requiring professors to address students by preferred pronouns and titles was "simply ministerial." [Filing No. 149 at 15.] Kluge goes on to claim the *Meriwether* panel

> held that ". . . titles and pronouns carry a message. The university recognizes that and wants its professors to use pronouns to communicate a message: People can have a gender identity inconsistent with their sex at birth. But Meriwether does not agree with that message, and he does not want to communicate it to his students. That's not a matter of classroom management; that's a matter of academic speech."

[Filing No. 149 at 15 (quoting 992 F.3d at 507).] Putting to the side that this was not the panel's holding, it does not follow that the Court should analogize this case to *Meriwether*. For starters, the employee's claims in *Meriwether* are under the First Amendment, not Title VII, and therefore the panel's reasoning has no application to Title VII objective-conflict analysis. Moreover, it is difficult to square *Meriwether*'s observation that the employer in that case wanted its professors to carry a message—*i.e.*, "People can have a gender identity inconsistent with their sex at birth"—with the designated evidence here. Unlike the employer in *Meriwether*, Brownsburg was not requiring Kluge or any other faculty to use students' preferred titles or

pronouns. If anything, Brownsburg was indifferent on this point, for its guidance encouraged faculty to use gender-neutral terms (*e.g.*, folks, people), not those the students preferred. [Filing No. 120-20 at 5-6.] And again, what Brownsburg was requiring was merely that faculty address students by the first name listed in PowerSchool. [Filing No. 120-20 at 9.] That does not convey a message requiring one to affirm transgenderism. There are other differences between this case and *Meriwhether*,[2] but the foregoing demonstrates that it is a poor roadmap for Title VII objective-conflict analysis and therefore should not be followed.

Kluge attempts to rebut Brownsburg's argument that it was not requiring faculty to promote transgenderism by quoting one of the FAQ answers that Brownsburg provided to faculty, specifically that working in a public school "might mean following practices that are different than your beliefs." [Filing No. 149 at 16 (quoting Filing No. 120-20 at 10).] Kluge

---

[2] Although Kluge's First Amendment claims have been dismissed [Filing No. 70], it is worth noting as an aside that there is a stark, bright-line division between employee speech in a secondary school setting versus a post-secondary institution of higher learning. Indeed, the *Meriwhether* panel began the analysis section of its opinion with this observation: "Universities have historically been fierce guardians of intellectual debate and free speech." 992 F.3d at 503 (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 761 (6th Cir. 2019). And perhaps more to the point, the Seventh Circuit has recognized that the compulsory nature of primary and secondary education grants far less leeway for a teacher's in-class speech, while at the same time recognizing that a different result may obtain in a post-secondary setting:

> How much room is left for constitutional protection of scholarly viewpoints in post-secondary education was left open in *Garcetti* and *Piggee* and need not be resolved today. Nor need we consider what rules apply to publications (scholarly or otherwise) by primary and secondary school teachers or the statements they make outside of class. It is enough to hold that the first amendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system.

*Mayer v. Monroe County Comm. School Corp.*, 474 F.3d 477, 480 (7th Cir. 2007). In other words, to borrow from the passage Kluge quotes in *Meriwhether*, Brownsburg's requirement is a more a matter of "classroom management" than it is "academic speech."

claims this answer "exalts transgender rights over religious liberty" and interprets from it that "Brownsburg is suggesting, if not stating, that school policies override state and federal law protecting sincerely-held religious beliefs." [Filing No. 149 at 16.] But Kluge reads far too much into a single FAQ answer intended to provide general guidance to faculty. "Might mean" is not the same as saying "under no circumstance will Brownsburg attempt to accommodate a teacher's religious beliefs." In fact, the accommodations Brownsburg extended to Kluge are proof of that.

In sum, Kluge's attempts to overcome the lack of an objective conflict fall short. The fact remains that Brownsburg required him, like all faculty, to address students by the first names listed in PowerSchool. Brownsburg did not require Kluge or any faculty to voice approval for transgender students who changed their names or otherwise promote transgenderism. Brownsburg's requirement was thus purely administrative and therefore lacking any objective conflict with Kluge's alleged sincerely-held religious belief.

Accordingly, the Court should dismiss Kluge's unlawful discrimination claim on this basis alone.

II.     *Summary judgment in favor of Brownsburg on Kluge's unlawful discrimination claim is also appropriate because, as a matter of law, Brownsburg has demonstrated two separate grounds for undue hardship, and Kluge's challenges to them lack merit.*

In its initial brief, Brownsburg noted that Title VII relieves an employer of the obligation to provide reasonable religious accommodation if the accommodation causes undue hardship. [Filing No. 121 at 32.] Brownsburg also noted that undue-hardship analysis should take into account the nature of the employer's business, which in Brownsburg's case was a constitutional and statutory obligation to educate students. [Filing No. 121 at 34-35.] Brownsburg asserted two grounds for undue hardship, first that the last-name-only accommodation was negatively impacting the classroom environment [Filing No. 121 at 35-38], and second that continuing it

would have exposed Brownsburg to a significant risk of liability. [Filing No. 121 at 41-43.] Brownsburg also demonstrated that Kluge's arguments against undue hardship lacked merit. [Filing No. 121 at 38-41.]

In his response brief, Kluge challenges both grounds for undue hardship, but his arguments are not convincing and the Court should therefore reject them.

      a.     *Brownsburg has demonstrated that the last-name-only accommodation was the subject of complaints and impeded Brownsburg's mission to educate students, thus creating undue hardship, and Kluge's arguments to the contrary are meritless.*

The following addresses each argument as it appears in Kluge's response brief. None has merit.

Kluge argues there was no undue hardship because he reached an accommodation with Brownsburg and used it successfully for a semester. [Filing No. 149 at 16-17.] This ignores that members of the high school community began to complain and that Dr. Daghe brought those complaints to Kluge's attention. To the extent Kluge is arguing that Brownsburg is somehow estopped from withdrawing the accommodation, he cites no authority in support, and research has disclosed none. Moreover, that Brownsburg attempted the accommodation, changed its position in response to complaints, and never rescinded the uniform accommodation (for which there were no complaints) demonstrates that Brownsburg was acting reasonably and without hostility to Kluge's religious beliefs: "The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted." *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).

Kluge asserts that because some of his students excelled and did not perceive issues with the last-name-only accommodation, there was no undue hardship. This misapplies the standard. Brownsburg need only show "more than a *de minimis* cost." *Trans World Airlines, Inc. v.*

9

*Hardison*, 432 U.S. 63, 84 (1977). That standard is met based on the students who did not excel, such as Sucec, who "dread[ed] going to orchestra class each day." [Filing No. 22-3 at 4, ¶13.] Moreover, it should not be surprising that the students who were harmed by the accommodation might not make their feelings known to classmates or Kluge himself. But that hardly means such harm never occurred. In short, given Brownsburg's constitutional and statutory obligation to educate all students who come through its doors, it is not enough for Kluge to say that undue hardship is lacking because some students excelled, while ignoring those who suffered.

Kluge claims the last-name-only accommodation was protected speech. [Filing No. 149 at 19.] It was not, as this Court has determined. [Filing No. 70.] Kluge's reliance on *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), is likewise misplaced. They are First Amendment cases, and there is no indication they are relevant to Title VII undue hardship analysis. Moreover, Kluge's quote from *Tinker*—"fear or apprehension of disturbance is not enough to overcome the right to freedom of expression"—is inconsistent with the undisputed facts of this case. Brownsburg is not speculating about possible undue hardships. Rather, it has pointed to evidence that students in Kluge's class were experiencing harm based on the last-name-only accommodation, to the point that one student's experience resulted in him not enrolling in orchestra and leaving Brownsburg's high school altogether. [Filing No. 121 at 35.]

Kluge emphasizes the absence of written notice from Brownsburg that the last-name-only accommodation was causing undue hardship, as well as the fact that Gordon informed him that the accommodation was being withdrawn because it violated policy. [Filing No. 149 at 19-21.] To the extent Kluge argues these points demonstrate the lack of undue hardship, it is difficult to see why that is the case. Nothing in Title VII or case law requires that the employer provide

written notice to the employee that an accommodation is causing undue hardship. That should

not be surprising considering that many employers might not undergo extensive legal analysis or

contact their attorney in response to every accommodation request. Regarding Gordon's

reference to a policy violation, Kluge appears to argue that because there was no board-level

policy related to student names or transgenderism more generally, Gordon was somehow lying

when she referenced a policy violation as the reason for withdrawing the accommodation. But it

is apparent from the conversation that Gordon was referring to Brownsburg's decision to require

faculty to address students by the first name listed in PowerSchool for the upcoming school year.

Moreover, Kluge ignores that during the same meeting, Dr. Daghe told him that Brownsburg was

withdrawing the accommodation because it was "detrimental to kids," having previously

informed Kluge of complaints from students and others several months earlier. [Filing No. 113-4

at 28 (p. 9, line 10)]. None of Kluge's assertions here demonstrate the lack of undue hardship.

Kluge's description of Sucec's and Willis's complaints as "Heckler's vetoes" is inapt.

[Filing No. 149 at 22.] As is his characterization of their complaints as "emotional discomfort."

[Filing No. 149 at 23.] As is his reliance on *Ovadal v. City of Madison, Wisconsin,* 416 F.3d 531

(7th Cir. 2005), which did not address Title VII at all, but rather involved First Amendment

claims based on a pastor displaying signs with a religious message on a highway bypass. [Filing

No. 149 at 22-23.]

Sucec withdrew from orchestra in part because of the last-name-only accommodation.

This is not merely a heckler's veto, nor is it merely "emotional discomfort." Kluge's speech may

have been offensive to some of his students, but that is not why Brownsburg withdrew the

accommodation. Rather, his speech disrupted the classroom environment, and, therefore, Kluge's

reliance on *Street v. New York,* 394 U.S. 576 (1969) is, yet again, inapt. There, the Court held

11

that the First Amendment's speech clause could not permit a flag burner to be convicted for casting contempt on the American flag. The holding Kluge cites is that the Constitution does not permit the government to prohibit public expression of ideas "merely" because the ideas are offensive to some of the hearers. 394 U.S. at 592. But Kluge cannot seriously contend that Brownsburg withdrew the accommodation "merely" because the last-name-only accommodation was causing offense to some of his students. In sum, Kluge's entire "heckler's veto" argument is not supported by any Title VII case law, nor is it an accurate characterization of the undisputed evidence.

Kluge's challenges to the admissibility of some of the complaints on hearsay grounds are also easily overcome. Kluge claims that complaints Craig Lee received during Equality Alliance Meetings are hearsay. [Filing No. 149 at 25-27.] Brownsburg anticipated Kluge's challenge in its initial brief, noting that the out-of-court statements at issue "are offered to show the state of mind of Brownsburg's administration in determining that the last-name-only accommodation was causing undue hardship." [Filing No. 121 at 40.] Kluge's sole response to this point is a brief, conclusory assertion that Brownsburg "cannot offer the statements . . . under 803(3) for its effect on the mental or emotional state of mind of the hearer, because they do not know the statement was ever made." The Seventh Circuit, however, has stated that complaints are a valid exception to hearsay under Rule 803(3). *Khunger v. Access Cmty. Health Network*, 985 F.3d 565, 575-76 (7th Cir. 2021) (rejecting plaintiff's hearsay challenge to complaints about plaintiff from staff and patients because they were "not offered to show that [plaintiff] in fact engaged in the conduct complained of, but to show [plaintiff's supervisor's] state of mind when he made his recommendation." (internal quotation marks and citation omitted)); *cf. Junior v. Anderson*, 724 F.3d 812, 814 (7th Cir. 2013) ("Testimony to what one heard, as distinct from testimony to the

truth of what one heard, is not hearsay."). Similarly, it is difficult to see how *Emich Motors Corporation v. General Motors Corporation*, 181 F.2d 70, 82 (7th Cir. 1950), helps Kluge, for in that case the panel concluded complaint letters should have been admitted "to show the information on which [defendants] acted," but, contrary to Kluge's claim, there is no indication from the opinion that that the panel did so because it "had confirmation that the complaints existed." [Filing No. 149 at 26.] The Court should reject Kluge's hearsay challenge because the complaints in question are not offered for their truth, but rather to show the state of mind of Brownsburg's administration in determining that the last-name-only accommodation was causing undue hardship.

Kluge's claim that there was no impact on the learning environment is meritless. [Filing No. 149 at 27-32.] In its initial brief, Brownsburg detailed the challenges Sucec and Willis faced in Kluge's orchestra class generally and regarding the last-name-only accommodation in particular. [Filing No. 121 at 35-36.] Kluge does not contest their assertions in this section of his response brief.[3] *Id.* Rather, Kluge attempts to distinguish *Baz v. Walters*, 782 F.2d 704 (7th Cir.

---

[3] Elsewhere in his brief, Kluge submits that Brownsburg's claim that Sucec left the high school based on Kluge's conduct is a "canard that misstates the record evidence." [Filing No. 149 at 24.] Kluge is mistaken. In its initial brief, Brownsburg asserted that "Sucec's experience in Kluge's class influenced his decision not to enroll in orchestra after the 2017-2018 school year and, ultimately, to stop attending Brownsburg High School." [Filing No. 121 at 14, ¶27.] Brownsburg supported that assertion by citing to several paragraphs of Sucec's declaration. *Id.* In those paragraphs and the preceding one, Sucec details that "Mr. Kluge refused to call me Aidyn," "Mr. Kluge's behavior made me feel alienated and upset," "[i]t made me dread going to orchestra class each day," and "[b]y the end of the first semester, in December of 2017, I told my mother that I did not want to continue taking orchestra during my sophomore year." [Filing No. 22-3 at 4, ¶¶12-14.] Granted, Sucec goes on to reference "[t]he controversy around Mr. Kluge's resignation" and incidents of student bullying, but he ultimately concludes that "[t]hese incidents, in combination with my ongoing health struggles, made me feel that I could not return to school at Brownsburg High School." [Filing No. 22-3 at 4-5, ¶¶15-16.] No reasonable person could read these passages from Sucec's declaration and conclude that the last-name-only accommodation did not factor into his decisions about orchestra class and Brownsburg High School, hence the assertion, once again, that "'Sucec's experience in Kluge's class influenced

1986), on the ground the employee there engaged in proselytizing whereas Kluge did not. Brownsburg cited *Baz* not because it was factually similar, but because it instructs that the employer's mission is relevant to analyzing undue hardship. [Filing No. 121 at 34-35.] Kluge's attempt to distinguish the three district court cases that Brownsburg examined in its initial brief makes the same mistake, for again Brownsburg did not rely on their factual similarities. [Filing No. 121 at 36-38; Filing No. 149 at 29-31.] Of course Kluge's accommodation did not involve a request for time off or cancelling classes. That was not the point of citing those cases; rather, the point was other district courts have concluded undue hardship applies as a matter of law where a religious accommodation threatens the classroom learning environment. [Filing No. 121 at 36-38.] And that brings us full circle to the designated evidence—at a minimum, Sucec and Willis' experiences establish as a matter of law that the last-name-only accommodation frustrated Brownsburg's constitutional and statutory obligation to educate students.

      b.      *Brownsburg has also demonstrated undue hardship based on exposure to a significant risk of liability, and Kluge's challenges are misplaced.*

It is difficult for Brownsburg to comprehend how Kluge cannot recognize that continued use of the last-names-only accommodation may have resulted in a lawsuit from a transgender student. Kluge's argument seems to be that had one been filed, Brownsburg would have ultimately prevailed [Filing No. 32-37], and he asks the court to essentially litigate the "case within the case." But to demonstrate an undue hardship, an employer is not required to prove that

---

his decision not to enroll in orchestra after the 2017-2018 school year and, ultimately, to stop attending Brownsburg High School." [Filing No. 121 at 14, ¶27.] Far from misstating Sucec's declaration, Brownsburg's assertion is consistent with it. And it begs a larger question—if the last-name-only accommodation influenced a student's decision to not want to attend a class and eventually enroll elsewhere, how is that not undue hardship in light of the fact that Brownsburg's mission is to educate all students who come through its doors, particularly when Brownsburg need only show hardship that is more than *de minimus*? Brownsburg respectfully submits that this *is* undue hardship, as a matter of law.

had it been sued, it would have actually lost the case. *Matthews v. Wal-Mart Stores, Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011) (an employer is not required to adopt "an accommodation [that] could place [it] on the 'razor's edge' of liability").

Here, two students submitted declarations summarizing how they felt targeted by Kluge's refusal to address them by their first names. It cannot be seriously disputed that all students in Kluge's class knew why he was only using last names. [Filing No. 15 at 15, ¶81 Filing No. 15 at 5, ¶¶23-24; at 7, ¶37.] It is also clear that the law in the Seventh Circuit during the 2017-2018 school year was that transgender students may bring sex-discrimination claims under federal law. *Cf.* J.A.W. *v. Evansville Vanderburgh Sch. Corp.*, 396 F. Supp. 3d 833, 842 (S.D. Ind. 2019). Commonsense dictates that it was only a matter of time before Brownsburg faced litigation based on Kluge's use of last names only.

Finally, Kluge attacks a straw man when he contends that there is no basis under Title IX for a student to file suit because a school provides an accommodation under Title VII and that Brownsburg is arguing that "transgender rights . . . and accommodations" supersede "religious rights and accommodations." [Filing No. 149 at 31, 35 of 43.] Those are not Brownsburg's assertions, and they suffer from the same problem many of Kluge's other arguments do. The accommodation was not working. It was causing undue hardship. Neither Brownsburg nor any employer is required by law to offer an accommodation that is causing an undue hardship. And if that undue hardship has, in part, a discriminatory impact on students, where Brownsburg is required by law to educate them; then, yes, from one perspective Brownsburg's withdrawal of that accommodation may appear to be "favoring" "transgender rights" over "religious rights." But that is not really what occurred. Rather, it is simply a recognition of a fundamental axiom of Title VII analysis, namely, that an employer's obligation to offer accommodation reaches its

15

limit when it disrupts the employer's mission, and there is no other accommodation reasonably available.

Kluge's argument regarding "investigations" also misses the point. [Filing No. 149 at 35-37.] Given the evidence Brownsburg administration and Brownsburg High School's administration was receiving, there was no need to do an "investigation." Moreover, Kluge's argument assumes Brownsburg again was required to somehow balance certain students' rights with Kluge's rights. For reasons already stated, Title VII undue-hardship analysis contemplates nothing of the sort.

III.     *Summary judgment in favor of Brownsburg on Kluge's retaliation claim is appropriate because, as a matter of law, Kluge cannot establish a prima facie case and, even if he could, summary judgment remains appropriate because Kluge failed to address Brownsburg's lack-of-pretext argument.*

Brownsburg argued in its initial brief that Kluge could not establish a prima facie case of retaliation because there was no causal connection between his request for an accommodation in July 2017 and his separation from employment in June 2018. [Filing No. 121 at 44-45.] To support this argument, Brownsburg noted that complaints from the high school community were the main reason Dr. Daghe proposed that Kluge either stop using the last-name-only accommodation, resign, or face termination procedures. [Filing No. 121 at 44.] Moreover, further straining any causal connection was the undisputed fact that Brownsburg never rescinded Kluge's accommodation regarding student uniforms. [Filing No. 121 at 45.] Brownsburg noted that "the common thread running through both accommodations is that Brownsburg's decision to withdraw one and not the other turned on the presence or absence of complaints, not hostility to Kluge's religion." *Id.* Finally, Brownsburg argued that assuming a prima facie case for argument's sake, legitimate and non-retaliatory reasons justified its actions, and Kluge could not clear the high bar of demonstrating that those reasons were a pretext. [Filing No. 121 at 45.]

Brownsburg noted that in his deposition, Kluge offered nothing more than his subjective belief about whether Dr. Daghe was lying about student complaints and whether the last-name-only accommodation was causing tension with students or faculty. [Filling No. 121 at 45-46.]

Kluge's response brief does not challenge Brownsburg's lack-of-pretext argument or otherwise attempt to demonstrate pretext. Instead, Kluge only addresses his prima facie case, focusing on Brownsburg's alleged misrepresentation of facts to secure his resignation. [Filing No. 149 at 37-40.] "When a party fails to address an argument in his summary judgment brief, it is deemed a waiver." *McCready v. Title Services of Illinois, Inc.*, No. 06 C 6280, 2008 WL 2435933, at *3 (N.D. Ill. June 16, 2008); *King v. City of Chicago*, No. 04 C 7796, 2007 WL 4365325, at *7 (N.D. Ill. Dec. 11, 2007) (concluding that plaintiff "has forfeited any argument that the city's conduct was a pretext for discrimination because he failed to address the issue in his brief."). This is fatal to Kluge's claim.[4]

Although the foregoing is sufficient for the Court to grant summary judgment in Brownsburg's favor on Kluge's retaliation claim, it is worth briefly addressing Kluge's argument regarding causal connection. That argument focuses on the events leading up to and following what Kluge once again refers to as his "conditional" resignation. [Filing No. 149 at 37-40.] Kluge appears to assert that Brownsburg's retaliation is evidenced by Gordon's alleged material

---

[4] In its order on Brownsburg's Motion to Dismiss, the Court allowed Kluge's retaliation claim to proceed in part because, accepting Kluge's allegations as true, "it is plausible that school officials, over time, became less inclined to tolerate Mr. Kluge's religious beliefs and used the idea of student complaints as a pretext to withdraw the last-names-only arrangement, refuse to provide another accommodation to which Kluge was entitled, and force him to resign." [Filing No. 70 at 29.] The Court further noted, however, that it was "assuming that Mr. Kluge's allegations concerning pretext are supported by a good-faith basis for asserting them and warns that the revelation that they were not could have consequences under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927." [Filing No. 70 at 29 n.9.] But now in the summary judgment motion briefing, Kluge has failed to address pretext at all, let alone offer evidence supporting his pretext allegations.

misrepresentations related to his resignation. [Filing No. 149 at 39.] In its initial brief, Brownsburg explained that Kluge's account of these events is inaccurate. [Filing No. 121 at 22-24.] Not only is it undisputed that Gordon never told Kluge he could withdraw his resignation whenever he pleased, but also, in dismissing Kluge's fraud claim, the Court concluded that Kluge did not condition his resignation on anything. [Filing No. 121 at 22-23.] Put simply, Kluge's purported causal connection between his request for an accommodation and his resignation are based on alleged facts that are either immaterial or not supported by the record evidence.

IV.    *Kluge is not entitled to summary judgment on the sincerity of his religious belief because Brownsburg has designated evidence showing that he acted inconsistent with that belief, and therefore a jury should resolve this factual issue.*

Brownsburg argued in its initial brief that an issue of fact remained regarding the sincerity of Kluge's religious belief. [Filing No. 121 at 47-49.] The principal piece of evidence to support this argument was that Kluge addressed transgender students by their first names at an orchestra awards ceremony in May 2018. In addition, Brownsburg cited Kluge's deposition testimony where he acknowledged there might be circumstances where it was appropriate to address a transgender student by the student's first name, even if the first name differed from the student's biological sex, as well as evidence that Kluge's denomination did not appear to take a hardline approach regarding restroom use for a transgender child. [Filing No. 121 at 49.] Brownsburg argued that these inconsistencies should result in a jury determination on the sincerity of Kluge's belief and cited Seventh Circuit case law for the proposition that "Evidence tending to show that an employee acted in a manner inconsistent with his professed religious beliefs if, of course, relevant to the factfinder's evaluation of sincerity." *Id.*

In his response, Kluge does not appear to challenge the proposition that such inconsistency may be submitted to the factfinder. Instead, Kluge attempts to reconcile the pieces of evidence that suggest inconsistency, for example claiming that his decision to address transgender students by their first names at the orchestra awards ceremony was appropriate "based on the formality of the occasion and in accord with the agreement that treated the accommodation as a sports coach." [Filing No. 149 at 42.] That is fair enough. Brownsburg, however, respectfully submits that a reasonable juror might also conclude, given Kluge's belief that it is sinful to promote gender dysphoria and thus sinful to address transgender students by their "transgender" names, that his decision to use first names in one setting but not another can only be reconciled by concluding that such an inconsistency calls his sincerity into question. In other words, the parties should be allowed to place their competing facts and arguments before the jury for resolution.

**Conclusion**

For reasons stated, the Court should grant summary judgment in favor of Brownsburg and against Kluge on his remaining claims of unlawful discrimination and retaliation. The Court should also deny Kluge's partial motion for summary judgment and enter final judgment in Brownsburg's favor and against Kluge.

Respectfully submitted,

/s/ Brent R. Borg
Alexander P. Pinegar, Attorney No. 26543-49
Brent R. Borg, Attorney No. 27415-29
Church Church Hittle + Antrim
10765 Lantern Road, Suite 201
Fishers, IN  46038
317-773-2190

Attorneys for Defendant
Brownsburg Community School Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of May, 2021, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following persons by operation of the Court's Electronic filing system:

Kevin E. Green
Kevin Green Associates
456 N. Meridian Street, #1517
Indianapolis, IN  46204
keglegal@aol.com

Michael J. Cork
Michael J. Cork, Esq.
5754 N. Delaware St.
Indianapolis, IN  46220-2528
cork0@icloud.com

Roscoe Stovall, Jr.
Roscoe Stovall, Jr. & Associates
2 West Main Street
Mooresville, IN 46158
rstovall@roscoelaw.com

/s/ Brent R. Borg
Brent R. Borg, Attorney No. 27415-29