# EXHIBIT A

EEOC DOC 2019005478 (E.E.O.C.), 2024 WL 1155256

U.S. Equal Employment Opportunity Commission (E.E.O.C.)

* * * A/K/A BARRETT V., [1] COMPLAINANT,

v.

THOMAS J. VILSACK, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.

Appeal No. 2019005478
Agency No. NRCS-2019-00071
March 7, 2024

<u>DECISION</u>

**\*1**  Complainant timely filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's August 19, 2019, final decision concerning his complaint alleging discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.* For the following reasons, the Commission AFFIRMS the Agency's final decision.

<u>ISSUES PRESENTED</u>

The issue presented is whether Complainant established that the Agency discriminated against him based on his religion when it did not exempt him from a mandatory training about the need to treat all customers and employees with courtesy and respect, including members of the LGBTQI+ community. [2]

<u>BACKGROUND</u>

At the time of events giving rise to this complaint, Complainant worked as a Design Engineer at the Agency's Natural Resources Conservation Service (NRCS) in Temple, Texas. On October 10, 2018, Complainant received an email notifying him that he was scheduled to attend a mandatory civil rights training for NRCS employees on October 16, 2018. Complainant requested via email a copy of the agenda and was informed that it would be provided on the day of the training, which would start at 8:00 a.m. and end at 4:30 p.m. In the ensuing email chain, Complainant then asked if a module on "LGTB" issues would be included and stated that he would excuse himself during this portion of the training. Complainant explained that "[t]his subject matter contradicts my sincerely held religious beliefs which are protected beliefs, expressly protected by federal law." Report of Investigation (ROI) at 77-81.

An Assistant State Conservationist (ASC) responded in writing that the training would provide "information on how to treat all customers and employees with courtesy and respect and it includes specific information on how this professionalism applies to LGBT persons. The mandatory civil rights training also explains the anti-discrimination statutes that are applicable to all federal employees." ROI at 77. ASC further noted that the training did not "require employees to change their personal beliefs, but simply discusses and reinforces the [Agency's] conduct rules requiring employees to treat one another professionally and to prevent and avoid discriminating against or harassing other employees or customers." Id. ASC added that the EEOC's Compliance Manual, Section 12(IV)(7): Religious Discrimination addresses religious objections to mandatory employee training programs. Specifically, ASC indicated to Complainant that the EEOC recognized that it poses an undue hardship to provide religious exemptions when "[t]he training does not tell employees to value different sexual orientations but simply discusses and reinforces laws and conduct rules requiring employees not to discriminate against or harass other employees based on sexual orientation and to treat one another professionally." ROI at 76-77.

**\*2** On October 11, 2018, Complainant called the Civil Rights Division and requested the training outline or agenda. ROI at 21. The Team Lead (TL) of the Compliance and Training Branch of the Civil Rights/Equal Opportunity Division followed up with Complainant, who asked whether there would be "a discussion on LGTB issues?" Complainant explained that he was trying to determine whether portions of the training would contain material that would "pose a substantial burden to [his] religious beliefs." [3] TL responded that there would be "no direct discussions on LGTB issues" during the training. ROI at 82. On October 15, 2018, Complainant's first-line supervisor (S1) informed Complainant that leaving during any portion of the training could result in disciplinary action. ROI at 85.

S1 stated that he spoke with a Business Services Specialist (BSS) who worked for ACS, who confirmed that Complainant needed to attend the entirety of the training. ROI at 277. BSS stated that he spoke with Complainant a few days prior to the training, and BSS informed Complainant that the training was due to an issue that occurred "out in the field" [4] and that everyone at the office in which Complainant worked had to attend the training. BSS averred that Complainant believed that he was the reason for the training due to an email he sent to the Agency's LGBT Special Emphasis Program Manager (SEPM). [5] BSS responded that Complainant was not the cause of the training and added that the training "was about treating customers fairly and what to do if someone wanted to file a complaint," and that it was not specific to any particular group of people. ROI at 282-83.

As Complainant confirmed in a subsequent affidavit, he attended the training on October 16, 2018, "only a few minutes were spent covering an LGBT scenario," and "[t]he scenario was professional, proportionate, and produced in a manner in which was respectable [sic] to those sincerely held religious beliefs like mine." ROI at 70-71. Complainant provided a copy of the training materials, which included his handwritten notes, showing that the Agency included "sexual orientation" in its materials as a basis for prohibited discrimination; and Complainant added "LGBT -- sexual orientation" as a note for the slide on "Discrimination based on: Age, Sex, Disability." ROI at 135-91.

Nevertheless, on October 25, 2018, Complainant filed an EEO complaint alleging that the Agency discriminated against him based on religion (Roman Catholic) when:
1. on October 11, 2018, management denied him an exemption from attending mandatory civil rights training; and
2. on October 15, 2018, management directed him to complete the mandatory civil rights training the following day and warned him that failure to participate in any portion of the training could result in disciplinary action.

**\*3** At the conclusion of the investigation, the Agency provided Complainant with a copy of the ROI and notice of his right to request a hearing before an EEOC Administrative Judge or a final agency decision. In accordance with Complainant's request, the Agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b).

The Agency found that Complainant did not establish a prima facie case of disparate treatment based on religion because the requirement to attend the training was not a cognizable adverse action. The Agency further concluded that even assuming, *arguendo*, that Complainant had established a prima facie case of religious discrimination, the Agency provided a legitimate, nondiscriminatory reason when a witness (W1), an Employee Relations Specialist, stated that the training reinforced its conduct rules requiring employees to treat customers and coworkers professionally and to avoid discrimination and harassment. The Agency then found that Complainant did not provide any evidence showing that the Agency's reason was false or motivated by a discriminatory reason.

The Agency also found that Complainant did not establish a prima facie case of religious discrimination based on a failure to accommodate because Complainant agreed to attend the training and was not penalized. Complainant also acknowledged in his affidavit that the discussion of LGBT issues was professional, proportionate, and respectful of his sincerely held religious beliefs. The Agency then noted that employers need to make sure that employees know about, and comply with, workplace rules that govern discrimination and harassment. Thus, it would have been an undue hardship for the Agency to excuse Complainant from the training. The Agency concluded that Complainant did not prove that it had subjected him to discrimination as alleged.

Complainant filed the instant appeal and submitted a brief in support of his appeal. The Agency opposed Complainant's appeal.

CONTENTIONS ON APPEAL

Complainant argues that the Agency's final decision only looked at a partial body of discrimination laws regarding religious liberty issues, and that Executive Order 13798, [6] the Department of Justice's Memorandum for All Executive Departments and Agencies: Federal Law Protections for Religious Liberty (DOJ Memo), [7] and the Religious Freedom Restoration Act of 1993 (RFRA) [8] should be used to judge the merits of his claims.

Regarding the Agency's legitimate, non-discriminatory reason, namely, that the training reinforced the Agency's conduct rules requiring employees to treat one another professionally and to prevent and avoid discrimination and harassment, Complainant asserts that this testimony was given by W1, an Employee Relations Specialist, who is not credible, and therefore that the testimony should be ""thrown out."

 **\*4**  Complainant "does not assert that the Agency's decision to require training was false and motivated by a discriminatory reason." Rather, he asserts that the Agency failed to "make a reasonable accommodation investigation." Complainant's Brief at 5. It follows, according to Complainant, that the Agency's actions worked to "substantially" pressure him to "modify his religious observance or practice." Id. Complainant contends that the "fact that [he] gave a positive review about the course does not negate the illegitimacy and unlawful methods used to force his attendance by denying him a reasonable accommodation and by mandating his attendance, the disruption of the formation of his conscience, with the threat of disciplinary action." Complainant's brief at 6. Complainant requests that the Commission reverse the Agency's final decision.

With respect to Complainant's argument that his claims should be addressed through RFRA in addition to Title VII, the Agency asserts that the Commission does not have jurisdiction over claims based on RFRA. On the merits of Complainant's disparate treatment claim under Title VII, the Agency argues that Complainant did not establish a prima facie case of discrimination based on his religion because he did not show differential treatment or an alteration of the terms or conditions of his employment. The Agency further argues that it provided legitimate, nondiscriminatory reasons for the training, and Complainant did not show that the reasons were pretexts for discrimination.

The Agency also states that Complainant did not establish a prima facie case of failure to accommodate because Complainant himself admitted that there was no conflict between the actual content of the training and his religious beliefs. In addition, the Agency argues that excusing Complainant from the training would have presented an undue hardship to the Agency. The Agency requests that the Commission affirm its final decision.

STANDARD OF REVIEW

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a); see Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chap. 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

ANALYSIS AND FINDINGS

 **\*5**  "Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business."' Groff v. DeJoy, 143 S. Ct. 2279, 2286 (2023) (quoting 42 U.S.C. § 2000e(j)). A claim that an employer has violated this requirement of Title VII is generally analyzed in two steps. At the first step, the complainant must show that there was a failure to accommodate: namely, that a conflict between a work requirement and a religious practice existed but was not accommodated. The employer may dispute

Case 1:19-cv-02462-JMS-KMB   Document 188-1   Filed 03/26/24   Page 5 of 11 PageID #: 2374

**** A/K/A BARRETT V., COMPLAINANT, V. THOMAS J...., EEOC DOC...

this showing with competent evidence. [9] If the plaintiff prevails on the first step of the analysis, then at the second step, the employer may nevertheless defeat the claim by demonstrating that an accommodation would have imposed an undue hardship. We consider both steps in turn.

<u>Failure to Accommodate</u>

The traditional framework for establishing a failure to provide a religious accommodation requires Complainant to demonstrate that: "(1) [he] has a bona fide religious belief, the practice of which conflicted with [his] employment, (2) [he] informed the agency of this belief and conflict, and (3) the agency nevertheless enforced its requirement against [him]." See <u>Baum v. Social Security Administration,</u> EEOC Appeal No. 01A05985 (Mar. 21, 2002).

If the Complainant makes this showing, the burden shifts to the Agency to show either that it offered a reasonable accommodation or that it could not reasonably accommodate the employee's religious practice or observance without undue hardship. If the Agency makes this showing, it is entitled to prevail. Moreover, Title VII does not require the Agency to offer an employee's preferred accommodation or to demonstrate that an employee's preferred accommodation would cause an undue hardship. <u>See generally</u> <u>EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015)</u>; EEOC Compliance Manual on Religious Discrimination, Section 12 (Jan. 15, 2021).

Contrary to the Agency's suggestion, Complainant need not show that he was ""penalized" in order to state a claim for relief. Neither the text of Title VII nor the third element recited above requires the employee to have been subjected to discipline or an adverse employment action for failing to comply with the conflicting job requirement. The Commission's longstanding view is that "the denial of reasonable religious accommodation absent undue hardship is actionable even if the employee has not separately suffered an independent adverse employment action, such as being disciplined, demoted, or discharged as a consequence of being denied accommodation." EEOC Compliance Manual on Religious Discrimination, Section 12-IV(A) (Jan. 15, 2021). "This is because requiring him to work without religious accommodation where a work rule conflicts with his religious beliefs necessarily alters the terms and conditions of his employment for the worse." <u>Id.</u>

 **\*6**  The Supreme Court, too, has stated that the denial of religious accommodations itself constitutes an unlawful employment practice, absent undue hardship. See <u>Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74 (1977)</u> ("The intent and effect of this definition [of "religion" as including an accommodation requirement] was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."). Later, in <u>Ansonia Board of Education v. Philbrook</u>, the Court analyzed the "ultimate Title VII question of discrimination *vel non*," which it described as "whether the employer's proposed accommodation of respondent's religious practice comports with the statutory mandate of § 701(j)." <u>479 U.S. 60, 67-68 (1986)</u>. In addressing that question, the Court stated that "[t]he employer violates the statute unless it 'demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'" <u>Id.</u> at 68 (alterations in original) (quoting § 701(j)). [10]

Nevertheless, some courts have over the years imposed a requirement that a plaintiff demonstrate some additional "adverse employment action" beyond the denial of a religious accommodation, such as showing that the plaintiff was disciplined for failing to comply with a job requirement or even discharged. <u>See, e.g.,</u> <u>Groff v. DeJoy, 35 F.4th 162, 168 (3d Cir. 2022)</u> (reciting as third element that plaintiff "was disciplined for failing to comply with the conflicting job requirement"), <u>vacated and remanded on other grounds, 143 S. Ct. 2279 (2023)</u>. Other decisions have stated that the third element may be satisfied either by the denial of an accommodation itself or by the threat of an adverse employment action that is implicit in instructing the employee to comply with the work requirement. <u>See, e.g.,</u> <u>Berry v. Dep't of Soc. Servs., 447 F.3d 642, 655 (3d Cir. 2006)</u> (third element satisfied if "the employer, at least implicitly, threatened some adverse action" by instructing the employee to comply with the job requirement); <u>Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004)</u> ("An employer's failure to reasonably accommodate an employee's sincerely held religious belief that conflicts with a job requirement can also amount to an adverse

Case 1:19-cv-02462-JMS-KMB   Document 188-1   Filed 03/26/24   Page 6 of 11 PageID #: 2375

* * * A/K/A BARRETT V., COMPLAINANT, V. THOMAS J...., EEOC DOC...

employment action...."); Heller v. EBB Auto Co., 8 F.3d 1433 (9th Cir. 1993) (third element satisfied if "the employer threatened him with ... discriminatory treatment, including discharge, because of his inability to fulfill the job requirements"). [11]

 **\*7**  We adhere to our longstanding view here. "It is nonsensical to suggest that an employee who, when forced by his employer to choose between his job and his faith, elects to avoid potential financial and/or professional damage by acceding to his employer's religiously objectionable demands has not been the victim of religious discrimination...." Rodriguez v. City of Chicago, 1996 WL 22964, at \*3 (N.D. Ill. Jan. 12, 1996). "An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy." EEOC v. Townley Engineering & Mfg. Co., 859 F.2d 610, 614 n.5 (9th Cir. 1988). Complainant is not required to show that he was penalized or suffered a separate adverse employment action in order to show that the Agency failed to accommodate his religious practice in violation of Title VII.

We nevertheless find that, in this case, Complainant has not demonstrated that the Agency violated Title VII by failing to provide him with a religious accommodation. Complainant failed to identify--even generally--a religious belief, observance, or practice that conflicted with the employment requirement that he attend mandatory civil rights training that, in fact, simply discussed and reinforced laws and conduct rules requiring employees not to discriminate against or harass others on numerous protected bases, including sexual orientation, and to treat customers and coworkers professionally.

Complainant initiated several inquiries regarding the particulars of the training and voiced trepidation that elements of the training involving LGBTQI+ "issues" would conflict with his religious beliefs. Specifically, before the training, Complainant expressed concern that the training "could challenge [him] to modify the daily observance and daily practice of the continuous formation of [his] religious conscience." ROI at 71.

In response, the Agency informed Complainant that there would be "no direct discussions on LGBT issues." ROI Exh. 10 at 37. The Agency also informed Complainant the training "provides employees with information on how to treat customers and employees with courtesy and respect and includes specific information on how this professionalism applies to LGBT persons. The mandatory civil rights training also explains the anti-discrimination statutes that are applicable to all federal employees. LGBT training does not require employees to change their personal beliefs." ROI at 77, 82. The record regarding the content of the actual training program--both the slides and evidence regarding the way the slides were presented--is consistent with the Agency's description. Complainant's own description of the training also confirms this. In an affidavit, Complainant stated that "only a few minutes" of the training was devoted to "an LGBT scenario" and that it was "professional, proportionate and produced in a manner which was respect[ful] to those with sincerely held religious beliefs like mine." ROI 70-71.

 **\*8**  We need not resolve whether Complainant's statements and materials clearly identify one or more sincerely held religious beliefs, observances, or practices because he fails to show that his religious beliefs conflict with an employment requirement. Based on our review of the record, we find that Complainant failed to show that attending the training conflicted with his religious beliefs, impacted a religious "observance," or hindered any religious "practice."

On appeal, Complainant alleges that the Agency "substantially" pressured him to "modify his religious observance or practice." Complainant's Brief at 5. But Complainant does not explain how the training worked, or even attempted, to modify, criticize, or pressure him to change his religious observance or practice--whether before, during, or after the training. In the entire deck of training slides, LGBTQI+ issues were referenced only in the context of explaining bases for prohibited discrimination under equal employment opportunity laws. ROI at 135-191. Moreover, Complainant's own statements after the training belie his arguments. He acknowledged that the portion of the training covering LGBTQI+ issues was "professional, proportionate, and produced in a manner which was respectable to those with sincerely held religious beliefs like mine." ROI at 70-71. It follows that Complainant has failed to show that the training conflicted with his sincerely held religious beliefs, observances, or practices.

Undue Hardship

Case 1:19-cv-02462-JMS-KMB   Document 188-1   Filed 03/26/24   Page 7 of 11 PageID #: 2376

**** A/K/A BARRETT V., COMPLAINANT, V. THOMAS J...., EEOC DOC...

Alternatively, even if Complainant had demonstrated a conflict between his religious practice and the Agency's mandatory civil rights training, the Agency would nevertheless not be liable for failing to accommodate Complainant's religious practice if it demonstrates that doing so would impose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

The Supreme Court recently clarified that "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." Groff, 143 S. Ct. at 2294. This is a fact-specific inquiry that is made on a case-by-case basis. See id. ("fact-specific inquiry"); EEOC Compliance Manual on Religious Discrimination, Section 12-IV(B)(1) (Jan. 15, 2021) ("Case-by-Case Determination"). "[W]hether a hardship would be substantial in the context of an employer's business" should be resolved in a "commonsense manner," (Groff, 143 S. Ct. at 2296), "tak[ing] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer" (id. at 2295 (internal quotation omitted)).

 *9  In some situations, an accommodation might impose an undue hardship because of its cost. However, the Court clarified that merely "showing 'more than a de minimis cost,' as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII." Id. The Court explained:

> [A] hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a "hardship," an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier "undue" means that the requisite burden, privation, or adversity must rise to an "excessive" or " "unjustifiable" level.

Id. at 2294. [12]

Undue hardship, however, is not limited to considerations of financial cost. Indeed, Title VII does not refer to "cost" at all. See 42 U.S.C. § 2000e(j). Rather, "'undue hardship' is shown when a burden is substantial *in the overall context of an employer's business*." Groff, 143 S. Ct. at 2294 (emphasis added). Thus, the impact of the accommodation on the rights of other employees who are part of the business is relevant to the undue hardship analysis.

Although "not all impacts on coworkers" will suffice to show undue hardship, those "coworker impacts that go on to affect the conduct of the business" are appropriately considered. Id. at 2296. This has long been understood to include impacts on rights and interests that are protected by Title VII itself. Indeed, in holding that it would be an undue hardship to require an employer to violate a seniority system, the Supreme Court emphasized that this conclusion was "supported by the fact that seniority systems are afforded special treatment under Title VII itself." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 81, 83 (1977); see also Groff, 143 S. Ct. at 2290. Similarly, ""an employer need not accommodate an employee's religious beliefs if doing so would result in discrimination against his coworkers or deprive them of contractual or other statutory rights." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 607 (9th Cir. 2004); see also EEOC Compliance Manual on Religious Discrimination, Section 12-IV(B)(2) (Jan. 15, 2021) (undue hardship may be found where an accommodation "infringes on other employees' job rights or benefits") (citing Peterson). Indeed, if employers were required to make accommodations that violated the workplace rights of other employees, "Title VII would be at war with itself." Groff, 143 S. Ct. at 2296.

 *10  An accommodation may impose an undue hardship on the conduct of an employer's business if it interferes with the employer's efforts to meet its other legal obligations under Title VII or other equal employment opportunity laws. Thus, the Commission has recognized that it would pose an undue hardship to provide religious exemptions from training on EEO laws and internal anti-discrimination policies because "an employer needs to make sure that its employees know about and comply with such laws and workplace rules." EEOC's Compliance Manual, Section 12, Religious Discrimination (Jan. 15, 2021) at Example 55; see also Peterson v. Hewlett-Packard Co., 358 F.3d 599, 606-08 (9th Cir. 2004) (holding that it would have constituted undue

hardship for employer to accommodate employee by eliminating portions of its diversity program to which employee raised religious objections; to do so would have "infringed upon the company's right to promote diversity and encourage tolerance and good will among its workforce"). Indeed, Title VII requires employers to take steps to prevent discriminatory harassment, and they may be held liable if they fail to do so. See Vance v. Ball State University, 570 U.S. 421, 448-49 (2013) (plaintiff can "prevail by showing that his or her employer was negligent in failing to prevent harassment from taking place").

Importantly, though, undue hardship does not include "a coworker's dislike of religious practice and expression in the workplace or the mere fact of an accommodation." Id. at 2296. As the Court explained:

> An employer who fails to provide an accommodation has a defense only if the hardship is "undue," and a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered "undue." If bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself. Id.

In light of these principles, the Commission finds that granting Complainant an exemption from the training would pose an undue hardship on the conduct of the Agency's business. The training did not require Complainant to affirmatively profess support for values that are contrary to his religious beliefs. [13] The training was designed to promote compliance with EEO laws and with the Agency's standards of conduct with respect to customers and coworkers.

In summary, there is no evidence of a conflict between the training and Complainant's religious practice--in fact, Complainant provided testimony that the training was respectful of his religious beliefs--and exempting him from the training would in any event have posed an undue hardship. Accordingly, we find that Complainant has not shown that the Agency discriminated against him when it failed to provide him with a religious accommodation. [14]

## CONCLUSION

**\*11**   Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final decision finding that Complainant did not establish that the Agency discriminated against him based on religion when management denied him an exemption from attending mandatory civil rights training and warned him that failure to participate in any portion of the training could result in disciplinary action.

## STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:
1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. A party shall have **twenty (20) calendar days** of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405;

Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD- 110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider

shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

**\*12** You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. ""Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Raymond Windmiller
Executive Officer
Executive Secretariat

**Footnotes**

1    This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2    Complainant and the Agency used the abbreviations "LGTB" and "LGBT" to refer to the lesbian, gay, transgender, and bisexual community. However, unless referring to statements by the parties, the Commission will use the acronym LGBTQI+.

3    While the record contains an extract from a religious book explaining Complainant's views, it is not clear whether he provided this extract to an Agency official in support of his request, or only as a part of his EEO complaint. Complainant informed Agency officials that he held sincere religious beliefs, but he did not expand on what his religious beliefs were.

Case 1:19-cv-02462-JMS-KMB Document 188-1 Filed 03/26/24 Page 10 of 11 PageID #: 2379

* * * A/K/A BARRETT V., COMPLAINANT, v. THOMAS J....., EEOC DOC...

4    BSS did not describe the incident that led to the Agency providing the mandatory civil rights training.

5    In response to a global email about the #RuralPride Campaign, Complainant responded to the Agency's LGBT SEPM stating that he disagreed with the message and found it "personally offensive from a standpoint of faith and reason." Complainant also included an article entitled, "Dangerous People are Teaching Your Children." ROI at 233-37.

6    82 Fed. Reg. 21675.

7    82 Fed. Reg. 49,668 (Oct. 26, 2017).

8    42 U.S.C. § 2000bb et seq.

9    Although we have sometimes described the plaintiff's required showing at this step as a "prima facie case," we note that this analysis is not a variant of the indirect or McDonnell-Douglas method of proof, as the facts at issue in the first step of a religious accommodation claim are typically not proven purely by drawing inferences from circumstantial evidence. Because the McDonnell-Douglas framework does not apply to this dispute, we need not address the parties' arguments regarding whether they did or did not establish their respective burdens under that approach.

10   This was so even though the only separate harm alleged by the plaintiff in Ansonia was his loss of pay when he was absent for religious observances--a loss he did not even experience for many of the years covered by his claim, and which the Court noted in any event was just an incident of the accommodation of unpaid leave. Id. at 64-65, 70-71 (noting plaintiff did not take unauthorized leave during the years after 1977); see also Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 479-80 (2d Cir. 1985).

11   Recently, some courts have suggested that Abercrombie forecloses the view, reflected in longstanding Commission policy and in Hardison and Ansonia, that a denial of religious accommodations is actionable in its own right. See, e.g., EEOC v. JBS USA, LLC, 339 F. Supp. 3d 1135, 1174-76 (D. Colo. 2018) ("The Court agrees ... that freestanding religious accommodation claims are not viable in light of Abercrombie."). In Abercrombie, the Court stated that "Title VII ... prohibits two categories of employment practices," which the Court noted were "often referred to as the 'disparate treatment' (or "intentional discrimination') provision and the 'disparate impact' provision." 575 U.S. at 771. The Court's statement appears to pertain to § 703(a). Sections 703(b)-(d) & 704 of Title VII prohibit additional categories of unlawful employment practices. But Abercrombie unambiguously involved an adverse employment action, a failure to hire -- what the Court described as a "disparate treatment claim[] based on a failure to accommodate a religious practice." Id. at 773. Although the Court referred generally to "disparate treatment" cases (as distinct from disparate impact cases), nothing in that opinion purported to address whether and under what circumstances a failure to accommodate may, itself, constitute a violation of § 703(a), let alone reverse the Court's earlier pronouncements in Hardison and Ansonia. The text of Title VII is what governs, not informal labels such as "disparate treatment," a term that does not appear in the text of the statute.

12   The Agency's brief, submitted before Groff was decided, cites Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), for the proposition that undue hardship could be established by demonstrating that an accommodation would impose more than de minimis cost. The Agency's brief also cites pre-Groff Commission precedent that recites the same standard. See, e.g., Shanice C. v. U.S. Postal Serv., EEOC Appeal No. 0120180852 (July 2, 2019) ("In order to show undue hardship, an employer must demonstrate that an accommodation would require more than a de minimis cost."). To the extent any prior Commission decisions are inconsistent with Groff or with this decision, they are overruled.

13   "If the training required or encouraged employees to affirmatively support or agree with conduct that conflicts with the employee's religious beliefs, or signal their support of certain values that conflict with the employee's religious beliefs, it would be more difficult for an employer to establish that it would pose an undue hardship to accommodate an employee who objects to participating on religious grounds." EEOC Compliance Manual on Religious Discrimination, Section 12-IV(C)(7) n.315 (Jan. 15, 2021).

14    Complainant's reliance on Executive Order 13798 ("Promoting Free Speech and Religious Liberty") and the DOJ Memo does not require a different result. The Order states that it is "not intended to, and does not, create any right or benefit, substantive or procedural," and the DOJ Memo provides guidance regarding the application of the Order. Moreover, even if either (or both) did create new rights and afford them to Complainant, neither the Order nor the DOJ Memo authorizes or empowers the Commission to enforce them. Finally, the Commission lacks jurisdiction to adjudicate Complainant's RFRA claim. See Word, et al., v. U.S. Postal Serv., EEOC Appeal No. 01A32192 (Jul. 9, 2004) (affirming dismissal of a claim under the Fair Labor Standards Act for lack of jurisdiction to address them in the EEO forum); Clark v. U. S. Postal Serv., EEOC Appeal No. 01980277 (Aug. 14, 2001) (Commission lacks jurisdiction to adjudicate claim regarding veterans' preference laws because veterans' preference laws are not among statutes enforced by the Commission).

EEOC DOC 2019005478 (E.E.O.C.), 2024 WL 1155256

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.